# UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF NEW YORK

```
------------------------------------------------------------x
                                          :
In re:                                    :
                                          :        Chapter 11
YOUNG BROADCASTING INC., et al.,          :
                                          :        Case No. 09-10645 (AJG)
                         Debtors.[1]      :
                                          :
                                          :        (Jointly Administered)
------------------------------------------------------------x
```

# DEBTORS' JOINT PLAN UNDER
# CHAPTER 11 OF THE BANKRUPTCY CODE

Peter D. Wolfson
Jo Christine Reed
Sᴏɴɴᴇɴsᴄʜᴇɪɴ Nᴀᴛʜ & Rᴏsᴇɴᴛʜᴀʟ LLP
1221 Avenue of the Americas
New York, New York  10020
Telephone (212) 768-6700
Attorneys for Debtors and
Debtors in Possession

Dated:  ⸻,November 4, 2009

---

[1]  The Debtors in these cases are Young Broadcasting Inc.; Young Broadcasting of Lansing, Inc.; Young Broadcasting of Louisiana, Inc.; Young Broadcasting of Nashville, LLC; Young Broadcasting of Albany, Inc.; Young Broadcasting of Richmond, Inc.; Young Broadcasting of Knoxville, Inc.; Young Broadcasting of Green Bay, Inc.; Young Broadcasting of Davenport, Inc.; Young Broadcasting of Sioux Falls, Inc.; Young Broadcasting of Rapid City, Inc.; Young Broadcasting of San Francisco, Inc.; Young Broadcasting of Nashville, Inc.; Young Broadcasting of Los Angeles, Inc.; Young Broadcasting Shared Services, Inc.; Adam Young Inc.; WKRN, G.P.; WATE, G.P.; KLFY, L.P.; YBT, Inc.; YBK, Inc.; LAT, Inc.; Winnebago Television Corporation; Fidelity Television, Inc.; Honey Bucket Films, Inc.; Young Broadcasting Capital Corporation; and Young Communications Inc.

# TABLE OF CONTENTS

Article I.     DEFINITIONS AND INTERPRETATION ......................................................... 1

    A.     Defined Terms ............................................................................... 1

    B.     Rules of Interpretation and Computation of Time ..................................... 13

Article II.     ADMINISTRATIVE EXPENSE CLAIMS AND PRIORITY TAX CLAIMS ......................... 14

    A.     Administrative Expense Claims ....................................................... 14

    B.     Compensation and Reimbursement Claims ......................................... ~~14~~15

    C.     Priority Tax Claims ...................................................................... 15

Article III.     CLASSIFICATION OF CLAIMS AND EQUITY INTERESTS ..................................... ~~15~~16

Article IV.     TREATMENT OF CLAIMS AND EQUITY INTERESTS .......................................... ~~15~~16

    A.     Class A - Priority Non-Tax Claims .................................................... ~~15~~16

    B.     Class B - Prepetition Lender Claims .................................................. ~~16~~17

    C.     Class C - Other Secured Claims ...................................................... ~~16~~17

    D.     Class D - Noteholder Claims .......................................................... 17

    E.     Class E - General Unsecured Claims ................................................. ~~17~~18

    F.     Class F – Equity Interests ............................................................. ~~17~~18

    G.     Class G – Intercompany Interests .................................................... ~~17~~18

Article V.     ACCEPTANCE OR REJECTION OF THE PLAN ............................................... 18

    A.     Presumed Acceptance of Plan ......................................................... 18

    B.     Voting Classes ........................................................................... ~~18~~19

    C.     Acceptance by Impaired Classes of Claims .......................................... ~~18~~19

    D.     Presumed Rejection of Plan ............................................................ ~~18~~19

    E.     Tabulation of Ballots .................................................................... ~~18~~19

    F.     Confirmation Pursuant to Section 1129(a)(10) and 1129(b) of the Bankruptcy Code .......................................................................... ~~18~~19

    G.     Controversy Concerning Impairment .................................................. 19

Article VI.   MEANS FOR IMPLEMENTATION ...................................................................... 19

    A.    Deemed Consolidation of Debtors for Plan Purposes Only...................... 19

    B.    Restructuring Transactions .................................................................... ~~19~~20

    C.    Sources of Plan Distributions................................................................ 20

    D.    Authorization of Holdco Securities ...................................................... ~~20~~21

    E.    Corporate Existence ............................................................................ 21

    F.    Vesting of Assets in the Reorganized Debtors ...................................... ~~21~~22

    G.    Intercompany Interests......................................................................... ~~21~~22

    H.    Cancellation of Existing Notes, Interests and Agreements.................... ~~21~~22

    I.    Board of Directors............................................................................... 22

    J.    Officers ............................................................................................... 22

    K.    Corporate Action................................................................................. ~~22~~23

    L.    Release of Liens.................................................................................. ~~22~~23

    M.    Effectuating Documents and Further Transactions.............................. ~~22~~23

    N.    Claims Administration, Prosecution and Plan Distributions ................... 23

Article VII.   DISTRIBUTIONS ................................................................................ 23

    A.    Distribution Record Date .................................................................... 23

    B.    Date of Distributions........................................................................... ~~23~~24

    C.    Post-Petition Interest and Costs on Claims.......................................... ~~23~~24

    D.    Disbursing Agent ................................................................................ ~~23~~24

    E.    Rights and Powers of Disbursing Agent................................................ 24

    F.    Compensation of Expenses Incurred on or After the Effective Date........ 24

    G.    Surrender of Instruments...................................................................... ~~24~~25

    H.    Delivery of Distributions ~~24~~; Execution of Equityholders Agreement............................................................................................ 25

    I.    Distributions of Cash .......................................................................... ~~25~~26

| | | |
|---|---|---:|
| J. | Fractional Distributions | ~~25~~26 |
| K. | Setoffs and Recoupment | ~~25~~26 |
| L. | Minimum Distributions | ~~25~~26 |
| M. | Distributions After the Effective Date | ~~25~~26 |
| N. | Allocation of Plan Distributions Between Principal and Interest | 26 |
| O. | Withholding and Reporting Requirements | ~~26~~27 |
| P. | Subsequent Distributions | ~~26~~27 |
| Q. | Time Bar to Cash Payments | ~~26~~27 |
| Article VIII. | PROCEDURES FOR DISPUTED CLAIMS | 27 |
| A. | Objections to Claims | 27 |
| B. | Payments and Distributions with Respect to Disputed Claims | ~~27~~28 |
| C. | Estimation of Claims | ~~27~~28 |
| D. | Distributions Relating to Disputed Claims | 28 |
| E. | Distributions after Allowance | ~~28~~29 |
| F. | Preservation of Rights to Settle Claims | ~~28~~29 |
| G. | Disallowed Claims | ~~28~~29 |
| Article IX. | EXECUTORY CONTRACTS AND UNEXPIRED LEASES | ~~28~~29 |
| A. | General Treatment | ~~28~~29 |
| B. | Cure of Defaults | ~~29~~30 |
| C. | Rejection Claims | ~~29~~30 |
| D. | Insurance Policies | ~~29~~30 |
| Article X. | CONDITIONS PRECEDENT TO CONFIRMATION AND THE EFFECTIVE DATE. | ~~29~~30 |
| A. | Conditions Precedent to Confirmation | ~~29~~30 |
| B. | Conditions Precedent to the Effective Date | ~~30~~31 |
| C. | Waiver of Conditions | ~~30~~31 |

D. Effect of Failure of Conditions ............................................................. ~~30~~31

Article XI. EFFECT OF CONFIRMATION .................................................................. ~~31~~32

A. Binding Effect ....................................................................................... ~~31~~32

B. Discharge of Claims and Termination of Equity Interests................... ~~31~~32

C. Discharge of Debtors ............................................................................ ~~31~~32

D. Term of Injunctions or Stays................................................................ ~~31~~32

E. Retention of Causes of Action/Reservation of Rights ......................... ~~32~~33

F. Indemnification Obligations ................................................................. ~~32~~33

G. D&O Coverage Policies......................................................................... ~~33~~34

Article XII. SETTLEMENT, RELEASE, INJUNCTION AND RELATED PROVISIONS .................... ~~33~~34

A. Compromise and Settlement.................................................................. ~~33~~34

B. Releases by the Debtors......................................................................... ~~33~~34

C. Third Party Release................................................................................ ~~35~~36

D. Exculpation ........................................................................................... ~~36~~37

E. Injunction ............................................................................................. 37

F. Limitation of Governmental Releases .................................................. 39

Article XIII. RETENTION OF JURISDICTION.................................................................. 39

Article XIV. MISCELLANEOUS PROVISIONS ................................................................ 41

A. Payment of Statutory Fees .................................................................... 41

B. Dissolution of Statutory Committee of Unsecured Creditors............... 41

C. No Deemed Waiver of Causes of Action............................................... 41

D. Indenture Trustee as Claim Holder ....................................................... 41

E. Substantial Consummation .................................................................... 41

F. Request for Expedited Determination of Taxes..................................... ~~41~~42

G. Exemption from Transfer Taxes............................................................ ~~41~~42

H.      Pension Plan.............................................................................................. 42

I.      Amendments ......................................................................................... 42

IJ.      Revocation or Withdrawal of the Plan.................................................... 42

JK.      Severability ......................................................................................... 4243

KL.      Governing Law .................................................................................... 4243

LM.      Time ................................................................................................... 43

MN.      Notices ............................................................................................... 43

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------------x
:
In re: :
: Chapter 11
YOUNG BROADCASTING INC., *et al.*, :
: Case No. 09-10645 (AJG)
Debtors[2] :
:
: (Jointly Administered)
-----------------------------------------------------------------x

## DEBTORS' JOINT PLAN UNDER
## CHAPTER 11 OF THE BANKRUPTCY CODE

Young Broadcasting Inc. and the other above-captioned debtors and debtors in possession propose the following joint chapter 11 Plan, pursuant to section 1121(a) of title 11 of the United States Code:

Reference is made to the Disclosure Statement, distributed contemporaneously herewith, for a discussion of the Debtors' history, businesses, properties, certain post petition events, results of operations, projections for future operations and risk factors, and for a summary and analysis of the Plan and certain related matters. All holders of Claims who are entitled to vote on the Plan are encouraged to read the Plan and the Disclosure Statement in their entirety before voting to accept or reject the Plan.

**Article I.** **DEFINITIONS AND INTERPRETATION**

**A.** **Defined Terms**.

The following terms used herein shall have the respective meanings ascribed below (such meanings to be equally applicable to both the singular and plural):

---

[2] The Debtors in these cases are Young Broadcasting Inc.; Young Broadcasting of Lansing, Inc.; Young Broadcasting of Louisiana, Inc.; Young Broadcasting of Nashville, LLC; Young Broadcasting of Albany, Inc.; Young Broadcasting of Richmond, Inc.; Young Broadcasting of Knoxville, Inc.; Young Broadcasting of Green Bay, Inc.; Young Broadcasting of Davenport, Inc.; Young Broadcasting of Sioux Falls, Inc.; Young Broadcasting of Rapid City, Inc.; Young Broadcasting of San Francisco, Inc.; Young Broadcasting of Nashville, Inc.; Young Broadcasting of Los Angeles, Inc.; Young Broadcasting Shared Services, Inc.; Adam Young Inc.; WKRN, G.P.; WATE, G.P.; KLFY, L.P.; YBT, Inc.; YBK, Inc.; LAT, Inc.; Winnebago Television Corporation; Fidelity Television, Inc.; Honey Bucket Films, Inc.; Young Broadcasting Capital Corporation; and Young Communications Inc.

1.     ***8¾% Senior Subordinated Note Claims*** means Claims of Holders of 8¾% Senior Subordinated Notes.

2.     ***8¾% Senior Subordinated Notes*** means the $140 million 8¾% Senior Subordinated Notes due 2014, issued by Young Broadcasting Inc. pursuant to that certain Indenture dated December 23, 2003 between Young Broadcasting Inc. (and the Guarantors identified therein) and U.S. Bank National Association, as indenture trustee.

3.     ***10% Senior Subordinated Note Claims*** means Claims of Holders of 10% Senior Subordinated Notes.

4.     ***10% Senior Subordinated Notes*** means the $500 million 10% Senior Subordinated Notes due 2011, issued by Young Broadcasting Inc. pursuant to that certain Indenture dated March 1, 2001 between Young Broadcasting Inc. (and the Guarantors identified therein) and U.S. Bank National Association, as indenture trustee.

5.     ***Act*** means the Communications Act of 1934, as amended, and the rules, regulations and public policies of the FCC thereunder.

6.     ***Administrative Expense Claim*** means any right to payment constituting a cost or expense of administration of any of the Reorganization Cases allowed under sections 503(b), 507(a)(1), and 1114(e) of the Bankruptcy Code, including, without limitation, any actual and necessary costs and expenses of preserving the Debtors' estates, any actual and necessary costs and expenses of operating the Debtors' businesses, any indebtedness or obligations incurred or assumed by the Debtors, as debtors in possession, during the Reorganization Cases, including, without limitation, for the acquisition or lease of property or an interest in property or the rendition of services, any allowances of compensation and reimbursement of expenses to the extent allowed by Final Order under sections 330 or 503 of the Bankruptcy Code, the unpaid fees and expenses of the professionals for the Prepetition Agent through the Effective Date, and any fees or charges assessed against the estates of the Debtors under section 1930 of chapter 123 of title 28 of the United States Code.

7.     ***Affiliate*** has the meaning set forth in section 101(2) of the Bankruptcy Code.

8.     ***Allowed*** with respect to any Claim, except as otherwise provided herein: (a) a Claim that is scheduled by the Debtors in their Schedules, as such Schedules may be amended by the Debtors from time to time in accordance with Bankruptcy Rule 1009, as neither disputed, contingent nor unliquidated and for which the claim amount has not been identified as unknown and as to which neither the Debtors nor any other party in interest has filed an objection by the Claims Objection Bar Date; (b) a Claim that either is not a Disputed Claim or has been allowed by a Final Order; (c) a Claim that is allowed (i) pursuant to the Plan, (ii) in any stipulation of amount and nature of Claim executed prior to the Confirmation Date and approved by the Bankruptcy Court, (iii) in any stipulation with the Debtors of amount and nature of Claim executed on or after the Confirmation Date and approved by the Bankruptcy Court, or (iv) in or pursuant to any contract, instrument, indenture or other agreement entered into or assumed in connection herewith; (d) a Claim relating to a rejected Executory Contract or Unexpired Lease that either (i) is not a Disputed Claim or (ii) has been allowed by a Final Order, in either case

- 2 -

only if a proof of Claim has been Filed by the applicable bar date or has otherwise been deemed timely Filed under applicable law; or (e) a Disputed Claim as to which a proof of Claim has been timely Filed and as to which no objection has been filed by the Claims Objection Bar Date.

9. ***APA*** means the Asset Purchase Agreement dated as of July 29, 2009, by and among the Debtors and the New Young Broadcasting Holding Co., Inc. in accordance with the APA Approval Order for the sale of all or substantially all of the Debtors' assets.

10. ***APA Approval Hearing*** means the hearing held by the Bankruptcy Court to confirm the results of the auction held in accordance with the Bidding Procedures at which Holdco was approved, as the prevailing bidder.

11. ***APA Approval Order*** means the order entered by the Bankruptcy Court at the APA Approval Hearing approving Holdco as the prevailing bidder and the form of APA.

12. ***Avoidance Actions*** means all Claims and/or causes of action arising under or authorized by Chapter 5 of the Bankruptcy Code that belong to the Debtors, the Debtors in Possession and the Debtors' Estates, including, without limitation, those listed in item 3 of each of the Debtors' filed statements of financial affairs.

13. ***Ballot*** means the form or forms on which each Holder of an Impaired Claim entitled to vote on the Plan indicates either acceptance or rejection of the Plan.

14. ***Bankruptcy Code*** means title 11 of the United States Code, as amended from time to time, as applicable to the Reorganization Cases.

15. ***Bankruptcy Court*** means the United States Bankruptcy Court for the Southern District of New York having jurisdiction over the Reorganization Cases and, to the extent of any reference made under section 157 of title 28 of the United States Code, the unit of such District Court having jurisdiction over the Reorganization Cases under section 151 of title 28 of the United States Code.

16. ***Bankruptcy Rules*** means the Federal Rules of Bankruptcy Procedure as promulgated by the United States Supreme Court under section 2075 of title 28 of the United States Code, as amended from time to time, applicable to the Reorganization Cases, and any Local Rules of the Bankruptcy Court.

17. ***Bidding Procedures*** means those procedures for bidding for all or substantially all of the Debtors' assets set forth in the Bidding Procedures Order.

18. ***Bidding Procedures Order*** means the order approving the Debtors' Bidding Procedures and forms of notice in connection therewith that was entered by the Bankruptcy Court on April 2, 2009, as amended or modified.

19. ***Business Day*** means any day other than a Saturday, a Sunday, or any other day on which banking institutions in New York, New York are required or authorized to be closed for business by law or executive order.

- 3 -

20.    **Cash** means legal tender of the United States of America or the equivalent thereof.

21.    **Causes of Action** means all actions, causes of action, Claims, liabilities, obligations, rights, suits, debts, damages, judgments, remedies, demands, setoffs, defenses, recoupments, crossclaims, counterclaims, third-party claims, indemnity claims, contribution claims, or any other claims disputed or undisputed, suspected or unsuspected, foreseen or unforeseen, direct or indirect, choate or inchoate, existing or hereafter arising, in law, equity or otherwise, based on whole or in part upon any act or omission or other event occurring prior to the Commencement Date or during the course of the Reorganization Cases, including through the Plan Effective Date, but not including the Avoidance Actions.

22.    **Claim** has the meaning set forth in section 101(5) of the Bankruptcy Code.

23.    **Claims Objection Bar Date** means the date by which objections to Claims must be filed pursuant to Article VII.1 herein.

24.    **Class** means any group of Claims or Equity Interests classified by the Plan pursuant to section 1122(a)(1) of the Bankruptcy Code.

25.    **Collateral** means any property or interest in property of the estate of any Debtor subject to a lien, charge, or other encumbrance to secure the payment or performance of a Claim, which Lien, charge, or other encumbrance is not subject to avoidance under the Bankruptcy Code.

26.    **Commencement Date** means February 13, 2009.  All references to "prepetition" and "postpetition" in this Plan mean prior to, or on and after, the Commencement Date, as the case may be.

27.    **Committee Members** means the members of the Creditors Committee, namely: U.S. Bank National Association, as indenture trustee, Capital Research and Management Company, Gannaway Web Holdings, LLC, Global Leveraged Capital Credit Opportunity Fund I, Kingworld Productions, Inc., Swiss Re and Harris Corporation., and any predecessors of such entities.

28.    **Committee Professionals** means Paul, Weiss, Rifkind, Wharton & Garrison LLP as legal advisor to the Creditors Committee; Allen & Company LLC as financial advisor to the Creditors Committee; and Young Conaway Stargatt & Taylor, LLP as conflicts counsel.

29.    **Confirmation** means the entry of the Confirmation Order on the docket of the Chapter 11 Cases subject to all conditions specified in Article X.A having been:  (a) satisfied; or (b) waived pursuant to Article X.C.

30.    **Confirmation Date** means the date on which the Bankruptcy Court enters the Confirmation Order on the docket of the Reorganization Cases.

- 4 -

31.     ***Confirmation Hearing*** means the hearing to be held by the Bankruptcy Court regarding confirmation of the Plan, as such hearing may be adjourned or continued from time to time.

32.     ***Confirmation Order*** means the order of the Bankruptcy Court confirming the Plan pursuant to section 1129 of the Bankruptcy Code.

33.     ***Credit Agreement*** means that certain Fourth Amended and Restated Credit Agreement, dated as of May 3, 2005, by and among Young Broadcasting Inc., the banks and other financial institutions listed on the signature pages thereto, Wachovia Bank, National Association, as Administrative Agent and Collateral Agent for the Lenders thereunder and as Issuing Bank, Lehman Commercial Paper Inc. and Merrill Lynch, Pierce, Fenner & Smith Incorporated, as Syndication Agents for the Lenders thereunder, BNP Paribas, as Documentation Agent, and Wachovia Capital Markets, LLC, Lehman Brothers Inc. and Merrill Lynch, Pierce, Fenner & Smith Incorporated, as Joint Lead Arrangers and Joint Lead Book-Runners, as amended, supplemented and/or modified from time to time.

34.     ***Creditors Committee*** means the statutory committee of unsecured creditors appointed in the Reorganization Cases, as constituted from time to time.

35.     ***Cure Amount Notice*** means the notice provided to counterparties to executory contracts and unexpired leases identifying contracts and leases subject to assumption and assignment and the proposed cure amount, if any, for each.

36.     ***Debtor Releases*** means, collectively, (a) all current and former officers, directors and employees of the Debtors and their subsidiaries; (b) all attorneys, financial advisors, accountants, investment bankers, investment advisors, actuaries, professionals, agents (including those jointly retained with the Creditors Committee, if any), affiliates and representatives of the Debtors and their subsidiaries; and (c) the Third Party Releasees, their respective predecessors and successors in interest, and all of their respective current and former members (including ex officio members), officers, directors, employees, partners, attorneys, financial advisors, accountants, investment bankers, investment advisors, actuaries, professionals, agents, affiliates and representatives; *provided*, *however*, that each person or entity referred to in this definition of Debtor Releases is referred to solely in its individual capacity as such and not in respect of any unrelated capacities; and provided further that Debtor Releases shall not include any Non-Released Parties.

37.     ***Debtors*** means, collectively, Young Broadcasting Inc.; Young Broadcasting of Lansing, Inc.; Young Broadcasting of Louisiana, Inc.; Young Broadcasting of Nashville, LLC; Young Broadcasting of Albany, Inc.; Young Broadcasting of Richmond, Inc.; Young Broadcasting of Knoxville, Inc.; Young Broadcasting of Green Bay, Inc.; Young Broadcasting of Davenport, Inc.; Young Broadcasting of Sioux Falls, Inc.; Young Broadcasting of Rapid City, Inc.; Young Broadcasting of San Francisco, Inc.; Young Broadcasting of Nashville, Inc.; Young Broadcasting of Los Angeles, Inc.; Young Broadcasting Shared Services, Inc.; Adam Young Inc.; WKRN, G.P.; WATE, G.P.; KLFY, L.P.; YBT, Inc.; YBK, Inc.; LAT, Inc.; Winnebago Television Corporation; Fidelity Television, Inc.; Honey Bucket Films, Inc. Young Broadcasting Capital Corporation; and Young Communication Inc.

38.     ***Debtors in Possession*** means the Debtors in their capacity as debtors in possession in the Chapter 11 cases pursuant to sections 1101, 1107(a), and 1108 of the Bankruptcy Code.

39.     ***Disbursing Agent*** means any entity (including any applicable Debtor if it acts in such capacity) in its capacity as a disbursing agent under Article VI.4 hereof.

40.     ***Disclosure Statement*** means that certain disclosure statement relating to the Plan, including, without limitation, all exhibits and schedules thereto, as the same may be amended, supplemented, or otherwise modified from time to time, as approved by the Bankruptcy Court pursuant to Section 1125 of the Bankruptcy Code.

41.     ***Disputed Claim*** means any Claim which has not been Allowed pursuant to the Plan or a Final Order, and

(1)     if no proof of claim has been Filed by the applicable bar date or has otherwise been deemed timely Filed under applicable law:  (i) a Claim that has been or hereafter is listed on the Schedules as disputed, contingent, or unliquidated; or (ii) a Claim that has been or hereafter is listed on the Schedules as other than disputed, contingent, or unliquidated, but as to which the Debtors or any other party in interest has interposed an objection or request for estimation which has not been withdrawn or determined by a Final Order; or

(2)     if a proof of claim or request for payment of an Administrative Expense Claim has been Filed by the applicable deadline:  (i) a Claim for which no corresponding Claim has been or hereafter is listed on the Schedules; (ii) a Claim for which a corresponding Claim has been or hereafter is listed on the Schedules as other than disputed, contingent, or unliquidated and as a zero or unknown amount, but the nature or amount of the Claim as asserted in the proof of claim varies from the nature and amount of such Claim as listed on the Schedules; (iii) a Claim for which a corresponding Claim has been or hereafter is listed on the Schedules as disputed, contingent, or unliquidated; or (iv) a Claim for which a timely objection or request for estimation is interposed by the Debtors which has not been withdrawn or determined by a Final Order.

42.     ***Distribution Record Date*** means the Confirmation Date.

43.     ***Effective Date*** means a Business Day after the Confirmation Date specified by the Debtors on which (i) no stay of the Confirmation Order is in effect, and (ii) the conditions to the effectiveness of the Plan specified in Article X hereof have been satisfied or waived.

44.     ***Entity*** has the meaning set forth in Section 101(15) of the Bankruptcy Code.

45.     ***Equityholders Agreement*** means the equityholder agreement substantially in the form and substance attached to the Plan Supplement.

46.     ~~45.~~***Equity Interest*** means the interest of any Holder of an equity security of any of the Debtors, as defined in section 101(16) of the Bankruptcy Code, represented by any

- 6 -

issued and outstanding shares of common or preferred stock or other instrument evidencing a present ownership interest in any of the Debtors, whether or not transferable, or any option, warrant, or right, contractual or otherwise, to acquire any such interest; *provided*, *however*, that Equity Interest shall not include Intercompany Interests.

47. 46. ***Estates*** means the Debtors' estates created pursuant to section 541 of the Bankruptcy Code.

48. 47. ***Exculpated Parties*** means:  (a) the Debtors; (b) the Debtor Releasees; (c) Holdco; (d) the Creditors Committee; (e) the Committee Members; (f) the Indenture Trustees; (g) the Third Party Releasees; and (h) all of the officers, directors, employees, members, managed funds, investment advisors, attorneys, actuaries, financial advisors, accountants, investment bankers, agents, professionals and representatives of each of the foregoing Persons and Entities (whether current or former); *provided*, *however*, that each person or entity referred to in this definition of Exculpated Parties is referred to solely in its individual capacity and not in respect of any unrelated capacities; and provided further that Exculpated Parties shall not include any Non-Released Parties.

49. 48. ***Executory Contract*** means a contract to which one or more of the Debtors is a party that is subject to assumption or rejection under section 365 of the Bankruptcy Code.

50. 49. ***Exit Facility*** means a $10 million revolving credit facility for Reorganized Young, secured by all assets of Reorganized Young and its subsidiaries (as guarantors), entered into on the Effective Date.

51. 50. ***FCC*** means the Federal Communications Commission.

52. 51. ***FCC Consent*** means an order or decision of the FCC granting its consent to the transfer of control of the Debtors' FCC licenses to Holdco.

53. 52. ***File*** means to file with the Bankruptcy Court in the Reorganization Cases, or in the case of Proofs of Claim, to file with the Epiq Bankruptcy Solutions, LLC, the Debtors' claims and solicitation agent.

54. 53. ***Final Distribution Date*** means, in the event there exist on the Effective Date any Disputed Claims, a date selected by the Debtors in their sole discretion, on which all such Disputed Claims have been resolved by Final Order.

55. 54. ***Final Order*** means an order or judgment of the Bankruptcy Court entered by the Clerk of the Bankruptcy Court on the docket in the Reorganization Cases, which has not been reversed, vacated, or stayed and as to which (i) the time to appeal, petition for *certiorari*, or move for a new trial, reargument, or rehearing has expired and as to which no appeal, petition for *certiorari*, or other proceedings for a new trial, reargument, or rehearing shall then be pending, or (ii) if an appeal, writ of *certiorari*, new trial, reargument, or rehearing thereof has been timely sought, such order or judgment of the Bankruptcy Court shall have been affirmed by the highest court to which such order was appealed, or *certiorari* shall have been denied, or a new trial, reargument, or rehearing shall have been denied or resulted in no

- 7 -

modification of such order, and the time to take any further appeal, petition for *certiorari* or move for a new trial, reargument, or rehearing shall have expired; *provided*, *however*, that the possibility that a motion under Rule 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Bankruptcy Rules, may be filed relating to such order shall not cause such order to not be a Final Order.

56. 55. ***General Unsecured Claim*** means any unsecured Claim against any of the Debtors that (a) is not an Other Secured Claim, Administrative Expense Claim, Priority Tax Claim, Priority Non-Tax Claim, 8¾% Senior Subordinated Note Claim, 10% Senior Subordinated Note Claim or Intercompany Claim or (b) is otherwise determined by the Bankruptcy Court to be a General Unsecured Claim.

57. 56. ***Guarantees*** means any and all guarantees issued by Young or any of its subsidiaries in favor of the Holders of Prepetition Lender Claims, the Prepetition Agent, 8¾% Indenture Trustee, 10% Indenture Trustee, Holders of 8¾% Senior Subordinated Notes and/or Holders of 10% Senior Subordinated Notes.

58. 57. ***Guarantors*** means any Debtor that has guaranteed the obligations under and in connection with the Credit Agreement, the 8¾% Senior Subordinated Notes and/or the 10% Senior Subordinated Notes.

59. 58. ***Holdco*** means New Young Broadcasting Holding Co., Inc. (the prevailing bidder selected in accordance with the Bidding Procedures Order and approved by the Bankruptcy Court at the APA Approval Hearing), a new corporation created for the purpose of, among other things, (a) owning one hundred percent (100%) of the Reorganized Young Common Stock issued under the Plan and (b) issuing the Holdco Securities.

60. 59. ***Holdco Board*** means those members of the board of directors of Holdco designated in the Plan Supplement.

61. 60. ***Holdco Class A Common Stock*** means the shares of class A common stock $[   ]0.01 par value of Holdco, [      ]150,000 of which shall be authorized and [   ]at least 72,403 of which shall be initially issued, for distribution and delivery to certain Holders of Prepetition Lender Claims on the Effective Date.

62. 61. ***Holdco Class B Common Stock*** means the shares of class B common stock $[   ]0.01 par value of Holdco, [      ]5,000 of which shall be authorized, all or a portion of which is to be issued by Holdco for distribution and delivery on the Effective Date to those Holders of Prepetition Lender Claims, if any, who would otherwise hold an impermissible "attributable interest" under the Act in violation of the multiple or cross ownership restrictions of the Act, which shares shall be identical in all respects to the shares of Holdco Class A Common Stock, except that the class B common stock (i) shall not provide the holders thereof the right to elect directors or vote on other matters generally submitted to the stockholders for a vote and (ii) shall be convertible, on a one-for-one basis, into shares of class A common stock, but only to the extent that such conversion would not cause the holder thereof, Holdco, or any subsidiary of Holdco to violate the Act.

63. 62. ***Holdco Common Stock*** means, collectively, Holdco Class A Common Stock and the Holdco Class B Common Stock issued by Holdco for distribution and delivery to certain Holders of Prepetition Lender Claims.

64. 63. ***Holdco Corporate Documents*** means the articles of incorporation and by-laws of Holdco, the Holdco Equityholders Agreement, the Holdco Lender Warrant Agreement, the Noteholder Warrant Agreement and any other Holdco documents governing the issuance, ownership and trading (if applicable) of the Holdco Securities.

65. 64. ***Holdco Lender Warrant Agreement*** means that certain agreement setting forth the terms and conditions of the Holdco Lender Warrants, to be Filed as part of the Plan Supplement.

66. 65. ***Holdco Lender Warrants*** means warrants, warrants, having an exercise price of $.01 per share, to purchase Holdco Class A Common Stock, issued by Holdco for distribution and delivery on the Effective Date to certain Holders of Prepetition Lender Claims in lieu of that number of shares of Holdco Common Stock which, if issued to such Holders, would have caused Holdco to be in violation of Section 310(b) of the Act; provided, however, that no Holdco Lender Warrant shall be exercisable to the extent that such exercise would be in violation of, or would cause the holder thereof to hold an impermissible "attributable interest" under, the Act.

67. 66. ***Holdco Notes*** means $75 million of secured term loan notes issued by Holdco for distribution and delivery *pro rata* to the Holders of the Prepetition Lender Claims. The Holdco Notes shall be secured by all of the assets of Holdco, including, but not limited to, the Reorganized Young Common Stock. The Holdco Notes shall have a 5 year maturity commencing with the Effective Date, interest will be payable quarterly at the rate of LIBOR plus 5% (with a LIBOR floor of 3%), and during the first 12 months after the Effective Date interest will be payable in kind (unless certain minimum liquidity and profitability targets are achieved, in which case interest will be payable in cash). Conditions precedent, representations and warranties and covenants shall be usual and customary for financings of this kind, and will include limitations on additional indebtedness of Reorganized Young (except for the Exit Facility).

68. 67. ***Holdco Securities*** means the Holdco Common Stock, the Holdco Lender Warrants, the Noteholder Warrants and the Holdco Notes.

69. 68. ***Holder*** means an Entity holding an Equity Interest, Intercompany Interest or Claim.

70. 69. ***Impaired*** means, when referring to a class of Claims, that such class of Claims is impaired under the Plan within the meaning of section 1124 of the Bankruptcy Code.

71. 70. ***Indenture Trustee*** means U.S. Bank National Association (as successor to Wachovia Bank, National Association (f/k/a First Union National Bank) as indenture trustee under the Indentures.

- 9 -

72. 71. ***Indentures*** means (i) that certain indenture, dated as of December 23, 2003, between Young Broadcasting Inc. (and the Guarantors identified therein) and Indenture Trustee and any successor, as indenture trustee, in the original aggregate principal amount of $140,000,000 for 8¾% senior subordinated notes due 2014; and (ii) that certain Indenture, dated as of March 1, 2001, between Young Broadcasting Inc. (and the Guarantors identified therein) and the Indenture Trustee and any successor, as indenture trustee, in the original aggregate principal amount of $500,000,000 for 10% senior subordinated notes due 2011.

73. 72. ***Insider*** has the meaning set forth in Section 101(31) of the Bankruptcy Code.

74. 73. ***Intercompany Claim*** means a Claim held by a wholly-owned Debtor against another wholly-owned Debtor.

75. 74. ***Intercompany Interest*** means an equity interest in a Debtor held by another Debtor or an equity interest in a Debtor held by an Affiliate of the Debtors, but does not include the common stock and other equity interests in Young.

76. 75. ***New Employment Agreements*** means the employment agreements for Vincent Young, Deborah McDermott and James Morgan, to be Filed under seal as part of the Plan Supplement, which shall be entered into on the Effective Date.

77. 76. ***Non-Released Parties*** means Holders of Claims in Voting Classes voting to reject the Plan, and the persons and entities named on the Schedule of Non-Released Parties which shall be included in the Plan Supplement.

78. 77. ***Noteholder Claim*** means any Claim against any of the Debtors arising under or in connection with (i) the Senior Subordinated Notes issued by Young Broadcasting Inc. under the Indentures, or (ii) the Guarantees.

79. 78. ***Noteholder Warrants*** means detachable 2½-year warrants to purchase up to 2½% of the fully diluted equity interests (assuming exercise of all Holdco Lender Warrants, Noteholder Warrants and any other security convertible into, or exercisable for, Holdco Common Stock) in Holdco, for an exercise price per share determined based upon an enterprise value of Holdco equal to $300,000,000, (i) to be issued to Holders of Allowed Class D Noteholder Claims if Class D votes to accept the Plan, and (ii) with such additional terms and conditions as shall be set forth in an exhibit to the Plan Supplement; provided, however, that no Noteholder Warrant shall be exercisable to the extent that such exercise would be in violation of, or would cause the holder thereof to hold an impermissible "attributable interest" under, the Act.

80. 79. ***Other Secured Claim*** means any Secured Claim against any of the Debtors not constituting a secured Prepetition Lender Claim.

81. ***Pension Plan*** means the defined benefit plan covering the IBEW Local 45 of KRON-TV employees as described in the Debtors' 2009 Form 10-K as filed with the SEC.

82.    80. ***Plan*** means this joint chapter 11 plan, including the exhibits hereto, as the same may be amended or modified from time to time in accordance with the provisions of the Bankruptcy Code and the terms hereof.

83.    81. ***Plan Documents*** means the documents to be executed, delivered, assumed, and/or performed in conjunction with the consummation of the Plan on the Effective Date, including without limitation the Holdco Corporate Documents, the Holdco Securities, and the New Employment Agreements.  Each of the Plan Documents to be entered into as of the Effective Date, except the New Employment Agreements, will be filed in draft form as an exhibit to the Plan Supplement.

84.    82. ***Plan Supplement*** means a supplemental appendix to the Plan that will contain the draft form of the Plan Documents and certain other schedules and exhibits to be filed prior to the Confirmation Hearing.

85.    83. ***Prepetition Agent*** means Wachovia Bank, National Association as administrative agent and collateral agent under the Credit Agreement.

86.    84. ***Prepetition Lender*** means those parties that are lenders under the Credit Agreement.

87.    85. ***Prepetition Lender Claim*** means any Claim arising from or based upon the Secured Obligations.

88.    86. ***Priority Non-Tax Claim*** means any Claim against any of the Debtors other than an Administrative Expense Claim or a Priority Tax Claim, entitled to priority in payment as specified in section 507(a)(3), (4), (5), (6), (7), or (9) of the Bankruptcy Code.

89.    87. ***Priority Tax Claim*** means any Claim of a governmental unit of the kind entitled to priority in payment as specified in sections 502(i) and 507(a)(8) of the Bankruptcy Code.

90.    88. ***Ratable Proportion*** means the ratio (expressed as a percentage) of the amount of an Allowed Claim in a Class or category of Administrative Expense Claim to the aggregate amount of all Allowed Claims in the same Class or category of Administrative Expense Claim.

91.    89. ***Reinstated*** means (a) leaving unaltered the legal, equitable, and contractual rights to which a Claim entitles the Holder of such Claim so as to leave such Claim Unimpaired or (b) notwithstanding any contractual provisions or applicable law that entitles the Holder of a Claim to demand or receive accelerated payment of such Claim after the occurrence of a default:  (i) curing any such default that occurred before or after the Commencement Date, other than a default of a kind specified in section 365(b)(2) of the Bankruptcy Code or of a kind that section 365(b)(2) expressly does not require to be cured; (ii) reinstating the maturity (to the extent such maturity had not otherwise accrued by the passage of time) of such Claim as such maturity existed before such default; (iii) compensating the Holder of such Claim for any damages incurred as a result of any reasonable reliance by such Holder on such contractual provision or such applicable law; (iv) if such Claim arises from a failure to perform a

- 11 -

nonmonetary obligation other than a default arising from failure to operate a nonresidential real property lease subject to section 365(b)(1)(A) of the Bankruptcy Code, compensating the Holder of such Claim (other than a Debtor or an insider) for any actual pecuniary loss incurred by such Holder as a result of such failure; and (v) not otherwise altering the legal, equitable or contractual rights to which such Claim entitles the Holder.

92. 90. ***Releasing Parties*** means the Prepetition Agent, Prepetition Lenders, the Creditors Committee, Committee Members, and Holders of Claims in Voting Classes who do not vote to reject the Plan, and, to the fullest extent permissible under applicable law, as such may be extended or interpreted subsequent to the Effective Date, all other Holders of Claims in Voting Classes who reject the Plan or Equity Interests who accept distributions or other treatment contemplated under the Plan; *provided*, *however*, that each person or entity referred to in this definition of Releasing Parties is referred to solely in its individual capacity as such and not in respect of any unrelated capacities; and provided further that Releasing Parties shall not include any Non-Released Parties.

93. 91. ***Reorganization Cases*** means the jointly administered cases under chapter 11 of the Bankruptcy Code commenced by the Debtors on February 13, 2009 and September 16, 2009, in the United States District Court for the Southern District of New York and styled *In re Young Broadcasting Inc., et al.*, Case No. 09-10645 (AJG) (Jointly Administered).

94. 92. ***Reorganized Debtors*** means the Debtors, and any successor thereto by merger, consolidation, or otherwise on and after the Effective Date, excluding Holdco.

95. 93. ***Reorganized Young*** means Young on and after the Effective Date.

96. 94. ***Reorganized Young Board*** means those members of the board of directors of Reorganized Young designated in the Plan Supplement.

97. 95. ***Reorganized Young Common Stock*** means [__]100 shares of common stock, $0.01 par value, of Reorganized Young, which shall represent one hundred percent of the issued and outstanding equity interests in Reorganized Young on the Effective Date.

98. 96. ***Restructuring Transactions*** means, collectively, those mergers, consolidations, restructurings, dispositions, liquidations or dissolutions that may be required or that the Debtors determine to be necessary or appropriate to effectuate the purpose of the Plan, which are expected to occur on and after the Effective Date, including, without limitation: the issuance of all of the Reorganized Young Common Stock to Holdco; the issuance by Holdco of the Holdco Securities for distribution and delivery to the Holders of the Prepetition Lender Claims and the Holders of the Allowed Noteholder Claims; and the conversion of Reorganized Young to a Delaware limited liability company on the third Business Day after the Effective Date.

99. 97. ***Schedules*** means, collectively, the schedules of assets and liabilities and the statement of financial affairs filed by the Debtors under section 521 of the Bankruptcy Code, Bankruptcy Rule 1007, and the Official Bankruptcy Forms of the Bankruptcy Rules in the

- 12 -

Reorganization Cases, as such schedules and statements may have been or may be supplemented or amended from time to time through the Confirmation Date pursuant to Bankruptcy Rule 1007.

100. ~~98.~~ **Secured Claim** means a Claim to the extent (i) secured by Collateral, the amount of which is equal to or less than the value of such Collateral (A) as set forth in the Plan, (B) as agreed to by the Holder of such Claim and the Debtors, or (C) as determined by a Final Order in accordance with section 506(a) of the Bankruptcy Code, or (ii) secured by the amount of any rights of setoff of the Holder thereof under section 553 of the Bankruptcy Code.

101. ~~99.~~ **Secured Obligations** means the Secured Obligations (as defined in the Credit Agreement) outstanding under the Credit Agreement, including, without limitation, all pre- and, to the extent they are entitled to such under Section 506, post-petition interest due and owing thereunder and all unpaid fees and expenses related thereto, immediately prior to the Effective Date.

102. ~~100.~~ **Securities Act** means the Securities Act of 1933, as amended, and all rules and regulations promulgated thereunder.

103. ~~101.~~ **Senior Subordinated Notes** means the notes issued by Young Broadcasting Inc. under the Indentures.

104. ~~102.~~ **Solicitation Procedures Order** means the order (A) Approving Disclosure Statement; (B) Fixing a Voting Record Date; (C) Approving Solicitation and Voting Procedures with Respect to Debtors' Chapter 11 Plan; (D) Approving Form of Solicitation Package and Notices; and (E) Scheduling Certain Dates in Connection Therewith entered by the Bankruptcy Court on [_____.__,] 2009 (Docket No. __).

105. ~~103.~~ **Tax Code** means the Internal Revenue Code of 1986, as amended.

106. ~~104.~~ **Third Party Release** means the release set forth in Article ~~[——]~~XII.C.

107. ~~105.~~ **Third Party Releasees** means, collectively, the Prepetition Agent, Prepetition Lenders, Indenture Trustees, Holdco, Creditors Committee, Committee Members, Committee Professionals, and each of their respective current and former members (including ex officio members), officers, directors, managed funds, investment advisors, agents, financial advisors, attorneys, employees, partners, Affiliates and representatives; *provided*, *however*, that each person or entity referred to in this definition of Third Party Releasees is referred to solely in its individual capacity as such and not in respect of any unrelated capacities; and provided further that Third Party Releasees shall not include any Non-Released Parties.

108. ~~106.~~ **Unimpaired** means, when referring to a class of Claims, that such class of Claims is not impaired pursuant to section 1124 of the Bankruptcy Code.

109. ~~107.~~ **Voting Classes** means Classes B, D and E of the Plan.

110. ~~108.~~ **Voting Record Date** means two Business Days after the date upon which the Solicitation Procedures Order is entered by the Bankruptcy Court on its docket.

- 13 -

111. ~~109.~~ **Young** means Debtor Young Broadcasting Inc.

**B.    Rules of Interpretation and Computation of Time**.

1.    ***Rules of Interpretation***:  For purposes of the Plan:  (a) whenever from the context it is appropriate, each term, whether stated in the singular or the plural, shall include both the singular and the plural, and pronouns stated in the masculine, feminine, or neuter gender shall include the masculine, feminine, and the neuter gender; (b) unless otherwise specified, any reference in the Plan to a contract, instrument, release, indenture, or other agreement or document being in a particular form or on particular terms and conditions means that such documents shall be substantially in such form or substantially on such terms and conditions; (c) unless otherwise specified, any reference in the Plan to an existing document, schedule, or exhibit, whether or not Filed, shall mean such document, schedule, or exhibit, as it may have been or may be amended, modified, or supplemented; (d) any reference to an Entity as a Holder of a Claim or Interest includes that Entity's successors and assigns; (e) unless otherwise specified, all references in the Plan to Articles are references to Articles of the Plan or to the Plan; (f) unless otherwise specified, all references in the Plan to exhibits are references to exhibits in the Plan Supplement; (g) unless otherwise specified, the words "herein," "hereof," and "hereto" refer to the Plan in its entirety rather than to a particular portion of the Plan; (h) subject to the provision of any contract, certificate of incorporation, bylaw, instrument, release, or other agreement or document entered into in connection with the Plan, the rights and obligations arising pursuant to the Plan shall be governed by, and construed and enforced in accordance with applicable federal law, including the Bankruptcy Code and Bankruptcy Rules; (i) captions and headings to Articles are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of the Plan; (j) unless otherwise set forth in the Plan, the rules of construction set forth in Section 102 of the Bankruptcy Code shall apply; (k) any term used in capitalized form in the Plan that is not otherwise defined but that is used in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning assigned to such term in the Bankruptcy Code or the Bankruptcy Rules, as applicable; (l) all references to docket numbers of documents Filed in the Chapter 11 Cases are references to the docket numbers under the Bankruptcy Court's CM/ECF system; (m) all references to statutes, regulations, orders, rules of courts, and the like shall mean as amended from time to time, as applicable to the Chapter 11 Cases, unless otherwise stated; and (n) any immaterial effectuating provision may be interpreted by the Reorganized Debtors in such a manner that is consistent with the overall purpose and intent of the Plan all without further notice to or action, order, or approval of the Bankruptcy Court or any other Entity.  Additionally, except as otherwise specifically provided in the Plan to the contrary, references in the Plan to the Debtors or to the Reorganized Debtors shall mean the Debtors and the Reorganized Debtor, as applicable, to the extent the context requires.

2.    ***Computation of Time***:  In computing any period of time prescribed or allowed, the provisions of Bankruptcy Rule 9006(a) shall apply.  If the date on which a transaction may occur pursuant to the Plan shall occur on a day that is not a Business Day, then such transaction shall instead occur on the next succeeding Business Day.

- 14 -

### Article II.    ADMINISTRATIVE EXPENSE CLAIMS AND PRIORITY TAX CLAIMS

**A.    Administrative Expense Claims**.

On the Effective Date or as soon thereafter as is practicable, except to the extent that a Holder of an Allowed Administrative Expense Claim against any of the Debtors agrees to a different treatment, each Holder of an Allowed Administrative Expense Claim shall receive Cash in an amount equal to the Allowed amount of such Claim; *provided however*, that Allowed Administrative Expense Claims representing liabilities incurred in the ordinary course of business by any of the Debtors, as debtors in possession, shall be paid by the ~~Debtors or by the~~ Reorganized Debtors in the ordinary course of business, consistent with past practice and in accordance with the terms and subject to the conditions of any agreements governing, instruments evidencing, or other documents relating to such transactions.

Administrative Expense Claims incurred by the Debtors after the Effective Date including (without limitation) Claims for professionals' fees and expenses incurred after such date, may be paid by the Reorganized Debtors in the ordinary course of business and without application for or Court approval, subject to any agreements with any Claim holders.

The Holders of Allowed Administrative Expense Claims shall have recourse only to the Reorganized Debtors and neither the Debtors, their Estates nor their respective properties shall be subject to any such Claims.

**B.    Compensation and Reimbursement Claims**.

All entities seeking an award by the Bankruptcy Court of compensation for services rendered or reimbursement of expenses incurred through and including the Confirmation Date under section 503(b)(2), 503(b)(3) (except under section 503(b)(3)(D), see below), 503(b)(4), or 503(b)(5) of the Bankruptcy Code (i) shall file their respective final applications for allowance of compensation for services rendered and reimbursement of expenses incurred by the date that is forty-five (45) days after the Effective Date, and (ii) except as provided below, shall be paid in full in Cash in such amounts as are allowed by the Bankruptcy Court (A) five Business Days after the date upon which the order relating to any such Administrative Expense Claim is entered, or (B) upon such other terms as may be mutually agreed upon between the Holder of such an Administrative Expense Claim and the Debtors.  The Debtors or Reorganized Debtors ~~or the Disbursing Agent~~ are authorized to pay compensation for services rendered or reimbursement of expenses incurred after the Confirmation Date and until the Effective Date in the ordinary course and without the need for Bankruptcy Court approval.

All Entities seeking an award by the Bankruptcy Court of compensation for services rendered or reimbursement of expenses incurred during the Reorganization Cases under section 503(b)(3)(D) of the Bankruptcy Code shall file their respective applications prior to or on the deadline for filing objections to confirmation of this Plan.

**C.    Priority Tax Claims**.

~~Except to the extent that a Holder of an Allowed Priority Tax Claim agrees to a different treatment, each Holder of an Allowed Priority Tax Claim shall receive payment in full~~

- 15 -

~~in Cash of the unpaid portion of an Allowed Priority Tax Claim on, or as soon thereafter as is reasonably practicable, the later to occur of (i) the Effective Date, (ii) the first Business Day after the date that is thirty (30) calendar days after the date such Priority Tax Claim becomes an Allowed Priority Tax Claim, and (iii) the date that such Claim becomes payable under any agreement between the applicable Debtor and the Holder of such Claim. All Allowed Priority Tax Claims that are not due and payable on or before the Effective Date shall be paid in the ordinary course of business as such obligations become due.~~ On the later of (a) the date a Priority Tax Claim becomes an Allowed Priority Tax Claim or (b) the date a Priority Tax Claim first becomes payable pursuant to any agreement between a Debtor (or a Reorganized Debtor) and the Holder of such Priority Tax Claim, at the sole option of the Debtors (or the Reorganized Company), such holder of an Allowed Priority Tax Claim shall be entitled to receive, on account of such Priority Tax Claim, in full satisfaction, settlement, release, and discharge of, and in exchange for, such Priority Tax Claim, (i) Cash equal to the unpaid portion of such Allowed Priority Tax Claim, (ii) treatment in any other manner such that its Allowed Priority Tax Claims shall not be Impaired, including periodic payments on a quarterly basis over a period ending not later than five (5) years after the Petition Date, in accordance with the provisions of sections 511 and 1129(a)(9)(C) of the Bankruptcy Code, or (iii) such other treatment as to which the Reorganized Debtor and such Holder shall have agreed upon in writing. Clause (iii) of the preceding sentence shall not be construed to avoid the need for Bankruptcy Court approval of a Priority Tax Claim when such Bankruptcy Court approval is otherwise required by the Bankruptcy Code.

## Article III.   CLASSIFICATION OF CLAIMS AND EQUITY INTERESTS

The following table designates the Classes of Claims against and Equity Interests in the Debtors and specifies which of those Classes are (i) impaired or unimpaired by the Plan, (ii) entitled to vote to accept or reject the Plan in accordance with section 1126 of the Bankruptcy Code, and (iii) deemed to reject the Plan.

| *Class* | *Designation* | *Impairment* | *Entitled to Vote* |
|---------|---------------|--------------|--------------------|
| Class A | Priority Non-Tax Claims | Unimpaired | No (deemed to accept) |
| Class B | Prepetition Lender Claims | Impaired | Yes |
| Class C | Other Secured Claims | Unimpaired | No (deemed to accept) |
| Class D | Noteholder Claims | Impaired | Yes |
| Class E | General Unsecured Claims | Impaired | Yes |
| Class F | Equity Interests | Impaired | No (deemed to reject) |
| Class G | Intercompany Interests | Impaired | No (deemed to reject) |

Pursuant to sections 1122 and 1123 of the Bankruptcy Code, Claims and Equity Interests are classified for all purposes, including, without express or implied limitation, voting, confirmation and distribution pursuant to the Plan, as set forth herein. A Claim or Equity Interest shall be deemed classified in a particular Class only to the extent that the Claim or Equity Interest qualifies within the description of that Class, and shall be deemed classified in a different Class to the extent that any remainder of such Claim or Equity Interest qualifies within the description of such different Class. A Claim or Equity Interest is in a particular Class only to the

- 16 -

extent that such Claim or Equity Interest is Allowed in that Class and has not been paid or otherwise settled prior to the Effective Date.

**Article IV.** **TREATMENT OF CLAIMS AND EQUITY INTERESTS**

**A.** **Class A - Priority Non-Tax Claims**.

(1)    <u>Classification</u>.  Class A consists of the Priority Non-Tax Claims against the Debtors.

(2)    <u>Treatment</u>.  Except to the extent that a Holder of an Allowed Priority Non-Tax Claim against any of the Debtors has agreed to a different treatment of such Claim, each such Holder shall receive, in full satisfaction of such Claim, Cash in an amount equal to such Claim, on or as soon as reasonably practicable after the later of (i) the Effective Date, (ii) the date such Claim becomes Allowed, and (iii) the date for payment provided by any agreement or understanding between the parties.

(3)    <u>Voting</u>.  Class A is an Unimpaired Class, and the Holders of Class A Claims will be conclusively deemed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.  Therefore, the Holders of Class A Claims will not be entitled to vote to accept or reject the Plan.

**B.** **Class B - Prepetition Lender Claims**.

(1)    <u>Classification</u>.  Class B consists of Prepetition Lender Claims against the Debtors arising under the Credit Agreement.

(2)    <u>Treatment</u>.  The Prepetition Lender Claims are Allowed in full and shall not be subject to any avoidance, reductions, set off, recharacterization, subordination (whether equitable, contractual, or otherwise), counterclaim, cross-claims, defenses, disallowance, impairment, or any other challenges under any applicable law or regulation by any person or Entity.  The Prepetition Lender Claims are Allowed in the aggregate amount of $338,451,923.85 (comprising outstanding principal of $338,125,000.00, as of the Commencement Date, plus unpaid prepetition fees, costs and expenses).

Each Holder of a Prepetition Lender Claim, in full and complete satisfaction of the obligations owed to the Prepetition Lenders under the Credit Agreement, shall receive on the Effective Date its Ratable Proportion of the Holdco Notes, Holdco Common Stock and/or Holdco Lender Warrants, as provided for under the Holdco Corporate Documents and in accordance with the terms of the Plan.

(3)    <u>Voting</u>.  Class B is Impaired, and Holders of Class B Claims will be entitled to vote to accept or reject the Plan.

**C.** **Class C - Other Secured Claims**.

(1)    <u>Classification</u>.  Class C consists of Claims against any Debtor which are claims that are secured by liens on Debtor property or that are subject to setoff under section 553

- 17 -

of the Bankruptcy Code to the extent of the value of the property or to the extent of the amount subject to setoff, as applicable, as determined pursuant to section 506(a) of the Bankruptcy Code.

(2)     Treatment.  Each Holder of Allowed Class C Claims shall receive, at the applicable Debtor's election, in full and final satisfaction of such Allowed Class C Claims, either (i) return of its collateral, (ii) payment in full in Cash, (iii) receive such other treatment as the Debtors and the Holder of such Other Secured Claim may otherwise agree or (iv) be Reinstated.

(3)     Voting.  Class C is Unimpaired, and Holders of Class C Claims will be conclusively deemed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.

### D.     Class D - Noteholder Claims.

(1)     Classification.  Class D consists of 10% Senior Subordinated Note Claims and 8¾% Senior Subordinated Note Claims against the Debtors.

(2)     Treatment.  If Class D votes to accept the Plan, then on the Plan Effective Date, Holders of Allowed Class D Claims shall receive, in full and final satisfaction of such Allowed Class D Claims, their Ratable Proportion of Noteholder Warrants.  If Class D fails to accept the Plan, the Holders of Class D Claims shall not receive a distribution under the Plan.

(3)     Voting.  Class D is Impaired, and Holders of Class D Claims will be entitled to vote to accept or reject the Plan.

### E.     Class E - General Unsecured Claims.

(1)     Classification.  Class E consists of General Unsecured Claims against the Debtors.

(2)     Treatment.  Holders of Allowed Class E Claims shall receive, in full and final satisfaction of such Allowed Class E Claims, a one-time Cash distribution of their Ratable Proportion of $1,000,000 on the later of (i) the Plan Effective Date or (ii) 30 days after the date on which the Claim becomes Allowed.

(3)     Voting.  Class E is Impaired, and Holders of Class E Claims will be entitled to vote to accept or reject the Plan.

### F.     Class F – Equity Interests.

(1)     Classification.  Class F consists of all Equity Interests in Young.

(2)     Treatment.  All existing Equity Interests of Young shall be impaired, with no distribution to be made under the Plan to Holders thereof, and all such existing Equity Interests of Young and all warrants, conversion rights, rights of first refusal and other rights, contractual or otherwise, to acquire or receive any Equity Interests in Young, if any, shall be deemed cancelled as of the Effective Date.

- 18 -

(3)     Voting.  Class F is Impaired, and Holders of Class F Equity Interests are conclusively deemed to reject the Plan.  Holders of Class F Equity Interests are therefore not entitled to vote to accept or reject the Plan.

### G.     Class G – Intercompany Interests.

(1)     Classification.  Class G consists of all Intercompany Interests in the Debtors.

(2)     Treatment.  There shall be no distributions to Holders of Intercompany Interests.  Nonetheless, except as otherwise set forth in the Plan, Intercompany Interests will not be canceled and, to implement the Plan, will be addressed as set forth in Article VI.7G hereof.

(3)     Voting.  Class G is Impaired, and the Holders of Class G Intercompany Interests are conclusively deemed to reject the Plan.  Holders of Class G Intercompany Interests are therefore not entitled to vote to accept or reject the Plan.

### Article V.     ACCEPTANCE OR REJECTION OF THE PLAN

### A.     Presumed Acceptance of Plan.

Classes A and C are Unimpaired under the Plan, and are therefore presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.

### B.     Voting Classes.

Each Holder of an Allowed Claim as of the Voting Record Date in each of the Voting Classes shall be entitled to vote to accept or reject the Plan.

### C.     Acceptance by Impaired Classes of Claims.

Pursuant to section 1126(c) of the Bankruptcy Code, and except as otherwise provided in section 1126(e) of the Bankruptcy Code, an Impaired Class of Claims has accepted the Plan if (not counting the votes of Insiders) (i) the Holders of at least two-thirds in dollar amount of the Allowed Claims actually voting in that Class have voted to accept the Plan and (ii) Holders of more than one-half in number of the Allowed Claims actually voting in such Class have voted to accept the Plan.

### D.     Presumed Rejection of Plan.

Classes F and G are Impaired and shall receive no distribution under the Plan on account of their Interests and are, therefore, presumed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code.

### E.     Tabulation of Ballots.

The Debtors will tabulate all votes on the Plan on a consolidated basis for the purpose of determining whether the Plan satisfies section 1129(a)(8) and (10) of the Bankruptcy

- 19 -

Code.  All votes on account of Allowed Claims shall be counted as if filed against a single consolidated estate.

**F.** **Confirmation Pursuant to Section 1129(a)(10) and 1129(b) of the Bankruptcy Code**.

Section 1129(a)(10) of the Bankruptcy Code shall be satisfied for purposes of Confirmation by acceptance of the Plan by an Impaired Class of Claims.  The Debtors reserve the right to seek Confirmation of the Plan pursuant to section 1129(b) of the Bankruptcy Code, to the extent applicable, with respect to any rejecting Class of Claims or Interests.  To the extent any Class of Claims vote to reject the Plan, the Debtors further reserve the right to modify the Plan in accordance with Article XIV.H hereof.

**G.** **Controversy Concerning Impairment**.

If a controversy arises as to whether any Claims or Interests, or any Class of Claims or Interests, are Impaired, the Bankruptcy Court shall, after notice and a hearing, determine such controversy on or before the Confirmation Date.

**Article VI.** **MEANS FOR IMPLEMENTATION**

**A.** **Deemed Consolidation of Debtors for Plan Purposes Only**.

Subject to the occurrence of the Effective Date, the Debtors shall be deemed consolidated for the following purposes under the Plan:  (i) no distributions shall be made under the Plan on account of the Intercompany Claims; (ii) all guaranties by any of the Debtors of the obligations of any other Debtor arising prior to the Effective Date shall be deemed eliminated so that any Claim against any Debtor and any guaranty thereof executed by any other Debtor and any joint and several liability of any of the Debtors shall be deemed to be one obligation of the deemed consolidated Debtors; and (iii) each and every Claim filed or to be filed in the Reorganization Case of any of the Debtors shall be deemed filed against the deemed consolidated Debtors and shall be deemed one Claim against and obligation of the deemed consolidated Debtors.

Such deemed consolidation, however, shall not (other than for purposes related to funding distributions under the Plan and as set forth above in this Article) affect:  (i) the legal and organizational structure of the Debtors; (ii) Intercompany Claims by and among the Debtors; (iii) pre- and post-Commencement Date guaranties, liens, and security interests that are required to be maintained (A) in connection with executory contracts or unexpired leases that were entered into during the Reorganization Cases or that have been or will be assumed by ~~Holdco~~the applicable Reorganized Debtor, (B) pursuant to the Plan; and (iv) distributions out of any insurance policies or proceeds of such policies.

**B.** **Restructuring Transactions**.

On the Effective Date (a) Reorganized Young shall issue the Reorganized Young Common Stock and shall distribute and deliver such Reorganized Young Common Stock to Holdco; (b) Holdco shall acquire and own all of the Reorganized Young Common Stock in

- 20 -

exchange for the issuance of the Holdco Securities; (c) Holdco shall issue the Holdco Securities for distribution and delivery to the Holders of the Prepetition Lender Claims and the Holders of the Allowed Noteholder Claims pursuant to the terms of the Plan; and (d) the Prepetition Lender Claims shall be satisfied and the Secured Obligations shall be cancelled.  On the third Business Day after the Effective Date, Reorganized Young shall convert to a Delaware limited liability company.  The Plan Supplement will contain a description of all relevant Restructuring Transactions that will occur pursuant to the Plan, including the terms of the Exit Facility into which Reorganized Young will enter as of the Effective Date.  Furthermore, on the Effective Date, or as soon as reasonably practicable thereafter, the Reorganized Debtors may take all actions as may be necessary or appropriate to effect any transaction described in, approved by, contemplated by, or necessary to effectuate the Plan, including:  (a) the execution and delivery of appropriate agreements or other documents of merger, consolidation, or reorganization containing terms that are consistent with the terms of the Plan and that satisfy the requirements of applicable law; (b) the execution and delivery of appropriate instruments of transfer, assignment, assumption, or delegation of any property, right, liability, duty, or obligation on terms consistent with the terms of the Plan; (c) the filing of appropriate certificates of incorporation (or other formation documents), merger, or consolidation with the appropriate governmental authorities pursuant to applicable law; and (d) all other actions that the Reorganized Debtor determine are necessary or appropriate.

**C.      Sources of Plan Distributions**.

Distributions under the Plan shall be made from the Debtors' existing assets, including with Cash the Debtors have on hand and Cash generated by the operations of the Reorganized Debtors, from availability under the Exit Facility, and from Holdco as provided under the Plan.

(1)      Holdco Notes:  On the Effective Date, Holdco shall issue the Holdco Notes for distribution to Holders of Prepetition Lender Claims in partial satisfaction of such Prepetition Lender Claims.

(2)      Holdco Common Stock:  On the Effective Date, Holdco shall issue the Holdco Common Stock for distribution to certain Holders of Prepetition Lender Claims in partial satisfaction of such Prepetition Lender Claims.

(3)      Holdco Lender Warrants:  On the Effective Date, Holdco shall issue the Holdco Lender Warrants for distribution to  certain Holders of Prepetition Lender Claims in partial satisfaction of such Prepetition Lender Claims.

(4)      Noteholder Warrants:  On the Effective Date, except as otherwise set forth in the Plan, Holdco shall issue the Noteholder Warrants for distribution to Holders of Allowed Noteholder Claims in full and final satisfaction of the Allowed Noteholder Claims.

**D.      Authorization of Holdco Securities**.

On or prior to the Effective Date, Holdco shall be formed and shall issue or reserve for issuance all Holdco Securities required to be issued pursuant hereto.  The Holdco Securities to be issued pursuant to the Plan will be issued without registration under the

Securities Act or any similar federal, state, or local law in reliance upon the exemptions set forth in section 1145 of the Bankruptcy Code. On and after the Effective Date, Holdco will not be a reporting corporation under the Securities Exchange Act, and its shares will not be listed on any national securities exchange. All of the Holdco Securities issued pursuant to the Plan shall be duly authorized, validly issued, and, if applicable, fully paid and non-assessable. Each distribution and issuance referred to in Article VII hereof shall be governed by the terms and conditions set forth herein applicable to such distribution or issuance and by the terms and conditions of the instruments evidencing or relating to such distribution or issuance, which terms and conditions shall bind each Entity receiving such distribution or issuance.

### E. Corporate Existence.

Except as otherwise provided in the Plan, each Debtor shall continue to exist after the Effective Date as a separate corporate entity, limited liability company, partnership, or other form, as the case may be, with all the powers of a corporation, limited liability company, partnership, or other form, as the case may be, pursuant to the applicable law in the jurisdiction in which each applicable Debtor is incorporated or formed and pursuant to the respective certificate of incorporation and bylaws (or other formation documents) in effect prior to the Effective Date, except to the extent such certificate of incorporation and bylaws (or other formation documents) are amended by or in accordance with the Plan or otherwise, and to the extent such documents are amended, such documents are deemed to be amended pursuant to the Plan and require no further action or approval. On the third Business Day after the Effective Date, Reorganized Young shall convert to a Delaware limited liability company.

### F. Vesting of Assets in the Reorganized Debtors.

Except as otherwise provided in the Plan or any agreement, instrument, or other document incorporated therein, on the Effective Date, all property in each Debtor Estate, all Causes of Action, and any property acquired by any of the Debtors pursuant to the Plan shall vest in each respective Reorganized Debtor, free and clear of all liens, Claims, charges, or other encumbrances. On and after the Effective Date, except as otherwise provided in the Plan, each Reorganized Debtor may operate its business and may use, acquire, or dispose of property and compromise or settle any Claims or Causes of Action without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Codes or the Bankruptcy Rules.

### G. Intercompany Interests.

Except as otherwise provided in the Plan, Intercompany Interests shall be retained, and the legal, equitable and contractual rights to which the Holders of such Intercompany Interests are entitled shall remain unaltered in order to implement the Plan.

### H. Cancellation of Existing Notes, Interests and Agreements.

On the Effective Date, except as otherwise provided in the Plan, all notes, stock, instruments, certificates and other documents evidencing the Claims or rights of any Holder of a Claim against the Debtors, including all indentures and notes evidencing such Claims and any options or warrants to purchase Equity Interests, obligating the Debtors to issue, transfer, or sell Equity Interests or any other capital stock of the Debtors, shall be canceled, the Holders thereof

shall have no further rights or entitlements in respect thereof against the Debtors, all Liens shall be automatically released, and the obligations of the Debtors thereunder or in any way related thereto shall be fully released and discharged. On the Effective Date, except to the extent otherwise provided in the Plan, any indenture relating to any of the foregoing, including, without limitation, the Senior Subordinated Notes, shall be deemed to be canceled, as permitted by Section 1123(a)(5)(F) of the Bankruptcy Code, and the obligations of the Debtors thereunder shall be fully released and discharged without the need for any further order of the Bankruptcy Court. ~~Notwithstanding the foregoing, the Indentures shall continue in effect solely for the purposes of (i) allowing the Indenture Trustee to make any distributions on account of holders of Claims in those classes pursuant to the Plan and to perform such other necessary administrative functions with respect thereto, and (ii) permitting the Indenture Trustee to maintain any rights or Liens they may have for fees, costs, and expenses under the Indenture.~~

## I. **Board of Directors**.

The members of the initial Board of Directors of Holdco and each of the Reorganized Debtors shall be designated by the Prepetition Lenders and disclosed in the Plan Supplement, provided that Reorganized Young's Chairman and Chief Executive Officer shall be Vincent Young.

## J. **Officers**.

The officers of the Debtors immediately prior to the Effective Date shall serve as the initial officers of Holdco and the Reorganized Debtors. Such officers shall serve in accordance with applicable non-bankruptcy law and their New Employment Agreements. After the Effective Date, the officers of Holdco and each of the Reorganized Debtors shall be determined by the board of directors, or managing member as applicable, of each such respective entity.

## K. **Corporate Action**.

Upon the Effective Date, the Debtors shall perform each of the actions and effect each of the transfers required by the terms of the Plan, in the time period allocated therefore, and all matters provided for under the Plan that would otherwise require approval of the stockholders, partners, members, directors, or comparable governing bodies of the Debtors shall be deemed to have occurred and shall be in effect from and after the Effective Date pursuant to the applicable general corporation law (or other applicable law) of the states in which the Debtors are incorporated or organized, without any requirement of further action by the stockholders, members, or directors (or other governing body) of the Debtors.

## L. **Release of Liens**.

Except as otherwise provided in Article IV.C with respect to Class C or in any contract, instrument, release or other agreement or document entered into or delivered in connection with the Plan, on the Effective Date, all mortgages, deeds of trust, liens or other security interests against the property of any estate will be fully released and discharged. The Reorganized Debtors may file a release of any lien of record to effectuate the Plan and any recording authority shall accept such release.

**M.     Effectuating Documents and Further Transactions**.

Each of the officers of each of the Debtors or Reorganized Debtors is authorized and directed to execute, deliver, file, or record such contracts, instruments, releases, indentures, and other agreements or documents and take such actions as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.

**N.     Claims Administration, Prosecution and Plan Distributions**.

The Debtors shall continue to have the power and authority to prosecute and resolve objections to Disputed Claims and may settle the same without further motion to this Court.  The Debtors shall also continue to have the power and authority to hold, manage and distribute Plan distributions to the holders of Allowed Claims.

**Article VII.   DISTRIBUTIONS**

**A.     Distribution Record Date**.

As of the close of business on the Distribution Record Date, the various transfer registers for each of the Classes of Claims or Equity Interests as maintained by the Debtors, the Prepetition Agent and/or the Indenture Trustee, or their respective agents, shall be deemed closed, and there shall be no further changes in the record holders of any of the Claims or Equity Interests.  The Debtors shall have no obligation to recognize any transfer of the Claims or Equity Interests occurring on or after the Distribution Record Date.  The Debtors shall be entitled to recognize and deal for all purposes hereunder only with those record holders stated on the transfer ledgers as of the close of business on the Distribution Record Date, to the extent applicable.

**B.     Date of Distributions**.

Except as otherwise provided herein, any distributions and deliveries to be made hereunder shall be made on the Effective Date or as soon thereafter as is practicable.  In the event that any payment or act under the Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on or as soon as reasonably practicable after the next succeeding Business Day, but shall be deemed to have been completed as of the required date.

**C.     Post-Petition Interest and Costs on Claims**.

Unless expressly provided in the Plan, the Confirmation Order or any contract, instrument, release, settlement or other agreement entered into in connection with the Plan, or required by applicable bankruptcy law, post-petition interest, costs, fees or expenses shall not accrue on or after the Commencement Date on account of any Claim.

**D.     Disbursing Agent**.

All Cash distributions under the Plan shall be made by Reorganized Young as Disbursing Agent on behalf of all of the Debtors, or such other entity designated by the

- 24 -

applicable Reorganized Debtor as a Disbursing Agent on or after the Effective Date. A Disbursing Agent shall not be required to give any bond or surety or other security for the performance of its duties unless otherwise ordered by the Bankruptcy Court, and, in the event that a Disbursing Agent is so otherwise ordered, all costs and expenses of procuring any such bond or surety shall be borne by the applicable Debtor. Holdco shall be the Disbursing Agent for the Holdco Securities. Holdco may rely on the books and records of the Prepetition Agent for the purpose of making distributions of Holdco Securities to the Prepetition Lenders. Holdco may rely on the books and records of the Indenture Trustee for the purpose of making distributions of Noteholder Warrants to Holders of Class D Claims if Class D votes to accept the Plan.

E.     **Rights and Powers of Disbursing Agent**.

The Disbursing Agent shall be empowered to (i) effect all actions and execute all agreements, instruments, and other documents necessary to perform its duties under the Plan, (ii) make all distributions contemplated hereby, (iii) employ professionals to represent it with respect to its responsibilities, and (iv) exercise such other powers as may be vested in the Disbursing Agent by order of the Bankruptcy Court, pursuant to the Plan, or as deemed by the Disbursing Agent to be necessary and proper to implement the provisions hereof.

F.     **Compensation of Expenses Incurred on or After the Effective Date**.

Except as otherwise ordered by the Bankruptcy Court, the amount of any reasonable fees and expenses incurred by the Disbursing Agent on or after the Effective Date (including, without limitation, taxes) and any reasonable compensation and expense reimbursement claims (including, without limitation, reasonable attorneys' fees and expenses) made by the Disbursing Agent shall be paid in Cash by the Reorganized Debtors.

G.     **Surrender of Instruments**.

As a condition to receiving any distribution under the Plan, each Holder of a certificated instrument or note must either (a) surrender such instrument or note held by it to the Disbursing Agent or its designee, or (b) submit evidence satisfactory to the Disbursing Agent with respect to the loss, theft, mutilation or destruction of such certificated instrument or note before the first anniversary of the Effective Date, unless such certificated instrument or note is being reinstated or being left unimpaired under the Plan. Any Holder of such certificated instrument or note that fails to do either (a) or (b) above shall be deemed to have forfeited all rights and Claims and may not participate in any distribution under the Plan. Any distribution so forfeited shall become property of the Debtors. The Debtors reserve the right to waive this requirement. After the first anniversary of the Effective Date, all property or interest in property not distributed pursuant to this Article VII.8 shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code. Such property or interest in property shall be returned by the Disbursing Agent to the Reorganized Debtors and the Claim of any other Holder to such property or interest in property shall be discharged and forever barred.

H.     **Delivery of Distributions; Execution of Equityholders Agreement**.

Subject to Bankruptcy Rule 9010, all distributions to any Holder of an Allowed Claim, except the holders of Prepetition Lender Claims and Noteholder Claims, shall be made at

the address of such Holder as set forth on the Schedules filed with the Bankruptcy Court or on the books and records of the Debtors or their agents or in a letter of transmittal, unless the Debtors have been notified in writing of a change of address, including, without limitation, by the filing of a proof of claim by such Holder that contains an address for such Holder different from the address reflected on such Schedules for such Holder. All distributions to Holders of Prepetition Lender Claims shall be made to the addresses kept by the Prepetition Agent. Any distribution to Holders of Class D Claims shall be made to the addresses maintained by the Indenture Trustee. In the event that any distribution to any Holder is returned as undeliverable, the Disbursing Agent shall use reasonable efforts to determine the current address of such Holder, but no distribution to such Holder shall be made unless and until the Disbursing Agent has determined the then current address of such Holder, at which time such distribution shall be made to such Holder without interest; provided that such distributions shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code at the expiration of one year from the Effective Date. After such date, all unclaimed property or interest in property shall revert to and vest in the Reorganized Debtors and any claim in respect of such undeliverable distribution shall be discharged and forever barred from assertion against the Debtors and their Estates.

As a condition to receiving any distribution of Holdco Securities under the Plan, each Holder entitled to such distribution must execute and deliver to Holdco the Equityholders Agreement. Any Holder that fails to comply with the immediately preceding sentence shall be deemed to have forfeited all rights to Holdco Securities. Any distribution so forfeited shall become the property of Holdco.

I.     **Distributions of Cash**.

Any payment of Cash made by the Disbursing Agent pursuant to the Plan shall, at the Disbursing Agent's option, be made by check drawn on a domestic bank or by wire transfer.

J.     **Fractional Distributions**.

No fractional dollars shall be distributed. For purposes of distribution, any fractional dollars shall be rounded up or down to the nearest whole dollar.

K.     **Setoffs and Recoupment**.

The Debtors may, but shall not be required to, set off or recoup against any Claim (for purposes of determining the Allowed amount of such Claim on which such distribution shall be made), any claims of any nature whatsoever that the Debtors may have against the Holder of such Claim, but neither the failure to do so nor the allowance of any Claim hereunder shall constitute a waiver or release by the Debtors of any such claim the Debtors may have against the Holder of such Claim. Any creditor with a valid right of setoff shall retain the ability to effectuate such setoff prior to the Effective Date.

L.     **Minimum Distributions**.

No distribution of less than $25.00 shall be made by the Disbursing Agent to any Holder of a Claim unless a request therefor is made in writing to the Disbursing Agent, (at the

address provided in the Plan).  Six (6) months after the Effective Date, any property or interest in property not distributed pursuant to this Article VII shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code.  Such property or interest in property shall be returned by the Disbursing Agent to the Reorganized Debtors and the Claim of any other Holder to such property or interest in property shall be discharged and forever barred.

M.    **Distributions After the Effective Date**.

Distributions made after the Effective Date to holders of Disputed Claims that are not Allowed Claims as of the Effective Date but which later become Allowed Claims shall be deemed to have been made on the Effective Date.

N.    **Allocation of Plan Distributions Between Principal and Interest**.

To the extent that any Allowed Claim entitled to a distribution under the Plan is comprised of indebtedness and accrued but unpaid interest thereon, such distribution shall be allocated to the principal amount (as determined for federal income tax purposes) of the Claim first, and, only after the principal portion of any such Allowed Claim is satisfied in full, to any portion of such Allowed Claim comprising prepetition interest, costs, expenses and fees; but solely to the extent that such interest, costs, expenses or fees are an allowable portion of such Allowed Claim.

O.    **Withholding and Reporting Requirements**.

In connection with the Plan and all instruments issued in connection therewith and distributed thereon, the Disbursing Agent shall comply with all applicable withholding and reporting requirements imposed by any federal, state or local taxing authority, and all distributions under the Plan shall be subject to any such withholding or reporting requirements.  Notwithstanding the above, each Holder of an Allowed Claim that is to receive a distribution under the Plan shall have the sole and exclusive responsibility for the satisfaction and payment of any tax obligation imposed by any governmental unit, including income, withholding and other tax obligations, on account of such distribution.  The Disbursing Agent has the right, but not the obligation, to not make a distribution until such Holder has made arrangements satisfactory to the Disbursing Agent for payment of any such tax obligations.

P.    **Subsequent Distributions**.

Unless otherwise provided in the Plan, to the extent Cash or Holdco Securities are available subsequent to the Effective Date from undeliverable, time-barred or unclaimed distributions to Holders of Allowed Claims pursuant to this Plan, such Cash or Holdco Securities shall be transferred to Holdco to be used for general corporate purposes.

Q.    **Time Bar to Cash Payments**.

Checks issued by the Distributing Agent in respect of Allowed Claims shall be null and void if not negotiated within one hundred twenty (120) days after the date of issuance thereof.  Any party that is entitled to receive a check under this Plan but fails to cash such check within 120 days of its issuance shall be entitled to receive a reissued check from the

Reorganized Debtors for the amount of the original check if the party requests that the Disbursing Agent reissue the check and provides the Disbursing Agent with such documentation as the Disbursing Agent requests to verify that such party is entitled to such check, prior to the later of (a) six (6) months after the Effective Date or (b) six (6) months after any such Claim becomes an Allowed Claim. If a party fails to cash a check within 120 days of issuance and fails to request reissuance of such check prior to the later to occur of (a) six (6) months after the Effective Date or (b) six (6) months following the date such party's Claim becomes an Allowed Claim, such party shall not be entitled to receive any Distribution under this Plan with respect to the amount of such check, and the amounts represented in any such check shall be deemed unclaimed property under Section 347(b) and such amounts revert to and vest in the Reorganized Debtors.

### Article VIII.   PROCEDURES FOR DISPUTED CLAIMS

#### A.   Objections to Claims.

Unless otherwise ordered by the Bankruptcy Code after notice and a hearing, the Debtors or Reorganized Debtors on and after the Effective Date, shall have the right to the exclusion of all others (except ~~as to~~(i) applications for allowances of compensation and reimbursement of expenses under sections 330 and 503 of the Bankruptcy Code, and (ii) in the event the Pension Plan is terminated, the PBGC may object to claim by retirees seeking pension benefits under the Pension Plan) to make and file objections to Claims and shall serve a copy of each objection upon the Holder of the Claim to which the objection is made as soon as practicable, but in no event later than the latest of:  (a) 180 days after the Effective Date; (b) 180 days after a proof of Claim with respect to the Claim objected to has been filed with the claims agent appointed in the Reorganization Cases; or (c) such later date as may be fixed by the Bankruptcy Court, whether fixed before or after the date specified in clauses (a) and (b) above (the "Claims Objection Bar Date").  From and after the Effective Date, all objections shall be litigated to a Final Order except to the extent the Debtors elect to withdraw any such objection or the Debtors and the claimant elect to compromise, settle, or otherwise resolve any such objection, in which event they may settle, compromise, or otherwise resolve any Disputed Claim without the necessity of Bankruptcy Court approval.

#### B.   Payments and Distributions with Respect to Disputed Claims.

Notwithstanding any other provision hereof, if any portion of a Claim is a Disputed Claim, no payment or distribution provided hereunder shall be made on account of such Claim unless and until such Disputed Claim becomes an Allowed Claim. Moreover, notwithstanding any other provision of the Plan, no interest shall accrue or be Allowed on any Claim after the Commencement Date, except as provided for under section 506(b) of the Bankruptcy Code.

#### C.   Estimation of Claims.

The Debtors may at any time request that the Bankruptcy Court estimate any contingent, unliquidated, or Disputed Claim pursuant to section 502(c) of the Bankruptcy Code regardless of whether the Debtor previously objected to such Claim or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court will retain jurisdiction to

- 28 -

estimate any Claim at any time during litigation concerning any objection to any Claim, including, without limitation, during the pendency of any appeal relating to any such objection. In the event that the Bankruptcy Court estimates any contingent, unliquidated, or Disputed Claim, the amount so estimated shall constitute either the allowed amount of such Claim or a maximum limitation on such Claim, as determined by the Bankruptcy Court. If the estimated amount constitutes a maximum limitation on the amount of such Claim, the Debtors may pursue supplementary proceedings to object to the allowance of such Claim. All of the aforementioned objection, estimation, and resolution procedures are intended to be cumulative and not exclusive of one another. Claims may be estimated and subsequently compromised, settled, withdrawn, or resolved by any mechanism approved by the Bankruptcy Court. On and after the Confirmation Date, claims that have been estimated may be compromised, settled, withdrawn, or otherwise resolved, without further order of the Bankruptcy Court, but in a manner consistent with the treatment of such Claims under the Plan.

### D. Distributions Relating to Disputed Claims.

At such time as a Disputed Claim becomes an Allowed Claim, the Disbursing Agent shall distribute to the Holder of such Claim, such Holder's Ratable Proportion of the property distributable with respect to the Class in which such Claim belongs. To the extent that all or a portion of a Disputed Claim is disallowed, the Holder of such Claim shall not receive any distribution on account of the portion of such Claim that is disallowed and any property withheld pending the resolution of such Claim shall be reallocated pro rata to the holders of Allowed Claims in the same class.

### E. Distributions after Allowance.

To the extent that a Disputed Claim becomes an Allowed Claim after the Effective Date, a distribution shall be made to the Holder of such Allowed Claim in accordance with the provisions of the Plan. As soon as practicable after the date that the order or judgment of the Bankruptcy Court allowing any Disputed Claim becomes a Final Order, the Disbursing Agent shall provide to the Holder of such Claim, the distribution to which such Holder is entitled to receive under the Plan.

### F. Preservation of Rights to Settle Claims.

The Debtors shall retain and may enforce, sue on, settle, or compromise (or decline to do any of the foregoing) all claims, rights, causes of action, suits and proceedings, whether in law or in equity, whether known or unknown, that the Debtors or their Estates may hold against any person or entity without the approval of the Bankruptcy Court, subject to the terms of Article VIIXII.1B hereof, the Confirmation Order, and any contract, instrument, release, indenture, or other agreement entered into in connection with the Plan.

### G. Disallowed Claims.

All claims held by persons or entities against whom any Debtor has commenced a proceeding asserting a cause of action under sections 542, 543, 544, 545, 547, 548, 549, and/or 550 of the Bankruptcy Code, shall be deemed "disallowed" claims pursuant to section 502(d) of the Bankruptcy Code and holders of such claims shall not be entitled to vote to accept or reject

- 29 -

the Plan.  Claims that are deemed disallowed pursuant to this article shall continue to be disallowed for all purposes until the avoidance action against such party has been settled or resolved by Final Order and any sums due to the Debtors from such party have been paid.

### Article IX.    EXECUTORY CONTRACTS AND UNEXPIRED LEASES

#### A.    General Treatment.

On the Effective Date , all executory contracts and unexpired leases to which any of the Debtors are parties shall be deemed assumed as of the Effective Date, except for an executory contract or unexpired lease that (i) has already been rejected pursuant to Final Order of the Bankruptcy Court, (ii) is specifically designated on the Schedule of Rejected Contracts and Leases included in the Plan Supplement as a contract or lease to be rejected, or (iii) is the subject of a separate motion filed under section 365 of the Bankruptcy Code by the Debtors prior to the Effective Date.

For purposes hereof, each executory contract and unexpired lease that relates to the use or occupancy of real property shall include all (x) modifications, amendments, supplements, restatements, or other agreements made directly or indirectly by any agreement, instrument, or other document that in any manner affects such executory contract or unexpired Lease, and (y) all easements, licenses, permits, rights, privileges, immunities, options, rights of first refusal, powers, uses, usufructs, reciprocal easement agreements, vault, tunnel or bridge agreements or franchises, and any other interests in real estate or rights in rem relating to such premises to the extent any of the foregoing agreements are specifically rejected.

#### B.    Cure of Defaults.

Except as otherwise may be agreed to by the parties, on the Effective Date, or as promptly thereafter as practicable, the Reorganized Debtors shall cure those defaults that need to be cured in accordance with section 365(b) of the Bankruptcy Code.

#### C.    Rejection Claims.

In the event that the rejection of an executory contract or unexpired lease by any of the Debtors pursuant to the Plan results in damages to the other party or parties to such contract or lease, a Claim for such damages, if not heretofore evidenced by a filed proof of claim, shall be forever barred and shall not be enforceable against the Debtors, the Estates, the Reorganized Debtors, and the Debtors' and Reorganized Debtors' respective properties or interests in property as agents, successors, or assigns unless a proof of claim is filed with the Bankruptcy Court and served upon counsel for the Debtors on or before the ~~date that is~~later of (a) thirty (30) days after the Effective Date or ~~such later rejection date that occurs as a result of a dispute concerning amounts necessary to cure any defaults~~(b) thirty (30) days after the date the Bankruptcy Court enters an order rejecting such executory contract or unexpired lease.

#### D.    Insurance Policies.

Except as otherwise provided herein, all insurance policies pursuant to which the Debtors have any obligations in effect as of the date of the Confirmation Order shall be deemed

- 30 -

and treated as executory contracts pursuant to the Plan and shall be assumed by the respective Debtors and shall continue in full force and effect.

The Debtors' discharge and release from Claims as provided herein, except as necessary to be consistent with this Plan, shall not diminish or impair the enforceability of any insurance policy that may cover Claims against the Debtors, the Reorganized Debtors (including without limitation, its officers and current and former directors) or any other person or entity.

**Article X.** **CONDITIONS PRECEDENT TO CONFIRMATION AND THE EFFECTIVE DATE.**

**A.** **Conditions Precedent to Confirmation**.

This Plan may not be confirmed unless each of the conditions set forth below is satisfied. Except as provided in Article X.3 below, any one or more of the following conditions may be waived at any time by the Debtors.

(1) An Order finding that the Disclosure Statement contains adequate information pursuant to section 1125 of the Bankruptcy Code shall have been issued by the Bankruptcy Court and entered on the docket maintained by the Clerk of the Bankruptcy Court.

(2) The Confirmation Order (i) shall be in form and substance satisfactory to the Debtors and Holdco and (ii) shall include a finding by the Bankruptcy Court that the Holdco Securities to be issued on the Effective Date will be exempt from registration under applicable securities laws pursuant to Section 1145 of the Bankruptcy Code.

**B.** **Conditions Precedent to the Effective Date**.

The Effective Date for the Plan may not occur unless and until each of the conditions set forth below is satisfied. Except as provided in Article X.3C below, any one or more of the following conditions may be waived at any time by the Debtors with the consent of the Prepetition Agent.

(1) A Confirmation Order, in form and substance satisfactory to the Debtors and the Prepetition Agent, shall have been entered by the Bankruptcy Court; *provided*, *however*, that the ten (10) day stay provided by Bankruptcy Rule 3020(e) and Federal Rule of Civil Procedure 62(a) shall not apply to the Confirmation Order.

(2) All actions and all agreements, instruments, or other documents necessary to implement the terms and provisions of the Plan are effected or executed and delivered, as applicable, in form and substance satisfactory to the Debtors and the Prepetition Agent.

(3) All authorizations, consents, and regulatory approvals, if any, required by the Debtors in connection with the consummation of the Plan are obtained and not revoked, including, without limitation, FCC Consent.

C.	**Waiver of Conditions**.

The Debtors may, with the consent of the Prepetition Agent, waive any of the conditions set forth in Articles X.A and X.B, *provided, however*, that the Debtors may not waive entry of the Order approving the Disclosure Statement or entry of the Confirmation Order. Any such waivers shall be evidenced by a writing, signed by the waiving parties, served upon the United States Trustee, are filed with the Bankruptcy Court. The waiver may be a conditional one, such as to extend the time under which a condition may be satisfied.

D.	**Effect of Failure of Conditions**.

If the conditions specified in Article X.B have not been satisfied or waived in the manner provided in Article X.C by the later of (i) one hundred and eighty (180) days of Confirmation, or (ii) sixty (60) business days after receipt of FCC Consent, then: (a) the Confirmation Order shall be of no further force and effect; (b) no distributions under the Plan shall be made; (c) the Debtors and all holders of Claims and Interests shall be restored to the *status quo ante* as of the day immediately preceding the Confirmation Date as though the Confirmation Date had never occurred; and (d) all the Debtors' obligations with respect to the Claims and Interests shall remain unchanged and nothing contained herein shall be deemed to constitute a waiver or release of any claims by or against the Debtors or any other person or to prejudice in any manner the rights of the Debtors or any person in any further proceedings involving the Debtors. Upon such occurrence, the Debtors shall file a written notification with the Bankruptcy Court and serve it upon counsel for Holdco and the United States Trustee. The Debtors may extend the time periods set forth in this Article X.D with consent of the Prepetition Agent.

**Article XI.	EFFECT OF CONFIRMATION**

A.	**Binding Effect**.

Subject to the occurrence of the Effective Date, on and after the Confirmation Date, the provisions of the Plan shall bind any Holder of a claim against, or Interest in the Debtors' and such Holder's respective successors and assigns, whether or not the Claim or Interest of such Holder is Impaired under the Plan, whether or not such Holder has accepted the Plan, and whether or not such Holder is entitled to a distribution under the Plan.

B.	**Discharge of Claims and Termination of Equity Interests**.

Except as otherwise provided herein or in the Confirmation Order, the rights afforded in the Plan and the payments and distributions to be made hereunder, shall discharge all existing debts and Claims, and terminate all Equity Interests, of any kind, nature, or description whatsoever against or in the Debtors or any of their assets or properties to the fullest extent permitted by section 1141 of the Bankruptcy Code. Except as provided in the Plan, upon the Effective Date, all existing Claims against the Debtors and Equity Interests in the Debtors, shall be, and shall be deemed to be, discharged and terminated, and all holders of Claims and Equity Interests shall be precluded and enjoined from asserting against the Debtors, Reorganized Debtors or Holdco any other or further Claim or Equity Interest based upon any act or omission,

- 32 -

transaction, or other activity of any kind or nature that occurred prior to the Effective Date, whether or not such Holder has filed a proof of claim or proof of equity interest.

### C. Discharge of Debtors.

Upon the Effective Date and in consideration of the distributions to be made hereunder, except as otherwise expressly provided herein, each Holder (as well as any trustees and agents on behalf of each Holder) of a Claim or Equity Interest and any affiliate of such Holder shall be deemed to have forever waived, released, and discharged the Debtors, ~~to the fullest extent permitted by section 1141 of the Bankruptcy Code,~~ of and from any and all Claims, Equity Interests, rights, and liabilities that arose prior to the Effective Date. Upon the Effective Date the Confirmation Order shall act as a discharge of all debts of, Claims against and Liens on the Debtors, their respective assets and properties, _____ at any time before the Effective Date, regardless of whether a Proof of Claim with respect thereto was filed, whether the Claim is Allowed, or whether the holder thereof votes to accept the Plan or is entitled to receive a distribution hereunder. Upon the Effective Date, all such persons shall be forever precluded and enjoined, pursuant to section 524 of the Bankruptcy Code, from prosecuting or asserting any such discharged Claim against or terminated Equity Interest in the Debtors.

### D. Term of Injunctions or Stays.

(1) Unless otherwise provided, all injunctions or stays arising under or entered during the Reorganization Cases under section 105 or 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the later of the Effective Date and the date indicated in such order.

(2) Injunction Regarding Worthless Stock Deduction. Unless otherwise ordered by the Bankruptcy Court, on and after the Confirmation Date, any "fifty percent shareholder" within the meaning of section 382(g)(4)(D) of the Tax Code shall be enjoined from claiming a worthless stock deduction with respect to any Equity Interest held by such shareholder for any taxable year of such shareholder ending prior to the Effective Date.

### E. Retention of Causes of Action/Reservation of Rights.

(1) Nothing contained in the Plan or the Confirmation Order shall be deemed to be a waiver or the relinquishment of any rights or causes of action that the Debtors may have or which the Debtors may choose to assert on behalf of the Debtors' respective Estates under any provision of the Bankruptcy Code or any applicable nonbankruptcy law, including, without limitation, (i) any and all Claims against any person or entity, to the extent such person or entity asserts a crossclaim, counterclaim, and/or Claim for setoff which seeks affirmative relief against the Debtors, their officers, directors, or representatives, and (ii) the turnover of any property of the Debtors' Estates. Except as otherwise provided in the Plan, on and after the Effective Date, the Debtors and/or the Reorganized Debtors will have the right to enforce any and all Causes of Action against any person. The Debtors and/or the Reorganized Debtors may pursue, abandon, settle or release any or all Causes of Action, as they deem appropriate, without the need to obtain approval or any other or further relief from the Bankruptcy Court. The Debtors and/or the Reorganized Debtors may, in their discretion, offset any claim held against a person, against any payment due such person under the Plan, *provided*, *however*, that any claims of the Debtors

- 33 -

arising before the Commencement Date shall first be offset against Claims against the Debtors arising before the Commencement Date.

(2)    Nothing contained in the Plan or the Confirmation Order shall be deemed to be a waiver or relinquishment of any claim, cause of action, right of setoff, or other legal or equitable defense which the Debtors had immediately prior to the Commencement Date, against or with respect to any Claim left unimpaired by the Plan.  The Debtors and/or the Reorganized Debtors shall have, retain, reserve, and be entitled to assert all such claims, causes of action, rights of setoff, and other legal or equitable defenses which they had immediately prior to the Commencement Date fully as if the Reorganization Cases had not been commenced, and all of the Debtors' legal and equitable rights respecting any Claim left unimpaired by the Plan may be asserted by the Debtors and/or the Reorganized Debtors after the Confirmation Date to the same extent as if the Reorganization Cases had not been commenced.

### F.    Indemnification Obligations.

Subject to the occurrence of the Effective Date, the obligations of the Debtors as of the Commencement Date with respect to all indemnification provisions currently in place (whether in the by-laws, certificates of incorporation, articles of limited partnership, board resolutions or employment contracts) for the directors who were in place as of the Commencement Date and current officers, employees, attorneys, other professionals and agents of the Debtors shall be assumed by the Reorganized Debtors and shall survive effectiveness of the Plan.  All indemnification provisions in place on and prior to the Effective Date for current directors and officers of the Debtors and their subsidiaries and such current and former directors and officers' respective Affiliates shall survive the Effective Date for Claims related to or in connection with any actions, omissions or transactions occurring prior to the Effective Date.  The foregoing provisions of this Section XI.F shall not apply to any claims arising from the rejection of any employment contracts, which contract rejection claims shall be treated as Class E Claims.

### G.    D&O Coverage Policies.

The Reorganized Debtors will obtain a directors and officers' liability insurance policy with tail coverage for a period of six years with the same coverage limit as is in existence immediately prior to the Effective Date for the current and former directors and officers of the Debtors.

### Article XII.    SETTLEMENT, RELEASE, INJUNCTION AND RELATED PROVISIONS

### A.    Compromise and Settlement.

Notwithstanding anything contained in the Plan to the contrary, the allowance, classification and treatment of all Allowed Claims and their respective distributions and treatments hereunder take into account for and conform to the relative priority and rights of the Claims in each Class in connection with any contractual, legal and equitable subordination rights relating thereto whether arising under general principles of equitable subordination, section 510(b) and (c) of the Bankruptcy Code, substantive consolidation or otherwise.  As of the Effective Date, any and all such rights described in the preceding sentence are settled, compromised and released pursuant hereto.  The

- 34 -

Confirmation Order shall constitute the Bankruptcy Court's finding and determination that the settlements reflected in the Plan are (1) in the best interests of the Debtors and their Estates, (2) fair, equitable and reasonable, (3) made in good faith and (4) approved by the Bankruptcy Court pursuant to section 363 of the Bankruptcy Code and Bankruptcy Rule 9019. In addition, the allowance, classification and treatment of Allowed Claims take into account any causes of action, claims or counterclaims, whether under the Bankruptcy Code or otherwise under applicable law, that may exist: (1) between the Debtors and the Releasing Parties; and (2) as between the Releasing Parties (to the extent set forth in the Third Party Release). As of the Effective Date, any and all such causes of action, claims and counterclaims are settled, compromised and released pursuant hereto. The Confirmation Order will approve all such releases of contractual, legal and equitable subordination rights, causes of action, claims and counterclaims against each such Releasing Party that are satisfied, compromised and settled pursuant hereto. Nothing in this Article XII.1A will compromise or settle in any way whatsoever, any Claims or Causes of Action that the Debtors may have against the Non-Released Parties.

**B.** **Releases by the Debtors**.

**EXCEPT AS OTHERWISE PROVIDED IN THE PLAN OR CONFIRMATION ORDER, ON THE EFFECTIVE DATE AND EFFECTIVE AS OF THE EFFECTIVE DATE, FOR THE GOOD AND VALUABLE CONSIDERATION PROVIDED BY EACH OF THE DEBTOR RELEASEES, INCLUDING, BUT NOT LIMITED TO: (A) THE DISCHARGE OF DEBT AND ALL OTHER GOOD AND VALUABLE CONSIDERATION PAID PURSUANT TO THE PLAN OR OTHERWISE; AND (B) THE SERVICES OF THE DEBTORS' PRESENT AND FORMER OFFICERS AND DIRECTORS IN FACILITATING THE IMPLEMENTATION OF THE RESTRUCTURING CONTEMPLATED BY THE PLAN, EACH OF THE DEBTORS AND REORGANIZED DEBTORS SHALL PROVIDE A FULL DISCHARGE AND RELEASE TO THE DEBTOR RELEASEES (AND EACH SUCH DEBTOR RELEASEE SO RELEASED SHALL BE DEEMED RELEASED AND DISCHARGED BY THE DEBTORS AND REORGANIZED DEBTORS) AND EACH SUCH DEBTOR RELEASEE'S RESPECTIVE PROPERTIES FROM ANY AND ALL CLAIMS, CAUSES OF ACTION AND ANY OTHER DEBTS, OBLIGATIONS, RIGHTS, SUITS, DAMAGES, ACTIONS, CAUSES OF ACTION, REMEDIES, AND LIABILITIES WHATSOEVER, WHETHER KNOWN OR UNKNOWN, FORESEEN OR UNFORESEEN, EXISTING AS OF THE EFFECTIVE DATE OR THEREAFTER ARISING, IN LAW, AT EQUITY, WHETHER FOR TORT, FRAUD, CONTRACT, VIOLATIONS OF FEDERAL OR STATE SECURITIES LAWS, OR OTHERWISE, BASED IN WHOLE OR IN PART UPON ANY ACT OR OMISSION, TRANSACTION, OR OTHER OCCURRENCE OR CIRCUMSTANCES EXISTING OR TAKING PLACE PRIOR TO OR ON THE EFFECTIVE DATE ARISING FROM OR RELATED IN ANY WAY TO THE DEBTORS, INCLUDING, WITHOUT LIMITATION, THOSE THAT ANY OF THE DEBTORS WOULD HAVE BEEN LEGALLY ENTITLED TO ASSERT (WHETHER INDIVIDUALLY OR COLLECTIVELY) OR THAT ANY HOLDER OF A CLAIM OR EQUITY INTEREST OR OTHER PERSON OR ENTITY WOULD HAVE BEEN LEGALLY ENTITLED TO ASSERT FOR OR ON BEHALF OF ANY OF THE DEBTORS OR ANY OF THEIR ESTATES AND FURTHER INCLUDING THOSE IN**

- 35 -

ANY WAY RELATED TO THE CHAPTER 11 CASES OR THE PLAN; *PROVIDED, HOWEVER,* THAT THE FOREGOING DEBTOR RELEASE SHALL NOT APPLY TO ANY NON-RELEASED PARTIES AND SHALL NOT OPERATE TO WAIVE OR RELEASE FROM ANY CAUSES OF ACTION EXPRESSLY PRESERVED BY THE PLAN OR PLAN SUPPLEMENT.

NOTWITHSTANDING ANYTHING CONTAINED IN THE PLAN TO THE CONTRARY, THE DEBTORS AND REORGANIZED DEBTORS SHALL NOT HAVE RELEASED NOR BE DEEMED TO HAVE RELEASED BY OPERATION OF THIS ARTICLE XII.B OR OTHERWISE ANY CLAIMS, DEBTS, OBLIGATIONS, RIGHTS, SUITS, DAMAGES, ACTIONS, INTERESTS, REMEDIES, LIABILITIES OR CAUSES OF ACTION THAT THEY MAY HAVE NOW OR IN THE FUTURE AGAINST THE NON-RELEASED PARTIES.

ENTRY OF THE CONFIRMATION ORDER SHALL CONSTITUTE THE BANKRUPTCY COURT'S APPROVAL, PURSUANT TO SECTION 363 OF THE BANKRUPTCY CODE AND BANKRUPTCY RULE 9019, OF THE DEBTOR RELEASE, WHICH INCLUDES BY REFERENCE EACH OF THE RELATED PROVISIONS AND DEFINITIONS CONTAINED IN THE PLAN, AND FURTHER, SHALL CONSTITUTE THE BANKRUPTCY COURT'S FINDING THAT THE DEBTOR RELEASE IS:  (A) IN EXCHANGE FOR GOOD AND VALUABLE CONSIDERATION PROVIDED BY THE DEBTOR RELEASEES, REPRESENTING GOOD FAITH SETTLEMENT AND COMPROMISE OF THE CLAIMS RELEASED BY THE DEBTOR RELEASE; (B) IN THE BEST INTERESTS OF THE DEBTORS AND ALL HOLDERS OF CLAIMS; (C) FAIR, EQUITABLE, AND REASONABLE; (D) APPROVED AFTER DUE NOTICE AND OPPORTUNITY FOR HEARING; AND (E) A BAR TO THE DEBTORS AND REORGANIZED DEBTORS ASSERTING ANY CLAIM RELEASED BY THE DEBTOR RELEASE AGAINST ANY OF THE DEBTOR RELEASEES OR THEIR RESPECTIVE PROPERTY.

C.    **Third Party Release**.

EXCEPT AS OTHERWISE PROVIDED IN THE PLAN OR CONFIRMATION ORDER, ON THE EFFECTIVE DATE, EFFECTIVE AS OF THE EFFECTIVE DATE, THE RELEASING PARTIES SHALL PROVIDE A FULL DISCHARGE AND RELEASE (AND EACH PERSON OR ENTITY SO RELEASED SHALL BE DEEMED RELEASED BY THE RELEASING PARTIES) TO THE DEBTOR RELEASEES, AND THEIR RESPECTIVE PROPERTY FROM ANY AND ALL CLAIMS, CAUSES OF ACTION AND ANY OTHER DEBTS, OBLIGATIONS, RIGHTS, SUITS, DAMAGES, ACTIONS, REMEDIES, AND LIABILITIES WHATSOEVER, WHETHER KNOWN OR UNKNOWN, FORESEEN OR UNFORESEEN, EXISTING AS OF THE EFFECTIVE DATE OR THEREAFTER ARISING, IN LAW, AT EQUITY, WHETHER FOR TORT, FRAUD, CONTRACT, VIOLATIONS OF FEDERAL OR STATE SECURITIES LAWS, OR OTHERWISE, BASED IN WHOLE OR IN PART UPON ANY ACT OR OMISSION, TRANSACTION, OR OTHER OCCURRENCE OR CIRCUMSTANCES EXISTING OR TAKING PLACE PRIOR TO OR ON THE EFFECTIVE DATE ARISING

- 36 -

**FROM OR RELATED IN ANY WAY TO THE DEBTORS, INCLUDING THOSE IN ANY WAY RELATED TO THE CHAPTER 11 CASES OR THE PLAN; *PROVIDED*, *HOWEVER*, THAT THE FOREGOING THIRD PARTY RELEASE SHALL NOT OPERATE TO WAIVE OR RELEASE ANY OF THE DEBTOR RELEASEES FROM ANY CAUSES OF ACTION EXPRESSLY SET FORTH IN AND PRESERVED BY THE PLAN OR PLAN SUPPLEMENT, OR RELEASE HOLDCO FROM ITS OBLIGATIONS UNDER THE PLAN.**

**THE THIRD PARTY RELEASE SHALL HAVE NO EFFECT ON THE CLAIMS OF RELEASEES TREATED UNDER THE PLAN, TO THE EXTENT OF ALLOWANCE OF CLAIMS AND SATISFACTION OF CLAIMS PURSUANT TO THE PLAN.**

**NOTWITHSTANDING ANYTHING CONTAINED IN THE PLAN TO THE CONTRARY, THE RELEASING PARTIES SHALL NOT HAVE RELEASED NOR DEEMED TO HAVE RELEASED BY OPERATION OF THIS ARTICLE XII.C OR OTHERWISE ANY CLAIMS OR CAUSES OF ACTION THAT THEY, THE DEBTORS MAY HAVE NOW OR IN THE FUTURE AGAINST THE NON-RELEASED PARTIES.**

**ENTRY OF THE CONFIRMATION ORDER SHALL CONSTITUTE THE BANKRUPTCY COURT'S APPROVAL PURSUANT TO SECTION 363 OF THE BANKRUPTCY CODE AND BANKRUPTCY RULE 9019 OF THE THIRD PARTY RELEASE, WHICH INCLUDES BY REFERENCE EACH OF THE RELATED PROVISIONS AND DEFINITIONS CONTAINED IN THE PLAN, *AND FURTHER*, SHALL CONSTITUTE THE BANKRUPTCY COURT'S FINDING THAT THE THIRD PARTY RELEASE IS:  (A) IN EXCHANGE FOR GOOD AND VALUABLE CONSIDERATION PROVIDED BY THE THIRD PARTY RELEASEES, REPRESENTING GOOD FAITH SETTLEMENT AND COMPROMISE OF THE CLAIMS RELEASED BY THE THIRD PARTY RELEASE; (B) IN THE BEST INTERESTS OF THE DEBTORS AND ALL HOLDERS OF CLAIMS; (C) FAIR, EQUITABLE, AND REASONABLE; (D) APPROVED AFTER DUE NOTICE AND OPPORTUNITY FOR HEARING; AND (E) A BAR TO ANY OF THE RELEASING PARTIES ASSERTING ANY CLAIM RELEASED BY THE THIRD PARTY RELEASE AGAINST ANY OF THE THIRD PARTY RELEASEES OR THEIR PROPERTY.**

~~**NOTHING IN THE CONFIRMATION ORDER OR THE PLAN SHALL EFFECT A RELEASE BY THE UNITED STATES GOVERNMENT OR ANY OF ITS AGENCIES OR ANY STATE AND LOCAL AUTHORITY WHATSOEVER, INCLUDING WITHOUT LIMITATION ANY CLAIM ARISING UNDER THE INTERNAL REVENUE CODE, FEDERAL SECURITIES LAWS, THE ENVIRONMENTAL LAW OR ANY CRIMINAL LAWS OF THE UNITED STATES OR ANY STATE AND LOCAL AUTHORITY AGAINST THE RELEASEES, NOR SHALL ANYTHING IN THE CONFIRMATION ORDER OR THE PLAN ENJOIN THE UNITED STATES OR ANY STATE OR LOCAL AUTHORITY FROM BRINGING ANY CLAIM, SUIT, ACTION OR OTHER PROCEEDINGS AGAINST**~~

**THE RELEASEES FOR ANY LIABILITY WHATEVER, INCLUDING WITHOUT LIMITATION ANY CLAIM, SUIT OR ACTION ARISING UNDER THE INTERNAL REVENUE CODE, FEDERAL SECURITIES LAWS, THE ENVIRONMENTAL LAWS OR ANY CRIMINAL LAWS OF THE UNITED STATES OR ANY STATE OR LOCAL AUTHORITY, NOR SHALL ANYTHING IN THE CONFIRMATION ORDER OR THE PLAN EXCULPATE ANY PARTY FROM ANY LIABILITY TO THE UNITED STATES GOVERNMENT OR ANY OF ITS AGENCIES OR ANY STATE AND LOCAL AUTHORITY WHATSOEVER, INCLUDING ANY LIABILITIES ARISING UNDER THE INTERNAL REVENUE CODE, FEDERAL SECURITIES LAWS, THE ENVIRONMENTAL LAWS OR ANY CRIMINAL LAWS OF THE UNITED STATES OR ANY STATE AND LOCAL AUTHORITY AGAINST THE RELEASEES; _PROVIDED, HOWEVER_, THAT THE FOREGOING SHALL IN NO WAY AFFECT OR LIMIT THE DISCHARGE OR INJUNCTION GRANTED TO THE DEBTORS UNDER SECTIONS 524 AND 1141 OF THE BANKRUPTCY CODE.**

   **D.**  **Exculpation**.

   Notwithstanding anything contained in the Plan to the contrary, the Exculpated Parties shall neither have nor incur any liability to any Person or Entity for any prepetition or postpetition act taken or omitted to be taken in connection with or related to formulating, negotiating, preparing, disseminating, implementing, administering the Plan or otherwise, the Plan Supplement, the Disclosure Statement or any contract, instrument, release or other agreement or document created or entered into in connection with the Plan, or any other prepetition or postpetition act taken or omitted to be taken in connection with or in contemplation of the restructuring of the Debtors or confirming or consummating the Plan; _provided, however_, that the foregoing provisions of this Article XII.4D shall have no effect on the liability of any Person or Entity that results from any such act or omission that is determined in a Final Order to have constituted gross negligence or willful misconduct; _provided further_, that each Exculpated Party shall be entitled reasonably to rely upon the advice of counsel concerning its duties pursuant to, or in connection with, the above referenced documents; _provided still further_, that the foregoing Exculpation shall not apply to any acts or omissions preserved from exculpation by the Plan or Plan Supplement.

   This exculpation shall be in addition to, and not in limitation of all other releases, indemnities, exculpations and any other applicable law or rules protecting such Exculpated Parties from liability.

   Notwithstanding anything contained in the Plan to the contrary, the Exculpated Parties shall not include the Non-Released Parties, and the Plan shall not exculpate nor be deemed to have exculpated any of the Non-Released Parties for any acts they have taken, whether in contemplation of the restructuring of the Debtors, in confirming or consummating the Plan, or otherwise.

- 38 -

E. **Injunction**.

(1)     FROM AND AFTER THE EFFECTIVE DATE, ALL PERSONS AND ENTITIES ARE PERMANENTLY ENJOINED FROM COMMENCING OR CONTINUING IN ANY MANNER AGAINST THE ~~DEBTORS, REORGANIZED DEBTORS, HOLDCO, THE CREDITORS COMMITTEE, THE COMMITTEE MEMBERS, INDENTURE TRUSTEES, PREPETITION AGENT OR PREPETITION LENDERS, THEIR SUCCESSORS AND ASSIGNS, AND EACH OF THEIR RESPECTIVE CURRENT AND FORMER MEMBERS, OFFICERS, DIRECTORS, MANAGED FUNDS, INVESTMENT ADVISORS, AGENTS, FINANCIAL ADVISORS, ATTORNEYS, EMPLOYEES, PARTNERS, AFFILIATES AND REPRESENTATIVES (EACH OF THE FOREGOING SOLELY IN ITS CAPACITY AS SUCH AND IN NO OTHER UNRELATED CAPACITIES),~~EXCULPATED PARTIES AND THEIR ASSETS AND PROPERTIES, AS THE CASE MAY BE, ANY SUIT, ACTION OR OTHER PROCEEDING, ON ACCOUNT OF OR RESPECTING ANY CLAIM, DEMAND, LIABILITY, OBLIGATION, DEBT, RIGHT, CAUSE OF ACTION, INTEREST OR REMEDY RELEASED OR TO BE RELEASED PURSUANT TO THE PLAN OR THE CONFIRMATION ORDER.

(2)     EXCEPT AS OTHERWISE EXPRESSLY PROVIDED FOR IN THE PLAN OR IN OBLIGATIONS ISSUED PURSUANT TO THE PLAN, FROM AND AFTER THE EFFECTIVE DATE, ALL PERSONS AND ENTITIES SHALL BE PRECLUDED FROM ASSERTING AGAINST ~~HOLDCO, THE DEBTORS, THE DEBTORS IN POSSESSION, THE DEBTORS' ESTATES, THE REORGANIZED DEBTORS, THE CREDITORS COMMITTEE, THE COMMITTEE MEMBERS, INDENTURE TRUSTEES, ANY OF THEIR SUCCESSORS AND ASSIGNS, AND EACH OF THEIR RESPECTIVE CURRENT AND FORMER MEMBERS, OFFICERS, DIRECTORS, MANAGED FUNDS, INVESTMENT ADVISORS, AGENTS, FINANCIAL ADVISORS, ATTORNEYS, EMPLOYEES, PARTNERS, AFFILIATES AND REPRESENTATIVES (EACH OF THE FOREGOING SOLELY IN ITS CAPACITY AS SUCH AND IN NO OTHER UNRELATED CAPACITIES),~~THE EXCULPATED PARTIES AND THEIR ASSETS AND PROPERTIES, ANY OTHER CLAIMS OR EQUITY INTERESTS BASED UPON ANY DOCUMENTS, INSTRUMENTS, OR ANY ACT OR OMISSION, TRANSACTION OR OTHER ACTIVITY OF ANY KIND OR NATURE THAT OCCURRED PRIOR TO THE EFFECTIVE DATE.

(3)     THE RIGHTS AFFORDED IN THE PLAN AND THE TREATMENT OF ALL CLAIMS AND EQUITY INTERESTS IN THE PLAN SHALL BE IN EXCHANGE FOR AND IN COMPLETE SATISFACTION OF CLAIMS AND EQUITY INTERESTS OF ANY NATURE WHATSOEVER, INCLUDING ANY INTEREST ACCRUED ON CLAIMS FROM AND AFTER THE COMMENCEMENT DATE, AGAINST THE DEBTORS OR ANY OF THEIR ASSETS OR PROPERTIES. ON THE EFFECTIVE DATE, ALL SUCH CLAIMS AGAINST, AND EQUITY INTERESTS IN, THE DEBTORS SHALL BE SATISFIED AND RELEASED IN FULL.

(4)     EXCEPT AS OTHERWISE EXPRESSLY PROVIDED FOR IN THE PLAN OR IN OBLIGATIONS ISSUED PURSUANT TO THE PLAN, ALL PARTIES

- 39 -

**AND ENTITIES ARE PERMANENTLY ENJOINED, ON AND AFTER THE EFFECTIVE DATE, ON ACCOUNT OF ANY CLAIM OR EQUITY INTEREST SATISFIED AND RELEASED HEREBY, FROM:**

(i) **COMMENCING OR CONTINUING IN ANY MANNER ANY ACTION OR OTHER PROCEEDING OF ANY KIND AGAINST ANY** ~~DEBTOR, REORGANIZED DEBTOR, HOLDCO, THE CREDITORS COMMITTEE, THE COMMITTEE MEMBERS, THE INDENTURE TRUSTEES, AND EACH OF THEIR RESPECTIVE CURRENT AND FORMER MEMBERS, OFFICERS, DIRECTORS, MANAGED FUNDS, INVESTMENT ADVISORS, AGENTS, FINANCIAL ADVISORS, ATTORNEYS, EMPLOYEES, PARTNERS, AFFILIATES AND REPRESENTATIVES (EACH OF THE FOREGOING IN ITS INDIVIDUAL CAPACITY AS SUCH AND IN NO OTHER UNRELATED CAPACITIES), OR ANY OF THEIR SUCCESSORS AND ASSIGNS~~**EXCULPATED PARTY, OR ANY OF THEIR ASSETS AND PROPERTIES;**

(ii) **ENFORCING, ATTACHING, COLLECTING OR RECOVERING BY ANY MANNER OR MEANS ANY JUDGMENT, AWARD, DECREE OR ORDER AGAINST ANY** ~~DEBTOR, REORGANIZED DEBTOR, HOLDCO, THE CREDITORS COMMITTEE, THE COMMITTEE MEMBERS, INDENTURE TRUSTEES AND ANY OF THEIR RESPECTIVE SUCCESSORS AND ASSIGNS, AND EACH OF THEIR RESPECTIVE CURRENT AND FORMER MEMBERS, OFFICERS, DIRECTORS, MANAGED FUNDS, INVESTMENT ADVISORS, AGENTS, FINANCIAL ADVISORS, ATTORNEYS, EMPLOYEES, PARTNERS, AFFILIATES AND REPRESENTATIVES (EACH OF THE FOREGOING IN ITS INDIVIDUAL CAPACITY AS SUCH AND IN NO OTHER UNRELATED CAPACITIES),~~**EXCULPATED PARTY AND THEIR RESPECTIVE ASSETS AND PROPERTIES;**

(iii) **CREATING, PERFECTING, OR ENFORCING ANY ENCUMBRANCE OF ANY KIND AGAINST ANY** ~~DEBTOR, REORGANIZED DEBTOR, HOLDCO, THE INDENTURE TRUSTEES, AND EACH OF THEIR RESPECTIVE CURRENT AND FORMER MEMBERS, OFFICERS, DIRECTORS, MANAGED FUNDS, INVESTMENT ADVISORS, AGENTS, FINANCIAL ADVISORS, ATTORNEYS, EMPLOYEES, PARTNERS, AFFILIATES AND REPRESENTATIVES (EACH OF THE FOREGOING IN ITS INDIVIDUAL CAPACITY AS SUCH AND IN NO OTHER UNRELATED CAPACITIES),~~**EXCULPATED PARTY, OR THE PROPERTY OR ESTATE OF ANY OF THE FOREGOING; OR**

(iv) **ASSERTING ANY RIGHT OF SETOFF, SUBROGATION OR RECOUPMENT OF ANY KIND AGAINST ANY OBLIGATION DUE FROM ANY** ~~DEBTOR, REORGANIZED DEBTOR, HOLDCO OR AGAINST THE PROPERTY OR ESTATE OF ANY DEBTOR, HOLDCO, AND EACH OF THEIR RESPECTIVE CURRENT AND FORMER MEMBERS, OFFICERS, DIRECTORS, MANAGED FUNDS, INVESTMENT ADVISORS, AGENTS, FINANCIAL ADVISORS, ATTORNEYS, EMPLOYEES, PARTNERS, AFFILIATES AND REPRESENTATIVES (EACH OF THE FOREGOING IN ITS INDIVIDUAL CAPACITY AS SUCH AND IN NO OTHER UNRELATED CAPACITIES),~~**EXCULPATED PARTY EXCEPT TO THE**

- 40 -

EXTENT A RIGHT TO SETOFF, RECOUPMENT OR SUBROGATION IS ASSERTED WITH RESPECT TO A TIMELY FILED PROOF OF CLAIM; OR

        (v)    TAKING ANY ACTIONS TO INTERFERE WITH THE IMPLEMENTATION OR CONSUMMATION OF THE PLAN.

        (5)    BY ACCEPTING DISTRIBUTIONS PURSUANT TO THE PLAN, EACH HOLDER OF AN ALLOWED CLAIM RECEIVING DISTRIBUTIONS PURSUANT TO THE PLAN WILL BE DEEMED TO HAVE SPECIFICALLY CONSENTED TO THE INJUNCTIONS SET FORTH IN THIS ARTICLE XII.E.

**F.**    **Limitation of Governmental Releases**.

Nothing in the confirmation order or the plan shall effect a release by the United States government or any of its agencies or any state and local authority whatsoever, including without limitation any claim arising under the Internal Revenue Code, Federal Securities laws, the environmental law or any criminal laws of the United States or any state and local authority against the releasees, nor shall anything in the confirmation order or the plan enjoin the United States or any state or local authority from bringing any claim, suit, action or other proceedings against the releasees for any liability whatever, including without limitation any claim, suit or action arising under the Internal Revenue Code, Federal Securities laws, the environmental laws or any criminal laws of the United States or any state or local authority, nor shall anything in the confirmation order or the plan exculpate any party from any liability to the United States government or any of its agencies or any state and local authority whatsoever, including any liabilities arising under the Internal Revenue Code, Federal Securities laws, the environmental laws or any criminal laws of the united States or any state and local authority against the releasees; *provided, however*, that the foregoing shall in no way affect or limit the discharge or injunction granted to the debtors under sections 524 and 1141 of the Bankruptcy Code.

**Article XIII.**  **RETENTION OF JURISDICTION**

On and after the Effective Date, the Bankruptcy Court shall retain jurisdiction over all matters arising in, arising under, and related to the Reorganization Cases and the Plan pursuant to and for purposes of section 105(a) and 1142 of the Bankruptcy Code, including, without limitation:

        (1)    To hear and determine applications for the assumption or rejection of executory contracts or unexpired leases and the allowance of Claims resulting therefrom and any disputes with respect to executory contracts or unexpired leases relating to facts and circumstances arising out of or relating to the Reorganization Cases.

        (2)    To determine any motion, adversary proceeding, application, contested matter, and other litigated matter pending on or commenced on the Confirmation Date.

        (3)    To ensure that distributions to holders of Allowed Claims are accomplished as provided herein.

- 41 -

(4)     To consider Claims or the allowance, classification, priority, compromise, estimation, or payment of any Claim, Administrative Claim, or Equity Interest.

(5)     To enter, implement, or enforce such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, reversed, revoked, modified, or vacated.

(6)     To issue injunctions, enter and implement other orders, and take such other actions as may be necessary or appropriate to restrain interference by any person with the consummation, implementation, or enforcement of the Plan, the Confirmation Order, or any other order of the Bankruptcy Court.

(7)     To hear and determine any application to modify the Plan in accordance with section 1127 of the Bankruptcy Code, to remedy any defect or omission or reconcile any inconsistency in the Plan, the Disclosure Statement, or any order of the Bankruptcy Court, including the Confirmation Order, in such a manner as may be necessary to carry out the purposes and effects thereof.

(8)     To hear and determine all actions pursuant to sections 105, 502, 510, 505, 542, 543, 544, 545, 547, 548, 549, 550, 551, and 553 of the Bankruptcy Code, any collection matters related thereto, and settlements thereof;

(9)     To hear and determine any disputes or issues arising under the settlement agreements referred to in this Plan or any other settlements of Claims approved by the Bankruptcy Court;

(10)     To hear and determine all applications under sections 330, 331, and 503(b) of the Bankruptcy Code for awards of compensation for services rendered and reimbursement of expenses incurred prior to the Confirmation Date.

(11)     To hear and determine disputes arising in connection with the interpretation, implementation, or enforcement of the Plan, the Confirmation Order, any transactions or payments contemplated hereby, or any agreement, instrument, or other document governing or relating to any of the foregoing.

(12)     To take any action and issue such orders as may be necessary to construe, enforce, implement, execute, and consummate the Plan or to maintain the integrity of the Plan following consummation.

(13)     To hear any disputes arising out of, and to enforce, the order approving alternative dispute resolution procedures to resolve personal injury, employment litigation, and similar claims pursuant to section 105(a) of the Bankruptcy Code.

(14)     To determine such other matters and for such other purposes as may be provided in the Confirmation Order.

(15)     To hear and determine matters concerning state, local, and federal taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code (including any requests for expedited determinations under section 505(b) of the Bankruptcy Code filed, or to be filed, with

- 42 -

respect to tax returns for any and all taxable periods of the Debtors ending after the Commencement Date).

(16)     To hear and determine any other matters related hereto and not inconsistent with the Bankruptcy Code and title 28 of the United States Code.

(17)     To enter a final decree closing the Reorganization Cases.

(18)     To recover all assets of the Debtors and property of the Debtors' Estates, wherever located.

### Article XIV.  MISCELLANEOUS PROVISIONS

#### A.     Payment of Statutory Fees.

On the Effective Date, and thereafter as may be required, the Debtors shall pay all fees payable pursuant to section 1930 of chapter 123 of title 28 of the United States Code until the Reorganization Cases are closed or the Court orders otherwise.

#### B.     Dissolution of Statutory Committee of Unsecured Creditors.

The Creditors Committee appointed pursuant to section 1102 of the Bankruptcy Code in the Reorganization Cases shall dissolve on the Effective Date, except that the Creditors Committee shall have the right to review and object to any applications for compensation and reimbursement of expenses filed in accordance with Article II.2 hereof.

#### C.     No Deemed Waiver of Causes of Action.

Notwithstanding any payment on account of an Allowed Claim to a creditor or a settlement with a creditor with respect to a Disputed Claim, unless expressly provided, there shall be no deemed waiver of any rights of any Debtor to bring a cause of action.

#### D.     Indenture Trustee as Claim Holder.

Consistent with Bankruptcy Rule 3003(c), the Reorganized Debtors shall recognize proofs of Claim timely filed by the Indenture Trustee in respect of any Claims under the Indentures.  Accordingly, if the Indenture Trustee files proofs of Claim for the Note Claims, any other proofs of Claim for the Note Claims, filed by the registered or beneficial holders of Note Claims, are disallowed as duplicative of the Claims of the Indenture Trustee, without any further action of the Bankruptcy Court.

#### E.     Substantial Consummation.

On the Effective Date, the Plan shall be deemed to be substantially consummated under sections 1101 and 1127(b) of the Bankruptcy Code.

**F.      Request for Expedited Determination of Taxes**.

The Debtors shall have the right to request an expedited determination under section 505(b) of the Bankruptcy Code with respect to tax returns filed, or to be filed, for any and all taxable periods ending after the Commencement Date through the date on which the Debtors are dissolved.

**G.      Exemption from Transfer Taxes**.

Pursuant to section 1146(a) of the Bankruptcy Code, the assignment or surrender of any lease or sublease, or the delivery of any deed or other instrument of transfer under, in furtherance of, or in connection with the Plan, including any deeds, bills of sale or assignments executed in connection with any disposition of assets contemplated by the Plan shall not be subject to any stamp, real estate transfer, mortgage, recording, sales, use or other similar tax.

**H.      Pension Plan.**

To the extent not otherwise terminated or compromised by order of the Bankruptcy Court, the Debtors' and the applicable Reorganized Debtor's continuing obligation under the Pension Plan shall be unaffected by the Applicable Reorganization Cases and the Plan.

**I.      ~~H.~~ Amendments**.

(1)      Plan Modifications & Amendments.  The Plan may be amended, modified, or supplemented by the Debtors with the consent of the Prepetition Agent in the manner provided for by section 1127 of the Bankruptcy Code or as otherwise permitted by law without additional disclosure pursuant to section 1125 of the Bankruptcy Code.  In addition, after the Confirmation Date, so long as such action does not materially adversely affect the treatment of holders of Claims or Equity Interests under the Plan, the Debtors with the consent of the Prepetition Agent may institute proceedings in the Bankruptcy Court to remedy any defect or omission or reconcile any inconsistencies in the Plan or the Confirmation Order, with respect to such matters as may be necessary to carry out the purposes and effects of the Plan.

(2)      Other Amendments.  Prior to the Effective Date, the Debtors with the consent of the Prepetition Agent may make appropriate technical adjustments and modifications to the Plan, including the filing of additional exhibits, and may make amendments to the Plan without further order or approval of the Bankruptcy Court, provided that such technical adjustments and modifications and amendments do not adversely affect in a material way the treatment of holders of Claims or Equity Interests.

**J.      ~~I.~~ Revocation or Withdrawal of the Plan**.

The Debtors reserve the right to revoke or withdraw the Plan prior to the Effective Date.  If the Debtors take such action, the Plan shall be deemed null and void.

**K.** ~~J.~~ **Severability**.

If, prior to the entry of the Confirmation Order, any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court, at the request of the Debtors, shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall then be applicable as altered or interpreted. Notwithstanding any such holding, alteration, or interpretation, the remainder of the terms and provisions of the Plan will remain in full force and effect and will in no way be affected, impaired, or invalidated by such holding, alteration, or interpretation. The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

**L.** ~~K.~~ **Governing Law**.

Except to the extent that the Bankruptcy Code or other federal law is applicable, or to the extent an exhibit hereto or a schedule in the Plan Supplement provides otherwise, the rights, duties, and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with, the laws of the State of New York, without giving effect to the principles of conflict of laws thereof.

**M.** ~~L.~~ **Time**.

In computing any period of time prescribed or allowed by the Plan, unless otherwise set forth herein or determined by the Bankruptcy Court, the provisions of Bankruptcy Rule 9006 shall apply.

**N.** ~~M.~~ **Notices**.

All notices, requests, and demands to or upon the Debtors to be effective shall be in writing (including by facsimile transmission) and, unless otherwise expressly provided herein, shall be deemed to have been duly given or made when actually delivered or, in the case of notice by facsimile transmission, when received and telephonically confirmed, addressed as follows:

Young Broadcasting, Inc.


599 Lexington Avenue


New York, New York 10022


Fax No. 212.758.1229

Attn:   Vincent Young

with a copy (which shall not constitute notice) to:

        Sonnenschein Nath & Rosenthal, LLP

        1221 Avenue of the Americas

        New York, New York  10020

        Fax No. 212.768.6800

        Attn:   Peter D. Wolfson

             Jo Christine Reed

with copies to:

        The Attorneys for the Prepetition

        Agent under the Credit Agreement

        Milbank, Tweed, Hadley & McCloy LLP

        601 South Figueroa Street

        30th Floor

        Los Angeles, California 90017

        Fax No. 213.629.5063

        Attn:   Gregory Bray

             Fred Neufeld

Dated: New York, New York

        November 4, 2009

- 46 -

Respectfully submitted,

By: _ /s/ James A. Morgan _____

Name: _ James A. Morgan
Title: _ Chief Financial Officer

Document comparison done by DeltaView on Wednesday, November 04, 2009 5:50:13 PM

| Input: | |
|---|---|
| Document 1 | pcdocs://nyclib1/17651658/6 |
| Document 2 | pcdocs://nyclib1/17651658/8 |
| Rendering set | Standard |

| Legend: | |
|---|---|
| Insertion | |
| Deletion | |
| Moved from | |
| Moved to | |
| Style change | |
| Format change | |
| Moved deletion | |
| Inserted cell | |
| Deleted cell | |
| Moved cell | |
| Split/Merged cell | |
| Padding cell | |

| Statistics: | |
|---|---|
| | Count |
| Insertions | 137 |
| Deletions | 194 |
| Moved from | 2 |
| Moved to | 2 |
| Style change | 2 |
| Format changed | 0 |
| Total changes | 337 |