**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                        :

In re                                    :   Chapter 11

                                       :

   YOUNG BROADCASTING INC., et al.,   :   Case No. 09-10645  (AJG)

                                     :   Jointly Administered

                       Debtors.       :

                                       :

                                       :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x


**PROPOSED FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER**
**CONFIRMING THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS'**
**AMENDED JOINT PLAN OF REORGANIZATION PURSUANT TO CHAPTER 11 OF**
**THE UNITED STATES BANKRUPTCY CODE**

**RECITALS**[1]

      A.      On February 13, 2009 (the "Petition Date"), Young Broadcasting Inc., and

its affiliated debtors and debtors in possession (collectively, the "Debtors"), commenced these

chapter 11 cases (collectively, the "Chapter 11 Cases")[2] by filing voluntary petitions for relief

under chapter 11 of title 11 of the Bankruptcy Code.

      B.      The Debtors sought chapter 11 protection primarily because of their debt

burden.  As such, the focus during these cases has been to effect a balance sheet restructuring

---

[1]    Unless otherwise defined herein, capitalized terms used herein shall have the meanings ascribed to them in the Official Committee of Unsecured Creditors' Amended Joint Plan of Reorganization Under Chapter 11 of the Bankruptcy Code ("Committee Plan"). Any capitalized term used in the Committee Plan or in this Confirmation Order that is not defined in the Committee Plan or in this Confirmation Order, but that is used in title 11 of the United States Code, 11 U.S.C. §§ 101 et seq. (the "Bankruptcy Code"), or in the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), shall have the meaning ascribed to that term in the Bankruptcy Code or the Bankruptcy Rules, as the case may be.

[2]    Affiliates Young Broadcasting Capital Corp. and Young Communications Inc. filed voluntary petitions on August 16, 2009, and are included in the definition of Debtors.

and to reduce certain operating costs.  These efforts reduce leverage and expenses, but protects the strength of the Debtors' operations, preserves the Debtors' business relationships and value.

C.     As of the Petition Date, the Debtors' outstanding principal amount of prepetition secured debt totaled approximately $338.1 million.  The Debtors also had approximately $484.3 million principal amount of senior subordinated notes outstanding.

D.     The Debtors continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

E.     On October 9, 2009, the Official Committee of Unsecured Creditors ("Committee"), appointed in the chapter 11 cases of the Debtors, filed its Disclosure Statement (as amended on November 4, 2009, the "Committee Disclosure Statement" [Dkt. No. 646]), and, as amended on November 4, 2009 [Dkt. No. 610], the Committee Plan.

F.     On October 9, 2009, the Debtors filed their Disclosure Statement (as amended thereafter, the "Debtor Disclosure Statement") and their Joint Plan of Young Broadcasting Inc. (as amended thereafter, the "Debtor Plan") [Dkt. No. 602].

G.     On November 6, 2009, the Court approved the adequacy of the Committee Disclosure Statement Supplement regarding the Committee Plan. [Dkt. No. 653].  On November 6, 2009, the Court approved the adequacy of the Debtor Disclosure Statement regarding the Debtor Plan. [Dkt. No. 652].

H.     On November 6, 2009, the Court entered an order approving solicitation and voting procedures (the "Solicitation Order").  [Dkt. No. 652].  The Solicitation Order provided that the Solicitation Package shall consist of (a) the Solicitation Order, (b) the Debtors' Disclosure Statement and the Committee's Disclosure Statement Supplement, (c) the Debtor

Plan and the Committee's Plan; (d) the Solicitation Procedures, (e) the Rights Exercise Form, (f) the Ballots and Master Ballots, and a pre-paid return envelope, (g) letters to the Holders in each of the Voting Classes, (h) the Confirmation Hearing Notice, and (i) such other information or materials as the Court may direct or approve.

I.     Pursuant to the Solicitation Order [Dkt. No. 652], on November 25, 2009, the Debtors caused the Solicitation Package to be sent creditors. [Dkt. No. 697].  Under the Committee Plan, Classes 6 and 7 (Noteholders and General Unsecured Creditors, respectively) were entitled to vote.

J.     The Debtors published, on or about December 7, 2009, notice of the Confirmation Hearing  in The Wall Street Journal, consistent with the Disclosure Statement Order, as evidenced by the Affidavit of Publication in The Wall Street Journal of Erin Ostenson, [Dkt. No. 705].

K.     On December 16, 2009, the Committee filed a Memorandum in Support of Confirmation of the Official Committee of Unsecured Creditors' Amended Joint Plan of Reorganization under Chapter 11 of the United States Bankruptcy Code and Objection to the Joint Plan of Young Broadcasting Inc. and its Debtor Affiliates under Chapter 11 of the Bankruptcy Code [Dkt. No. 743] ("Plan Confirmation Brief"), and the Declaration of Tom Kuhn in Support of Confirmation of the Official Committee of Unsecured Creditors' Amended Joint Plan of Reorganization Under Chapter 11 of the United States Bankruptcy Code ("Kuhn Declaration"). [Dkt. No. 813].

L.     On December 16, 2009, Wachovia Bank, N.A., the administrative agent ("Agent") for the senior secured lenders (the "Secured Lenders"), filed an Objection to the Plan of Reorganization of the Official Committee of Unsecured Creditors. [Dkt. No. 733].

M. On December 30, 2009, the Agent filed its Motion in Limine to Exclude Under Federal Rule of Evidence 702, Testimony and Report of Tom Kuhn, Offered by the Official Committee of Unsecured Creditors (the "Daubert Motion"). [Dkt. No. 768].

N. On January 11, 2010, the Committee filed its Memorandum of Law in Opposition to the Senior Secured Lenders' Motion in Limine to Exclude the Testimony and Report of Tom Kuhn. [Dkt. No. 782].

O. On January 12, 2010, the Committee and the Secured Lenders served their reply confirmation briefs. The Debtors also filed a response to the Secured Lenders' objection to the Committee Plan and memorandum of law in support of the Committee Plan.

P. On January 15, 2010, the Agent filed its Reply in Support of Motion in Limine to Exclude Report and Testimony of Proposed Expert Witness Tom Kuhn, Under Fed. Rule of Evidence 702. [Dkt. No. 809].

Q. On January 18, 2010, the Declaration of Jane Sullivan Regarding Voting on, and Tabulation of, Ballots Accepting and Rejecting (I) The Debtors' Joint Plan Under Chapter 11 of the Bankruptcy Code and (II) the Official Committee of Unsecured Creditors' Amended Joint Plan of Reorganization Under Chapter 11 of the Bankruptcy Code [Dkt. No. 812], detailing the balloting results, was filed in these cases.

R. On January 18, 2010, the Committee filed the Declaration of Tara Torrens in Support of Confirmation of the Official Committee of Unsecured Creditors' Amended Joint Plan of Reorganization Under Chapter 11 of the United States Bankruptcy Code [Dkt. No. 814] ("Torrens Declaration").

S. On February 8, 2010, the Lenders and Committee each filed their proposed finding of facts and conclusions of law.

T.    This Court having:

(i)    set January 19, 2010 at 09:30 AM, prevailing Eastern Time, as the date and time for the commencement of the Confirmation Hearing pursuant to Bankruptcy Rules 3017 and 3018 and sections 1126, 1128, and 1129 of the Bankruptcy Code;

(ii)    reviewed both the Committee Plan and the Debtor Plan, the Daubert Motion, all filings, pleadings, exhibits, statements, responses, and comments regarding Confirmation of both the Committee Plan and the Debtor Plan, including all objections, statements, and reservations of rights filed by parties in interest on the docket of these Chapter 11 Cases;

(iii)    heard the statements, arguments, and objections made by counsel in respect of Confirmation of both the Committee Plan and the Debtor Plan;

(iv)    considered all oral representations, testimony, documents, filings, and other evidence regarding Confirmation;

(v)    overruled any and all objections to the Committee Plan and to Confirmation of the Committee Plan and all statements and reservations of rights not consensually resolved or withdrawn, unless otherwise indicated;

(vi)    sustained the Committee's objection to the Debtor Plan; and

(vii)    taken judicial notice of the papers and pleadings, and all exhibits attached thereto, filed in the Chapter 11 Cases.

NOW, THEREFORE, it appearing to the Court that notice of the Confirmation Hearing and the opportunity for any party in interest to object to Confirmation have been adequate and appropriate as to all parties affected or to be affected by the Committee Plan and the transactions contemplated thereby, and the legal and factual bases set forth in the documents filed in support of Confirmation and presented at the Confirmation Hearing establish just cause for the relief granted herein; and after due deliberation thereon and good cause appearing therefore, the Court hereby makes and issues the following Findings of Fact, Conclusions of Law, and Order:[3]

## I.    FINDINGS OF FACT AND CONCLUSIONS OF LAW

IT IS HEREBY DETERMINED, FOUND, ADJUDGED, DECREED, AND ORDERED THAT:

### A.    Jurisdiction and Venue.

1.    Venue in the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court") is proper pursuant to 28 U.S.C. §§ 1408 and 1409. Consideration of Confirmation of the Debtor Plan and the Committee Plan and to consider the corresponding Daubert Motion is a core proceeding under 28 U.S.C. § 157(b)(2). The Bankruptcy Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1334. The Bankruptcy Court has exclusive jurisdiction to determine whether the Debtor Plan and the Committee Plan comply with the applicable provisions of the Bankruptcy Code, and the

---

[3]    The findings of fact and the conclusions of law set forth herein shall constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014. All findings of fact and conclusions of law announced by the Court at the Confirmation Hearing in relation to Confirmation are hereby incorporated herein to the extent not inconsistent herewith. To the extent that any of the following findings of fact constitute conclusions of law, they are adopted as such. To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

Committee Plan, but not the Debtor Plan, should be confirmed and the corresponding Daubert Motion should be denied.

**B.    Eligibility for Relief.**

2.      The Debtors were and are entities eligible for relief under section 109 of the Bankruptcy Code.

**C.    Commencement and Joint Administration of the Chapter 11 Cases.**

3.      On the Petition Date, the Debtors commenced the Chapter 11 Cases by filing voluntary petitions for relief under chapter 11 of the Bankruptcy Code.  The Chapter 11 Cases have been consolidated for procedural purposes only and are being jointly administered pursuant to Bankruptcy Rule 1015. [Dkt. No. 20].  The Debtors have operated their businesses and managed their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No trustee or examiner has been appointed in the Chapter 11 Cases.

**D.    Modifications to the Committee Plan.**

4.      Any modifications to the Committee Plan described or set forth herein constitute technical changes or changes with respect to particular Claims by agreement with Holders of such Claims, and do not materially or adversely affect or change the treatment of any other Claims or Interests.  Pursuant to Bankruptcy Rule 3019, these modifications do not require additional disclosure under section 1125 of the Bankruptcy Code or the resolicitation of votes under section 1126 of the Bankruptcy Code, nor do they require that the Holders of Claims or Interests be afforded an opportunity to change previously cast acceptances or rejections of the Committee Plan.

### E.    Judicial Notice.

5.    The Bankruptcy Court takes judicial notice of (and deems admitted into evidence for Confirmation) the docket of the Chapter 11 Cases, including all pleadings, along with all exhibits attached thereto, and other documents on file, all orders entered, all hearing transcripts, and all evidence and arguments made, proffered, or adduced at the hearings held before the applicable court during the pendency of the Chapter 11 Cases.  Any resolutions of objections to Confirmation explained on the record at the Confirmation Hearing are hereby incorporated by reference.  All unresolved objections, statements, and reservations of rights are hereby overruled on the merits.

### F.    Disclosure Statement Order.

6.    On November 6, 2009, the Bankruptcy Court entered the Disclosure Statement Order, which, among other things: (a) approved both the Committee Disclosure Statement and the Debtor Disclosure Statement as containing adequate information within the meaning of section 1125 of the Bankruptcy Code and Bankruptcy Rule 3017; (b) fixed November 2, 2009, as the Record Date (as defined in the Disclosure Statement Order); (c) fixed December 11, 2009, at 4:00 p.m. prevailing Eastern Time, as the deadline for voting to accept or reject the plans (the "Voting Deadline"); (d) fixed December 15, 2009, at 4:00 p.m. prevailing Eastern Time, as the deadline for objecting; (e) fixed December 21, 2009, at 10:00 a.m. prevailing Eastern Time, as the date and time for the commencement of the Confirmation Hearing, which date and time was subsequently adjourned to January 19, 2010; (e) approved the Solicitation Procedures and the Solicitation Package; (f) approved the form and method of notice of the Confirmation Hearing Notice set forth therein; and (g) and approved the procedures

associated with the Rights Offering, including approval of the Rights Exercise Form (as defined in the Disclosure Statement Order).

### G. Transmittal and Mailing of Materials; Notice.

7.     As evidenced by the Affidavit of Brooke Filler, due, adequate, and sufficient notice of the Disclosure Statement, Committee Plan, and Committee Plan Supplement has been given. [Dkt. Nos. 651, 707]

8.     The Debtors published the Confirmation Hearing Notice in The Wall Street Journal in substantial compliance with the Disclosure Statement Order and Bankruptcy Rule 2002(l), as evidenced by the Publication Affidavits. [Dkt. No. 705].

### H. Solicitation.

9.     Votes for acceptance and rejection of the Committee Plan were solicited in good faith and in compliance with sections 1125 and 1126 of the Bankruptcy Code, Bankruptcy Rules 3017 and 3018, the Disclosure Statement, the Disclosure Statement Order, all other applicable provisions of the Bankruptcy Code and all other applicable rules, laws, and regulations. Specifically, the Solicitation Packages approved by the Bankruptcy Court in the Disclosure Statement Order (including the Disclosure Statement, the Plans, the Ballots, the Master Ballots, and the related notices) were transmitted to and served on all Holders of Claims or Interests in Classes that were entitled to vote to accept or reject the Committee Plan and relevant portions of the Solicitation Packages were transmitted to and served on other parties in interest in the Chapter 11 Cases, all in compliance with section 1125 of the Bankruptcy Code, the Disclosure Statement Order, the Solicitation Procedures, and the Bankruptcy Rules.

## I.    **Voting Certifications.**

10.    On January 18, 2010, the Debtors filed the Declaration of Jane Sullivan (the "<u>Sullivan Declaration</u>"), which certified the voting results with respect to the Debtor Plan and the Committee Plan.  All procedures used to tabulate the ballots, and the Rights Exercise Form were fair and conducted in accordance with the Disclosure Statement Order, the Bankruptcy Code, the Bankruptcy Rules, the Local Bankruptcy Rules, and all other applicable rules, laws, and regulations.

11.    As set forth in the Committee Plan and the Committee Disclosure Statement, Holders of Claims in Classes 6 and 7 were eligible to vote on the Committee Plan pursuant to the Solicitation Procedures. In addition, Holders of Claims in Classes 1, 2, 3, 4, and 5 are Unimpaired and deemed to accept the Committee Plan and, therefore, were not entitled to vote to accept or reject the Committee Plan.  Holders of Equity Interests in class 8 are deemed to reject the Committee Plan and, therefore, are were entitled to vote to accept or reject the Committee Plan.

12.    As evidenced by the Sullivan Declaration, Holders of Claims in Class 6 voted to accept the Committee Plan.  Holders of Claims in Class 7 voted to reject the Committee Plan.

13.    As further evidenced by the Sullivan Declaration, the Secured Lenders, who, on account of reinstatement, were not entitled to vote on the Committee Plan, voted to accept the Debtor Plan.  Holders of Claims in Classes D (Holders of Noteholder Claims) and E (Holders of General Unsecured Claims) voted to reject the Debtor Plan.

14.    Creditors were asked to indicate a preference between the two Plans, the data submitted as an exhibit to the Sullivan Declaration account for the preference votes.  Based

on the record and the direct testimony of Jane Sullivan at the Confirmation Hearing (1/19/10 Hearing Tr. at 42-43), the preference votes are as follows:

| Preference Election | Amount Preferring Debtor Plan (% of Amount Voted) | Amount Preferring Committee Plan (% of Amount Voted) | Number Preferring Debtor Plan (% of Amount Voted) | Number Preferring Committee Plan (% of Amount Voted) |
|---|---|---|---|---|
| **Prepetition Lender Claims** (Class B/Class 2) | $228,808,122.34 (78.26%) | $61,908,799.41 (21.74%) | 22 (39.29%) | 34 (60.71%) |
| **Noteholder Claims** (Class D/Class 6) | $59,301,000.00 (15.21%) | $330,478,000.00 (84.79%) | 13 (12.50%) | 91 (87.50%) |
| **General Unsecured Claims** (Class E/Class 7) | $6,697,515.53 (86.79%) | $1,019,336.81 (13.21%) | 27 (36.99%) | 46 (63.01%) |

J.    **Bankruptcy Rule 3016.**

15.    The Committee Plan is dated and identifies the Entities submitting it, thereby satisfying Bankruptcy Rule 3016(a).  The filing of the Disclosure Statement with the clerk of the Bankruptcy Court satisfied Bankruptcy Rule 3016(b).

K.    **Burden of Proof.**

16.    The Committee, as proponent of the Committee Plan, bears the burden of proving the elements of subsections 1129(a) and (b) of the Bankruptcy Code by a preponderance of the evidence.

**L.    Choice Between Plans**

17.    During the course of these chapter 11 cases, the Debtors' Board of Directors (the "Board") was reconstituted.  Upon the Board's reconstitution, the Prepetition Lenders selected and appointed two of the five members.  The Board met on December 4, 2009 to evaluate the both the Debtor Plan and the Committee Plan.  The Board was provided a detailed presentation that included, among other things, the Debtors' business and capital plans, financial projections, certain credit statistics and other pertinent industry information (the "12/09 Board Presentation").  Additionally, the 12/09 Board Presentation contained a comparison of the two plans with sections analyzing the feasibility of the plans and a summary of management's and the Debtors' professionals' conclusions based on the various analyses set forth throughout the presentation.  All of this information was specifically presented to and discussed with the Board. In addition to the financial data and credit metrics included in the various presentations, the Board also heard from UBS, the Debtors' financial advisor with significant experience in leverage finance, with respect to the possible requirements to refinance the secured debt upon maturity in 2012.  Members of the Board requested and subsequently received copies of the expert reports submitted by both Blackstone Advisory Partners, L.P. ("Blackstone") and Allen & Company LLC ("Allen & Co").  Both sets of experts were then invited to make and attended the meeting and gave presentations to the Board on December 16, 2009.  The Board deliberated over the two plans, concluded that the Committee Plan is in the best interests of the estate and its creditors and voted unanimously to express a preference for confirmation of the Committee Plan over the Debtor Plan.

18.     The Court has considered the results of the voting in determining which plan to confirm.  This Court finds that it should confirm the Committee Plan and not the Debtor Plan.

**M.     Compliance with the Requirements of Section 1129 of the Bankruptcy Code.**

19.     The Committee Plan complies with all applicable provisions of section 1129 of the Bankruptcy Code as follows:

> *1.     Section 1129(a)(1)—Compliance of the Committee Plan with Applicable Provisions of the Bankruptcy Code.*

20.     The Committee Plan complies with all applicable provisions of the Bankruptcy Code as required by section 1129(a)(1) of the Bankruptcy Code, including sections 1122 and 1123.

> *(a)     Sections 1122 and 1123(a)(1)—Proper Classification.*

21.     The classification of Claims and Interests under the Committee Plan is proper under the Bankruptcy Code.  Pursuant to sections 1122(a) and 1123(a)(1) of the Bankruptcy Code, Article IV of the Committee Plan provide for the separate classification of Claims and Interests into 8 Classes, based on differences in the legal nature or priority of such Claims and Interests (other than Administrative Expense Claims and Priority Tax Claims, which are addressed in Article III of the Committee Plan, and which are required not to be designated as separate Classes pursuant to section 1123(a)(1) of the Bankruptcy Code).  Valid business, factual, and legal reasons exist for the separate classification of the various Classes of Claims and Interests created under the Committee Plan, the classifications, which are substantially similar to the classifications set forth in the Debtor Plan (see 1/19/10 Hearing Tr. at. 104), were not done for any improper purpose, and the creation of such Classes does not unfairly

discriminate between or among Holders of Claims or Interests. See Declaration of Erik M. Graber dated January 14, 2010 ("Graber Declaration") [Dkt. No. 802] ¶¶ 80-82.

22.     In accordance with section 1122(a) of the Bankruptcy Code, each Class of Claims and Interests contains only Claims or Interests that are substantially similar to the other Claims or Interests within that Class. Accordingly, the requirements of sections 1122(a), 1122(b), and 1123(a)(1) of the Bankruptcy Code have been satisfied.

*(b)     Section 1123(a)(2)—Specification of Unimpaired Classes.*

23.     Article IV of the Committee Plan specifies that Claims in Classes 1, 2, 3, 4, and 5 are Unimpaired under the Committee Plan. Additionally, Article III of the Committee Plan specifies that Administrative Expense Claims and Priority Tax Claims are Unimpaired, although these Claims are not classified under the Committee Plan. Accordingly, the requirements of section 1123(a)(2) of the Bankruptcy Code have been satisfied.

*(c)     Section 1123(a)(3)—Specification of Treatment of Impaired Classes.*

24.     Article IV of the Committee Plan specifies the treatment of each Impaired Class under the Committee Plan, including Classes 6 and 7 and Holders of Equity Interests in Class 8. Accordingly, the requirements of section 1123(a)(3) of the Bankruptcy Code have been satisfied.

*(d)     Section 1123(a)(4)—No Discrimination.*

25.     Pursuant to section 1123(a)(4) of the Bankruptcy Code, Article IV of the Committee Plan uniformly provides for the same treatment of each Claim or Interest in a particular Class, as the case may be, unless the Holder of a particular Claim or Interest has agreed to a less favorable treatment with respect to such Claim or Interest. Accordingly, the requirements of section 1123(a)(4) of the Bankruptcy Code have been satisfied.

(e)    *Section 1123(a)(5)—Adequate Means for Committee Plan Implementation.*

26.    Pursuant to section 1123(a)(5) of the Bankruptcy Code, Articles VI-VII and various other provisions of the Committee Plan specifically provide in detail adequate and proper means for the Committee Plan's implementation, including but not limited to:  (a) the sources of consideration for distributions under the Committee Plan, and for the payment of specified fees and expenses; (b) the authorization and issuance of new equity in the Reorganized Company consisting of Class A New Common Stock, Class B New Common Stock, the Rights and Preferred Stock, and the execution of related documents; (c) the reinstatement of certain prepetition debt; (d) the continuation of the corporate existence of the Debtors; (e) the discharge of the Debtors; (f) the appointment of officers and directors of the Reorganized Company; (g) the adoption, implementation, and amendment of the Management and Director Equity Incentive Plan and the granting of awards thereunder; and (h) the general authority for all corporate action necessary to effectuate the Committee Plan. Moreover, the Reorganized Debtors will have, immediately upon the Effective Date, sufficient Cash to make all payments required to be made on the Effective Date pursuant to the terms of the Committee Plan.    Accordingly, the requirements of section 1123(a)(5) of the Bankruptcy Code have been satisfied.

(f)    *Section 1123(a)(6)—Voting Power of Equity Securities.*

27.    The Committee Plan Supplement prohibits the issuance of non-voting equity securities to the extent prohibited by section 1123(a)(6) of the Bankruptcy Code, thereby satisfying section 1123(a)(6) of the Bankruptcy Code.

(g)    *Section 1123(a)(7)—Selection of Officers and Directors.*

As set forth in Article VI.E.1 of the Committee Plan:

Subject to any requirement of Bankruptcy Court approval pursuant to section 1129(a)(5) of the Bankruptcy Code, on the Plan Effective Date, the board of

directors will have seven members, divided into two classes of directors. There will be 6 Class A Directors and one Class B Director, who shall serve non-staggered, one-year terms. By resolution of the Board of Directors, the current directors shall nominate the new directors.

At the Plan Effective Date, the Class B Director shall be Vincent Young. At the Plan Effective Date, the Class A Directors shall be designated by the Backstop Parties holding a majority of the equity commitment, and at least three shall be independent directors.

28. A minimum of three board members will be independent. The current directors will have the sole discretion to nominate and approve the new directors. A majority of the new directors will be designated by the Backstop Parties, who are providing the monies necessary to fund the Committee Plan. The directors, comprising a roster of well qualified candidates, have been selected in accordance with a well crafted interview process. See e.g., Torrens Decl. ¶¶ 6-8. The selection is, and will be, consistent with the interests of Holders of Claims and Interests and public policy. Accordingly, the requirements of section 1123(a)(7) of the Bankruptcy Code have been satisfied.

>    (h)    *Section 1123(b)—Discretionary Contents of the Committee Plan.*

29. The Committee Plan contains various provisions that may be construed as discretionary, but are not required for Confirmation under the Bankruptcy Code. As set forth below, such discretionary provisions comply with section 1123(b) of the Bankruptcy Code and are not inconsistent with the applicable provisions of the Bankruptcy Code. Thus, section 1123(b) of the Bankruptcy Code is satisfied.

>    (i)    *Section 1123(b)(3)— Releases, Exculpation, Injunction, and*
>    *Preservation of Claims and Causes of Action.*

30. **Releases by the Debtors.** The releases and discharges of Claims and Causes of Action by the Debtors described in Article VII.I of the Committee Plan (the "Debtor Releases") pursuant to section 1123(b)(3)(A) of the Bankruptcy Code represent a valid exercise

of business judgment. Pursuing any such claims against the Debtor Releases (as defined herein) is not in the best interest of the Debtors' estates' various constituencies as the costs involved likely would outweigh any potential benefit from pursuing such claims.

31. **Injunction.** The injunction provisions set forth in Article VII.E of the Committee Plan are essential to the Committee Plan and are necessary to preserve and enforce the Debtor Releases and the exculpation provisions in Article VII. of the Committee Plan, and are narrowly tailored to achieve that purpose.

32. **Exculpation.** The exculpation provisions set forth in Article VII.K of the Committee Plan are essential. The record in the Chapter 11 Cases fully supports the Exculpation and the Exculpation provisions set forth in Article X.G of the Committee Plan are appropriately tailored to protect the Exculpated Parties from inappropriate litigation. The Exculpation shall have no effect on the liability of any Entity that results from any such act or omission that is determined in a final order to have constituted gross negligence or willful misconduct; provided, that each Exculpated Party shall be entitled to rely upon the advice of counsel concerning his, her or its duties pursuant to, or in connection with, the Committee Plan; provided further, that the Exculpation shall not apply to any acts or omissions expressly set forth in and preserved by the Committee Plan, the Committee Plan Supplement or related documents, except for acts or omissions of parties granting releases under the Committee Plan.

33. Each of the Debtor Releases, and the injunction and exculpation provisions set forth in the Committee Plan: (a) is within the jurisdiction of the Bankruptcy Court under 28 U.S.C. §§ 1334(a), 1334(b), and 1334(d); (b) is an essential means of implementing the Committee Plan pursuant to section 1123(a)(6) of the Bankruptcy Code; (c) is an integral element of the transactions incorporated into the Committee Plan; (d) confers material benefits

on, and is in the best interests of, the Debtors, the Estates, and their Creditors; (e) is important to the overall objectives of the Committee Plan to finally resolve all Claims among or against the parties-in-interest in the Chapter 11 Cases with respect to the Debtors; and (f) is consistent with sections 105, 1123, 1129 of the Bankruptcy Code, other provisions of the Bankruptcy Code, and other applicable law. The record of the Confirmation Hearing and the Chapter 11 Cases is sufficient to support the Debtor Releases, the Third Party Releases, and the injunction and exculpation provisions contained in Article VII of the Committee Plan.

34. **Preservation of Claims and Causes of Action.** Article VII.F of the Committee Plan appropriately provides for the preservation by the Debtors of the Causes of Action in accordance with section 1123(b) of the Bankruptcy Code. The provisions regarding Causes of Action in the Committee Plan are appropriate and are in the best interests of the Debtors, the Estates, and Holders of Claims and Interests.

2. *Section 1129(a)(2)—Compliance of the Debtors and Others With the Applicable Provisions of the Bankruptcy Code.*

35. The Committee, as proponents of the Committee Plan, have complied with all applicable provisions of the Bankruptcy Code as required by section 1129(a)(2) of the Bankruptcy Code, including sections 1122, 1123, 1124, 1125, 1126, and 1128 of the Bankruptcy Code and Bankruptcy Rules 3017, 3018, and 3019.

36. Votes to accept or reject the Committee Plan were solicited by the Committee and their respective present and former members, partners, representatives, officers, directors, employees, advisors, attorneys, and agents after the Court approved the adequacy of the Disclosure Statement pursuant to section 1125(a) of the Bankruptcy Code.

37. The Committee and their respective present and former members, partners, representatives, officers, directors, employees, advisors, attorneys, and agents have

solicited and tabulated votes on the Committee Plan and have participated in the activities described in section 1125 of the Bankruptcy Code fairly, in good faith within the meaning of section 1125(e) of the Bankruptcy Code, and in a manner consistent with the applicable provisions of the Disclosure Statement Order, the Disclosure Statement, the Bankruptcy Code, the Bankruptcy Rules, and all other applicable rules, laws, and regulations, and are entitled to the protections afforded by section 1125(e) of the Bankruptcy Code and the exculpation provisions set forth in Article VII.K of the Committee Plan.

38. The Committee and their respective present and former members, officers, directors, employees, advisors, attorneys, and agents have participated in good faith and in compliance with the applicable provisions of the Bankruptcy Code with regard to the offering, issuance, and distribution of recoveries under the Committee Plan and, therefore, are not, and on account of such distributions will not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Committee Plan or distributions made pursuant to the Committee Plan, so long as such distributions are made consistent with and pursuant to the Committee Plan.

3. *Section 1129(a)(3)—Proposal of Committee Plan in Good Faith.*

39. The Committee has proposed the Committee Plan in good faith and not by any means forbidden by law. In determining that the Committee Plan has been proposed in good faith, the Bankruptcy Court has examined the totality of the circumstances surrounding the filing of the Chapter 11 Cases, the Committee Plan itself, and the process leading to its formulation. The Committee's good faith is evident from the facts and records of the Chapter 11 Cases, the Disclosure Statement and the hearing thereon, the Torrens Declaration, and the record of the Confirmation Hearing and other proceedings held in the Chapter 11 Cases. See, e.g., Torrens Decl. ¶ 5; Graber Decl. ¶ 102.

40. The Committee Plan is the product of arm's-length negotiations between, the Committee, and each party who signed a Committee Plan Support Agreement. The Committee Plan itself and the process leading to its formulation provide independent evidence of the Committee's good faith, serve the public interest, and assure fair treatment of Holders of Claims and Interests. Consistent with the overriding purpose of chapter 11, the Chapter 11 Cases were filed, and the Committee Plan was proposed, with the legitimate purpose of reorganizing the Debtors, preserving the value of the Debtors' estates, distributing value to the Debtors' creditors and providing the Debtors with a capital structure that will allow them to satisfy their obligations with sufficient liquidity and capital resources. See, e.g., Torrens Decl. ¶ 5; Graber Decl. ¶ 102. Accordingly, the requirements of section 1129(a)(3) of the Bankruptcy Code are satisfied.

4. *Section 1129(a)(4)—Bankruptcy Court Approval of Certain Payments as Reasonable.*

41. The procedures set forth in the Committee Plan for the Bankruptcy Court's review and ultimate determination of the fees and expenses to be paid by the Debtors in connection with the Chapter 11 Cases, or in connection with the Committee Plan and incident to the Chapter 11 Cases, satisfy the objectives of and are in compliance with section 1129(a)(4) of the Bankruptcy Code. Accordingly, the requirements of section 1129(a)(4) of the Bankruptcy Code are satisfied.

5. *Section 1129(a)(5)—Disclosure of Identity of Proposed Management, Compensation of Insiders and Consistency of Management Proposals with the Interests of Creditors and Public Policy.*

42. The Committee Plan satisfies section 1129(a)(5)(A)(i) of the Bankruptcy Code because the Committee has disclosed the identities and affiliations of persons proposed to serve as directors of the reorganized company at or prior to the Confirmation Hearing. See

Second Plan Supplement, Exhibit B. In addition, the Committee has disclosed the identities of Vincent Young, James A. Morgan, and Deborah A. McDermott as the Debtors' chief executive officer, its executive vice president and chief financial officer, and its president, respectively, who will be compensated as described in the Committee Plan Supplement. The method of appointment of directors and officers of the Debtors was, is, and will be consistent with the interests of Holders of Claims and Interests and public policy. See Torrens Decl. ¶¶ 6-8. Accordingly, the requirements of section 1129(a)(5) of the Bankruptcy Code are satisfied.

6. *Section 1129(a)(6)—Approval of Rate Changes.*

43. The Committee Plan does not contain any rate changes subject to the jurisdiction of any governmental regulatory commission and therefore will not require governmental regulatory approval. Therefore, section 1129(a)(6) of the Bankruptcy Code is inapplicable to the Chapter 11 Cases.

7. *Section 1129(a)(7)—Best Interests of Holders of Claims and Interests.*

44. The liquidation analysis, Section V.C. of the Debtors' Disclosure Statement, the underlying analysis of which the Committee adopted, and the other evidence related thereto in support of the Committee Plan that was proffered or adduced at, prior to, or in affidavits in connection with, the Confirmation Hearing: (a) are reasonable, persuasive, credible, and accurate as of the dates such analysis or evidence was prepared, presented, or proffered; (b) utilize reasonable and appropriate methodologies and assumptions; (c) have not been controverted by other evidence; and (d) establish that, Holders of Allowed Claims in every Class will recover as much or more under the Committee Plan on account of such Claim or Interest property of a value, as of the Effective Date, than the amount such Holder would receive if the Debtors were liquidated on the Effective Date under chapter 7 of the Bankruptcy Code.

8.  *Section 1129(a)(8)—Conclusive Presumption of Acceptance by Unimpaired Classes; Acceptance of the Committee Plan by Each Impaired Class.*

45.  Classes 1, 2, 3, 4, and 5 are each Classes of Unimpaired Claims or Interests that are conclusively presumed to have accepted the Committee Plan under section 1126(f) of the Bankruptcy Code.

46.  Because the Committee Plan has not been accepted by Classes 7 and 8 (the "Rejecting Classes"), the Committee seeks Confirmation under section 1129(b), rather than section 1129(a)(8), of the Bankruptcy Code. Thus, although section 1129(a)(8) of the Bankruptcy Code has not been satisfied with respect to the Rejecting Classes, the Committee Plan is confirmable because the Committee Plan does not discriminate unfairly and is fair and equitable with respect to the Rejecting Classes and thus satisfies section 1129(b) of the Bankruptcy Code with respect to such Classes as described further below. As a result, the requirements of section 1129(b) of the Bankruptcy Code are satisfied.

9.  *Section 1129(a)(9)—Treatment of Claims Entitled to Priority Pursuant to Section 507(a) of the Bankruptcy Code.*

47.  The treatment of Allowed Administrative Expense Claims and Allowed Priority Tax Claims under Articles III of the Committee Plan satisfies the requirements of, and complies in all respects with, section 1129(a)(9) of the Bankruptcy Code. Accordingly, the requirements of section 1129(a)(9) of the Bankruptcy Code are satisfied.

10.  *Section 1129(a)(10)—Acceptance By At Least One Impaired Class.*

48.  As set forth in the Declaration of Jane Sullivan Regarding Voting on, and Tabulation of, Ballots Accepting and Rejecting (I) The Debtors' Joint Plan Under Chapter 11 of the Bankruptcy Code and (II) the Official Committee of Unsecured Creditors' Amended Joint Plan of Reorganization Under Chapter 11 of the Bankruptcy Code Holders of Claims in Class 6

have voted to accept the Committee Plan. As such, there is at least one Class of Claims that is Impaired under the Committee Plan that has accepted the Committee Plan, without including any acceptance of the Committee Plan by any insider (as defined by the Bankruptcy Code). Accordingly, the requirements of section 1129(a)(10) of the Bankruptcy Code have been satisfied.

> 11. *Section 1129(a)(11)—Feasibility of the Committee Plan.*

49. The Committee Plan satisfies section 1129(a)(11) of the Bankruptcy Code. The evidence supporting the Committee Plan proffered or adduced by the Committee at, prior to, or in affidavits filed in connection with, the Confirmation Hearing: (a) is reasonable, persuasive, credible, and accurate as of the dates such analysis or evidence was prepared, presented, or proffered; (b) utilizes reasonable and appropriate methodologies and assumptions; (c) has not been controverted by other evidence; (d) establishes that the Committee Plan is feasible and Confirmation of the Committee Plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the Reorganized Debtors or any successor to the Reorganized Debtors under the Committee Plan except as provided in the Committee Plan; and (e) establishes that the Reorganized Debtors will have sufficient funds available to meet their obligations under the Committee Plan. Specifically, the Court finds:

> (a) The Confirmation Hearing testimony and accompanying declarations of fact witnesses Vincent Young, Chief Executive Officer of the Company, Deborah McDermott, President of the Company, Erik Graber, Chief Restructuring Officer of the Company, James Morgan, Chief Financial Officer of the Company, Robert Peterson, a Vice President of the Company (collectively, the "Company Fact Witnesses") are credible.

(b) The Confirmation Hearing testimony and accompanying declaration of the Committee's expert, Tom Kuhn of Allen & Co., is credible. Based on the record before the Court, the Court finds that: (i) Mr. Kuhn has demonstrated sufficient knowledge, skill, and experience to qualify as an expert capable of testifying on the matters set forth in the Kuhn Report and at the Confirmation Hearing; and (ii) Mr. Kuhn's opinion pertinent to the Confirmation Hearing possesses sufficient indicia of reliability and is relevant to the Chapter 11 Cases. Therefore, the Daubert Motion is hereby denied in full.

(c) Based on the record before the Court, including the Debtor Plan and its Disclosure Statement, the Committee Plan and its Disclosure Statement, the Committee Briefs, the Debtors Briefs, and the testimony of the Company Fact Witnesses, the projections prepared and approved by the Debtors and reviewed and approved by the Board, upon which the Committee Plan is based, were prepared in good faith and is a reasonable estimate of the future performance results of the Reorganized Debtors. See, e.g., Graber Decl. ¶ ¶ 22-49; Morgan Decl. 17, 43-46.

(d) Based on the record before the Court, including the Committee Plan and its Disclosure Statement, the Committee Briefs, the testimony of the Company Fact Witnesses, the testimony of Mr. Kuhn, and the testimony of the Agent's expert, Peter Cohen, the Court finds that it is reasonably likely that the Reorganized Company will have sufficient resources and liquidity to meet its obligations under the Committee Plan until maturity of the Senior Debt in November 2012.

(e) Based on the record before the Court, including the Committee Plan and its Disclosure Statement, the Committee Briefs, the testimony of the Company Fact

Witnesses, the testimony of Peter Cohen, and the testimony of Mr. Kuhn, the Court finds that it is reasonably likely that the Reorganized Company will be able, through a sale or refinancing, to satisfy the Senior Debt on or prior to its maturity in November, 2012.

(f) To the extent the testimony of Peter Cohen and his accompanying declaration do not support the above findings, such testimony and declaration do not sufficiently rebut any of the above findings.

(g) The commitments of Backstop Parties and the Rights Offering Participants, who are not insiders of the Debtors, to advance a combined total of $45.6 million of cash as an equity investment in the Reorganized Company evidences that the market believes that the Committee Plan is feasible and supports this Court's feasibility conclusions.

(h) The Debtors' revenue projections are well founded, conservative, achievable and sustainable. Specifically, the Debtors' business plan was prepared using a bottom-up process in order to formulate detailed revenue and expense projections for each station and compared the bottom-up revenue projections to industry projections for revenue growth to determine whether the business plan projections might be unreasonably optimistic as compared to prevailing industry views. As a result of this process, the margins projected in the business plan are more conservative than other comparable public companies.

(i) The Debtors' projections are accurate. In 2009, the Debtors exceeded their sales revenue projections by 4.8% and are on course to exceed 2010 budgets. Additionally, during the course of these chapter 11 cases, the Debtors have maintained positive cash flow from operations sufficient to maintain operations, pay trade creditors

in the ordinary course of business and cover all restructuring expenses from operations without the need for debtor-in-possession financing.

(j)     The Debtors, with assistance from their retained professionals, thoroughly analyzed their ability to meet their obligations under the Committee Plan after the Effective Date and submit that confirmation is not likely to be followed by liquidation or the need for further reorganization.

(k)  The Reorganized Debtors will have, immediately upon the Effective Date, sufficient Cash to make all payments required to be made on the Effective Date pursuant to the terms of the Committee plan.

(l)  The Reorganized Debtors are projected to accumulate over $70 million of cash by 2012 which will increase the value of the reorganized company.   The Reorganized Debtors will likely be able to refinance the balance due on the secured debt upon maturity.

(m)  That the Debtors boards of directors unanimously prefer the Committee Plan to the Debtor Plan supports this Court's feasibility conclusions.

50.     Accordingly, the requirements of section 1129(a)(11) of the Bankruptcy Code have been satisfied.

*12.     Section 1129(a)(12)—Payment of Bankruptcy Fees.*

51.     Article IX of the Committee Plan provides that all fees payable pursuant to section 1930 of the United States Judicial Code, as determined by the Bankruptcy Court at a hearing pursuant to section 1128 of the Bankruptcy Code, paid by the Debtors on or before the Committee Plan Effective Date and all such fees payable after the Committee Plan Effective Date shall be paid by the applicable Reorganized Debtor as and when such fees become due.

Accordingly, the requirements of section 1129(a)(12) of the Bankruptcy Code have been satisfied.

13. *Section 1129(a)(13)—Retiree Benefits.*

52. Section 1129(a)(13) of the Bankruptcy Code requires a Committee Plan to provide for "retiree benefits" (as defined in section 1114 of the Bankruptcy Code) at levels established pursuant to section 1114 of the Bankruptcy Code. The testimony of Erik Graber demonstrates that the Debtors have no retiree benefits.

14. *Section 1129(b)—Confirmation of Committee Plan Over Nonacceptance of Impaired Class.*

53. Notwithstanding the fact that the Rejecting Classes have voted not to accept the Committee Plan, the Committee Plan may be confirmed pursuant to section 1129(b)(1) of the Bankruptcy Code because: (a) the Impaired Accepting Classes have voted to accept the Committee Plan; and (b) the Committee Plan does not discriminate unfairly and is fair and equitable with respect to the Rejecting Classes. No class junior to a Rejecting Class is receiving any value on account of its claim or interest. The shares of New Common Stock afforded to Vincent Young under the Committee Plan are not on account of any claim or interest. Accordingly, the Committee Plan is fair and equitable towards all Holders of Claims in the Rejecting Classes. As a result, the Committee Plan satisfies the requirements of section 1129(b) of the Bankruptcy Code. Thus, the Committee Plan may be confirmed even though section 1129(a)(8) of the Bankruptcy Code is not satisfied. After entry of the Confirmation Order and upon the occurrence of the Effective Date, the Committee Plan shall be binding upon the members of the Rejecting Classes. Because Class 2 is unimpaired under the Committee Plan, the Agent has no standing to object to the treatment of any impaired creditor. Because the Agent lacks standing to raise any objection regarding the treatment of junior impaired creditors and

because the Agent did not raise its objections to the treatment of junior impaired creditors until after the Committee Plan objection deadline, this Court declines consider the Agent's 1129(b) objections.

15. *Section 1129(d)—Principal Purpose of the Committee Plan Is Not Avoidance of Taxes.*

54. No governmental unit has requested that the Bankruptcy Court refuse to confirm the Committee Plan on the grounds that the principal purpose of the Committee Plan is the avoidance of taxes or the avoidance of the application of section 5 of the Securities Act. As evidenced by its terms, the principal purpose of the Committee Plan is not such avoidance. Accordingly, the requirements of section 1129(d) of the Bankruptcy Code have been satisfied.

**N.    Satisfaction of Confirmation Requirements.**

55. Based upon the foregoing, the Committee Plan satisfies the requirements for confirmation set forth in section 1129 of the Bankruptcy Code.

**O.    Good Faith.**

56. The Committee has proposed the Committee Plan with the legitimate and honest purposes of reorganizing the Debtors' ongoing business and maximizing the value of each of the Debtors and the recovery to stakeholders. Accordingly, the Committee Plan has been proposed in good faith to achieve a result consistent with the objectives and purposes of the Bankruptcy Code.

**P.    Disclosure: Agreements and Other Documents.**

57. The Committee has disclosed all material facts regarding: (a) the adoption of the Amended and Restated Certificate of Incorporation and the Amended and Restated Bylaws of Reorganized Young or similar constituent documents; (b) the selection of directors and officers for the Reorganized Debtors; (c) the distribution of Cash; (d) the issuance of new

equity in the Reorganized Company consisting of Class A New Common Stock, Class B New Common Stock, Preferred Stock, and the Rights; (e) the Management and Director Equity Incentive Plan; (f) the Rights Offering; (g) securities registration exemptions; (h) the exemption under section 1146(a) of the Bankruptcy Code; (i) the New Employment Agreements, and (j) the adoption, execution, and delivery of all contracts, leases, instruments, securities, releases, indentures, and other agreements related to any of the foregoing.

### Q.    **Transfers by Debtors; Vesting of Assets.**

58.    Except as otherwise provided in the Committee Plan or any agreement, instrument, or other document incorporated therein, on the Effective Date, all property in each Estate, all Causes of Action, and any property acquired by any of the Debtors pursuant to the Committee Plan shall vest in each respective Reorganized Debtor, free and clear of all Liens, Claims, charges or other encumbrances (except for Liens, if any, granted to secure any indebtedness that is Unimpaired by the Committee Plan).  On and after the Effective Date, except as otherwise provided in the Committee Plan, each Reorganized Debtor may operate its business and may use, acquire or dispose of property and compromise or settle any Claims, Interests or Causes of Action without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules.

### R.    **Conditions to Effective Date.**

59.    Entry of the Confirmation Order, in form and substance reasonably acceptable to the Committee, the Backstop Parties and the Debtors, shall satisfy the conditions to the Effective Date as set forth in Article XI.B of the Committee Plan.

**S.**     **Likelihood of Satisfaction of Conditions Precedent to Consummation.**

60.     Each of the conditions precedent to the Effective Date, as set forth in Article XI.B of the Committee Plan, has been satisfied or waived in accordance with the provisions of the Committee Plan, or is reasonably likely to be satisfied.

**T.**     **Implementation.**

61.     All documents and agreements necessary to implement the Committee Plan, including those contained in the Committee Plan Supplement, and all other relevant and necessary documents have been negotiated in good faith, at arm's length, and are in the best interests of the Debtors and the Reorganized Debtors and shall, upon completion of documentation and execution be valid, binding, and enforceable documents and agreements not in conflict with any federal or state law.

**U.**     **Issuance of Securities.**

62.     The issuance of New Common Stock, the Preferred Stock and the Rights are essential elements of the Committee Plan, and is in the best interests of the Debtors, their Estates, and their Creditors. The Reorganized Company's equity interests shall consist of Class A New Common Stock, Class B New Common Stock, and Preferred Stock.

**V.**     **Reinstatement.**

63.     Class 2 is Unimpaired in accordance with section 1124 of the Bankruptcy Code.

*1.*     *No Event of Default Under the Credit Agreement.*

64.     Among other possible triggers, under the Credit Agreement, an Event of Default could occur if:

(j) Vincent Young, Adam Young, members of their respective immediate families, Persons controlled (as defined in the definition of "Affiliate") by Vincent Young, Adam Young or members of their respective immediate families

and members of management of the Borrower shall fail to hold, in the aggregate for all such individuals and other Persons, record and beneficial title to at least 40% (by number of votes) of the Voting Stock of the Borrower;

or

(k) Either (i) any "person" or "group" (as such terms are used in Section 13(d) or 14(d) of the Securities Exchange Act of 1934, as amended), other than Permitted Holders, is or becomes the "beneficial owner") (as defined in Rule 13d--3 and 13d—5 promulgated by the Securities Exchange Commission under said Act, except that a Person shall be deemed to have beneficial ownership of all shares that such Person has the right to acquire, whether such right is exercisable immediately or only after the passage of time), directly or indirectly, of more than 30% (by number of votes) of the total outstanding Voting Stock of the Borrower; provided that the Permitted Holders "beneficially own" (as so defined) a lesser percentage of such Voting Stock than such other Person and do not have the right or ability by voting power, contract or otherwise to elect or designate for election a majority of the board of directors of the Borrower or (ii) during any period of two consecutive years, individuals who at the beginning of such period constituted the board of directors of the Borrower (together with any new directors whose election to such board of directors, or whose nomination for election by the stockholders of the Borrower, was approved by a vote of 66 2/3% of the directors then still in office who were either directors at the beginning of such period or whose election or nomination for election was previously so approved) shall cease for any reason to constitute a majority of the board of directors of the Borrower then in office.

Credit Agreement § 6.01.

65.     "Voting Stock" as defined in the Credit Agreement refers strictly to shares carrying the power to vote for directors, managers, or trustees, and does not at all refer to economic interest or voting on general corporate matters.

66.     Vincent Young will retain over 40% of the Voting Stock, no group or Person (other than Vincent Young) will control over 30% of the Voting Stock, and the board of directors selection criteria will be satisfied.

67.     The Committee Plan complies with each of the requirements in the Credit Agreement, including the change of control provisions addressed in Paragraphs 64-65 hereto, and the Committee Plan will not trigger an Event of Default.

2. *No Other Event of Default.*

68. Upon emergence, no Event of Default shall have occurred and be continuing under any of the debt instruments being reinstated by the Debtors.

**W.    Retention of Jurisdiction.**

69. The Bankruptcy Court properly may retain jurisdiction over the matters set forth in Article VIII of the Committee Plan.

**X.    Debtor Plan.**

70. The Debtors, as proponents of the Debtor Plan, have not met their burden, and therefore the Debtor Plan cannot be confirmed. First, the confirmability of the Committee Plan is prima facie evidence that the Debtor Plan is not confirmable: the Debtor Plan is not fair and equitable with respect to the rejecting Noteholder Class because, by providing all of the equity to the Senior Lenders, the Senior Lenders are receiving a portion of the recovery this Court hereby rules that is properly due to the Debtors' noteholders. Under the Debtor Plan, the Senior Lenders would be paid more than in full while the rejecting noteholders would receive nothing. Therefore, the Debtor Plan is unconfirmable as it fails to comply with Bankruptcy Code section 1129(b). Third, the Debtor Plan relies on access to an Exit Facility. Debtor Discl. at 8, 27. Because the record has not shown that the Debtors have secured access to the Exit Facility, the Debtors have not met their burden to demonstrate that the Debtor Plan complies with the feasibility requirements of Bankruptcy Code section 1129(a)(11).

71. Alternatively, even if the Debtor Plan was confirmable, the Court hereby finds the factors of Bankruptcy Code section 1129(c) favor confirmation of the Committee Plan. The Court considered (1) the type of plan, (2) treatment of creditors and equity, (3) feasibility, and (4) preferences of creditors and equity holders. See In re Asarco, No. 2:09 civ 00177 (S.D.

Tex. Sep. 11, 2009) [Dkt. No. 22], at 106-12, <u>recommendation adopted by District Court</u>, <u>In re Asarco</u>, 2009 WL 4639113 (S.D. Tex. Nov. 13, 2009).

1. *Type of Plan*

72. Both the Committee Plan and Debtor Plan are reorganization plans. Accordingly, this factor is neutral.

2. *Treatment of Creditors and Equity*

73. The Committee Plan affords superior treatment to impaired creditors (as noteholders who voted against the Debtor Plan receive no recovery, but they do receive equity and, in certain cases, the opportunity to participate in the Rights Offering), the treatment of creditors factor weighs in favor of the Committee Plan.

3. *Feasibility*

74. Because the record, including evidence at trial, demonstrates that the Committee will likely maintain a sufficient cash balance to operate in the years following confirmation and because the record does not demonstrate any ability by the Debtors to access the Exit Facility, the relative feasibility requirement favors the Committee. Additionally, with approximately $70 million of cash projected to be on the Reorganized Debtors' balance sheet in 2012, it appears that the Reorganized Debtors will be able to satisfy the Secured Debt upon maturity through new bank debt, high yield debt, equity, a sale or a combination thereof.

4. *Preferences of Creditors and Equity Holders*

75. Impaired creditors overwhelmingly favor the Committee Plan. Accordingly, the preference of creditors factor weights in favor of confirmation of the Committee Plan.

76.     For these reasons, even if the Court were to find the Debtor Plan confirmable, Bankruptcy Code section 1129(c) mandates confirmation of the Committee Plan over the Debtor Plan.

77.     For each of the foregoing reasons, the Committee's Objection to the Debtor Plan is sustained and confirmation of the Debtor Plan is denied.

\* \* \* \* \*

## II.     ORDER

BASED ON THE FOREGOING FINDINGS OF FACT AND CONCLUSIONS OF LAW, IT IS THEREFORE ORDERED, ADJUDGED, AND DECREED THAT:

### A.     Order.

78.     This Confirmation Order shall confirm the Committee Plan. A copy of the Committee Plan is attached hereto as Exhibit A.

### B.     Objections.

79.     To the extent that any objections, reservations of rights, statements, or joinders to Confirmation have not been withdrawn, waived, or settled prior to entry of the Confirmation Order or otherwise resolved as stated on the record of the Confirmation Hearing, they are hereby overruled on the merits.

### C.     Findings of Fact and Conclusions of Law.

80.     The findings of fact and the conclusions of law set forth herein shall constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding by Bankruptcy Rule 9014. All findings of fact and conclusions of law announced by the Court at the Confirmation Hearing in relation to Confirmation are hereby incorporated herein to the extent not inconsistent herewith. To the extent that any of the following constitute findings of fact or conclusions of law, they are adopted as such. To the

extent any of the prior findings of fact or conclusions of law constitutes an order of this Court, they are adopted as such.

### D. Confirmation of the Committee Plan.

81. The Committee Plan and Plan Supplement as amended (as such may be amended by the Confirmation Order or in accordance with the Committee Plan) and each of their provisions are confirmed in each and every respect pursuant to section 1129 of the Bankruptcy Code. The documents contained in the Plan Supplement, and any amendments, modifications, and supplements thereto, and all documents and agreements related thereto (including all exhibits and attachments thereto and documents referred to in such papers), and the execution, delivery, and performance thereof by the Reorganized Debtors, are authorized and approved as finalized, executed, and delivered. Without further order or authorization of the Bankruptcy Court, the Debtors, Reorganized Debtors, and their successors are authorized and empowered to make all modifications to all documents included as part of the Plan Supplement that are consistent with the Committee Plan. As set forth in the Committee Plan, once finalized and executed, the documents comprising the Plan Supplement and all other documents contemplated by the Committee Plan shall constitute legal, valid, binding, and authorized obligations of the respective parties thereto, enforceable in accordance with their terms and, to the extent applicable, shall create, as of the Effective Date, all Liens and other security interests purported to be created thereby.

82. The terms of the Committee Plan, the Plan Supplement, and exhibits thereto are incorporated by reference into, and are an integral part of, the Confirmation Order. The terms of the Committee Plan, the Plan Supplement, all exhibits thereto, and all other relevant

and necessary documents, shall be effective and binding as of the Effective Date of the Committee Plan.

### E.     **Committee Plan Classification Controlling.**

83.     The terms of the Committee Plan shall solely govern the classification of Claims and Interests for purposes of the distributions to be made thereunder. The classifications set forth on the Ballots tendered to or returned by the Holders of Claims or Interests in connection with voting on the Committee Plan: (a) were set forth on the Ballots solely for purposes of voting to accept or reject the Committee Plan; (b) do not necessarily represent, and in no event shall be deemed to modify or otherwise affect, the actual classification of such Claims and Interests under the Committee Plan for distribution purposes; (c) may not be relied upon by any Holder of a Claim or Interest as representing the actual classification of such Claim or Interest under the Committee Plan for distribution purposes; and (d) shall not be binding on the Debtors and Reorganized Debtors except for voting purposes.

### F.     **Compromise and Settlement.**

84.     On or after the Effective Date, the Reorganized Debtors may compromise and settle Claims against them and Causes of Action against other Entities in accordance with the provisions of the Committee Plan, pursuant to section 363 of the Bankruptcy Code and Bankruptcy Rule 9019(a), without any further notice to or action, order or approval of the Bankruptcy Court.

### G.     **The Releases, Injunction, Exculpation, and Related Provisions Under the Committee Plan.**

85.     The following releases, injunctions, exculpations, and related provisions set forth in Article X of the Committee Plan are hereby approved and authorized in their entirety.

## H. Release of Liens.

86. Except as otherwise provided in the Committee Plan (including as to reinstated debt) or in any contract, instrument, release, or other agreement or document created pursuant to the Committee Plan, on the Effective Date and concurrently with the applicable distributions made pursuant to the Committee Plan and, in the case of a Secured Claim, satisfaction in full of the portion of the Secured Claim that is Allowed as of the Effective Date, all mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the Estates shall be fully released, and discharged, and all of the right, title, and interest of any Holder of such mortgages, deeds of trust, Liens, pledges, or other security interests shall revert to the Reorganized Debtor and its successors and assigns.

## I. Maintenance of Causes of Action.

87. The provisions of Article VII.F of the Committee Plan are hereby approved in their entirety. Subject to the releases set forth in Article VII.I and Article VII.K of the Committee Plan, and in accordance with section 1123(b) of the Bankruptcy Code, except as provided in the Committee Plan or in any contract, instrument, release or other agreement entered into or delivered in connection with the Committee Plan, in accordance with section 1123(b) of the Bankruptcy Code and to the fullest extent possible under applicable law, the Reorganized Company shall retain and may enforce, and shall have the sole right to enforce, any claims, demands, rights and Causes of Action that any Debtor may hold against any entity. The Reorganized Company or its successors may pursue such retained claims, demands, rights or Causes of Action, as appropriate, in accordance with the best interests of the Reorganized Company or its successors holding such claims, demands, rights or Causes of Action. Further, the Reorganized Company retains its right to file and pursue, and shall have the sole right to file

and pursue, any adversary proceedings against any trade creditor or vendor related to debit balances or deposits owed to any Debtor.

88.     No Entity may rely on the absence of a specific reference in the Committee Plan, the Plan Supplement or the Disclosure Statement to any Cause of Action against them as any indication that the Debtors or Reorganized Debtors, as applicable, will not pursue any and all available Causes of Action against them.  The Debtors or Reorganized Debtors, as applicable, expressly reserve all rights to prosecute any and all Causes of Action against any Entity, except as otherwise expressly provided in the Committee Plan.

**J.      Post-Confirmation Notices, Professional Compensation, and Bar Dates.**

*1.     Notice of Entry of the Confirmation Order.*

89.     In accordance with Bankruptcy Rules 2002 and 3020(c), promptly after the date of entry of the Confirmation Order, the Committee shall serve the Notice of Confirmation by United States mail, first class postage prepaid, by hand, or by overnight courier service to all parties served with the Confirmation Hearing Notice; provided, however, that no notice or service of any kind shall be required to be mailed or made upon any Entity to whom the Committee mailed a Confirmation Hearing Notice, but received such notice returned marked "undeliverable as addressed," "moved, left no forwarding address" or "forwarding order expired," or similar reason, unless the Committee has been informed in writing by such Entity, or are otherwise aware, of that Entity's new address.  To supplement the notice described in the preceding sentence, within twenty (20) days of the date of the Confirmation Order the Committee shall publish the Notice of Confirmation once in The Wall Street Journal (National Edition). Mailing and publication of the Notice of Confirmation in the time and manner set forth in the this Paragraph shall be good and sufficient notice under the particular circumstances and in

accordance with the requirements of Bankruptcy Rules 2002 and 3020(c), and no further notice is necessary.

90. The Notice of Confirmation shall have the effect of an order of the Bankruptcy Court, shall constitute sufficient notice of the entry of the Confirmation Order to such filing and recording officers, and shall be a recordable instrument notwithstanding any contrary provision of applicable non-bankruptcy law.

### 2. *Professional Compensation.*

91. All requests for compensation or reimbursement of Fee Claims pursuant to sections 327, 328, 330, 331, 503 or 1103 of the Bankruptcy Code for services rendered prior to the Confirmation Date shall be filed and served on the Reorganized Company and its counsel, the United States Trustee, counsel to the Creditors' Committee, counsel to the Prepetition Lenders and such other entities who are designated by the Bankruptcy Rules, the Confirmation Order or any other order(s) of the Court, no later than forty-five (45) days after the Confirmation Date. Unless such deadline is extended by agreement of the Reorganized Company, holders of Fee Claims that are required to file and serve applications for final allowance of their Fee Claims and that do not file and serve such applications by the required deadline shall be forever barred from asserting such Fee Claims against the Debtors, the Reorganized Company or their respective properties, and such Fee Claims shall be deemed discharged as of the Plan Effective Date. Objections to any Fee Claims must be filed and served on the Reorganized Company and their counsel and the requesting party no later than thirty (30) days (or such longer period as may be allowed by order of the Court) after the date on which an application for final allowance of such Fee Claim was filed and served.

92. Except as otherwise specifically provided in the Committee Plan, from and after the Effective Date, each Reorganized Debtor shall, in the ordinary course of business

and without any further notice to or action, order or approval of the Bankruptcy Court, pay in Cash the reasonable legal, Professional or other fees and expenses incurred by that Reorganized Debtor after the Effective Date pursuant to the Committee Plan. Upon the Effective Date, any requirement that Professionals comply with sections 327 through 331 and 1103 of the Bankruptcy Code in seeking retention or compensation for services rendered after such date shall terminate, and each Reorganized Debtor may employ and pay any Professional in the ordinary course of business without any further notice to or action, order or approval of the Bankruptcy Court.

> 3.     *Other Administrative Expense Claims.*

93.     Each Holder of an Allowed Administrative Claim shall receive payment in full in Cash of the unpaid portion of an Allowed Administrative Claim on the latest to occur of (i) the Plan Effective Date, (ii) the date that such Claim becomes an Allowed Claim and (iii) the date that such Claim becomes payable under any agreement between the applicable Debtor and the Holder of such Claim. All requests for payment of an Administrative Expense Claim must be Filed with the Notice, Claims and Solicitation Agent and served upon counsel to the Debtors or Reorganized Debtors, as applicable, on or prior to the bar date set forth in Paragraph 91 above. The Reorganized Debtors may settle and pay any Administrative Expense Claim in the ordinary course of business without any further notice to or action, order, or approval of the Court. In the event that any party with standing objects to an Administrative Expense Claim, the Court shall determine the Allowed amount of such Administrative Expense Claim. Notwithstanding the foregoing, no request for payment of an Administrative Expense Claim need be Filed with respect to an Administrative Expense Claim previously Allowed by Final Order.

**K.**     **Exemption from Securities Laws.**

94.     The solicitation of acceptances and rejections of the Committee Plan was exempt from the registration requirements of the Securities Act of 1933 (as amended, and including the rules and regulations promulgated thereunder) and applicable state securities laws, and no other non-bankruptcy law applies to the solicitation.

95.     Pursuant to section 1145 of the Bankruptcy Code, the offering, issuance, and distribution of any securities pursuant to the Committee Plan (including the Rights, New Common Stock and Preferred Stock issued pursuant to the Committee Plan and the Rights Offering) shall be exempt from, among other things, the registration requirements of section 5 of the Securities Act and any other applicable law requiring registration prior to the offering, issuance, distribution or sale of Securities. In addition, under section 1145 of the Bankruptcy Code, any securities contemplated by the Committee Plan (including the Rights, New Common Stock and Preferred Stock issued pursuant to the Committee Plan and the Rights Offering) will be freely tradable by the recipients thereof, subject to the provisions of section 1145(b)(1) of the Bankruptcy Code relating to the definition of an underwriter in section 2(a)(11) of the Securities Act.

96.     Notwithstanding the foregoing, securities issued pursuant to the Rights Offering shall be issued pursuant to the exemption provided under section 4(2) of the Securities Act.

**L.**     **Exemptions from Taxation.**

97.     Pursuant to section 1146(a) of the Bankruptcy Code, any transfer from a Debtor to a Reorganized Debtor or to any Entity pursuant to, in contemplation of, or in connection with the Committee Plan or pursuant to: (a) the issuance, distribution, transfer, or

exchange of any debt, equity Security, or other interest in the Debtors or the Reorganized Debtors; (b) the creation, modification, consolidation, or recording of any mortgage, deed of trust or other security interest, or the securing of additional indebtedness by such or other means; (c) the making, assignment, or recording of any lease or sublease; or (d) the making, delivery, or recording of any deed or other instrument of transfer under, in furtherance of, or in connection with, the Committee Plan, including any deeds, bills of sale, assignments, or other instrument of transfer executed in connection with any transaction arising out of, contemplated by, or in any way related to the Committee Plan, shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, real estate transfer tax, mortgage recording tax, Uniform Commercial Code filing or recording fee, regulatory filing or recording fee, or other similar tax or governmental assessment, and the appropriate federal, state or local governmental officials or agents shall forego the collection of any such tax or governmental assessment and to accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

**M.** **Retention of Jurisdiction.**

98. The Bankruptcy Court properly may retain jurisdiction over the matters set forth in Article VIII of the Committee Plan.

**N.** **References to Committee Plan Provisions.**

99. The failure specifically to include or to refer to any particular article, section, or provision of the Committee Plan, Plan Supplement, or any related document in the Confirmation Order shall not diminish or impair the effectiveness of such article, section, or provision, it being the intent of the Bankruptcy Court that the Committee Plan and any related documents be confirmed in their entirety.

**O.  Treatment of Executory Contracts.**

100.  The Executory Contract provisions of Article X of the Committee Plan shall be, and hereby are, approved in their entirety.

**P.  Procedures for Resolving Claims and Disputes.**

101.  The Claims resolution procedures contained in Article V.C of the Committee Plan shall be, and hereby are, approved in their entirety.

**Q.  Provisions Governing Distributions.**

102.  The distribution provisions of Article V.B of the Committee Plan shall be, and hereby are, approved in their entirety. Except as otherwise set forth in the Committee Plan, the Reorganized Debtors shall make all distributions required under the Committee Plan.

**R.  Reinstatement of Certain Credit Facilities and Indentures.**

103.  Each Allowed Claim against the Debtors under the Credit Agreement shall be reinstated in accordance with section 1124 of the Bankruptcy Code and is therefore Unimpaired.  The rate of interest from the petition date through the Effective Date of the Plan shall be the non-default contractual Eurodollar rate as such term is defined in the credit agreement.

**S.  Rights, New Common Stock and Preferred Stock**

104.  In accordance with the terms of Article VI of the Committee Plan, the Reorganized Debtors shall issue, deliver or execute, as the case may be, all securities, notes, instruments, certificates, and other documents required to be issued pursuant to the Committee Plan, including, without limitation, the Rights, Class A New Common Stock, Class B New Common Stock and Preferred Stock, each of which shall be distributed as provided in the Committee Plan.  Upon issuance, the Rights,  all shares of Class A New Common Stock, Class B

New Common Stock, and the Preferred Stock are deemed validly issued, fully paid, and non-assessable.

### T. Management and Director Equity Incentive Plan

105. The Reorganized Company shall be deemed to have adopted the Management and Director Equity Incentive Plan on the Effective Date.

### U. Other Essential Documents and Agreements.

106. The Amended and Restated Certificate of Incorporation and Amended and Restated Bylaws of the Reorganized Company, the Plan Support Agreement, the Backstop Agreement, the New Employment Agreements, the Rights Offering Documents and the transactions contemplated by each of the foregoing are approved in their entirety and, upon execution and delivery of the agreements and documents relating thereto by the applicable parties, the Amended and Restated Certificate of Incorporation and Amended and Restated Bylaws of the Reorganized Company, the Backstop Agreement, the New Employment Agreements, the Rights Offering Documents shall be in full force and effect and valid, binding and enforceable in accordance with their terms without the need for any further notice to or action, order or approval of the Bankruptcy Court, or other act or action under applicable law, regulation, order or rule. The Debtors, and after the Effective Date, the Reorganized Debtors, are authorized, without further approval of the Bankruptcy Court or any other party, to execute and deliver all agreements, documents, instruments, securities and certificates relating to such agreements and perform their obligations thereunder, including, without limitation, pay all fees due thereunder or in connection therewith.

107. On or before the Effective Date, the Debtors may File with the Bankruptcy Court such agreements and other documents as may be necessary or appropriate to effectuate and

further evidence the terms and conditions of the Committee Plan. The Debtors or Reorganized Debtors, as applicable, and all Holders of Claims or Interests receiving distributions pursuant to the Committee Plan and all other parties in interest shall, from time to time, prepare, execute, and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of the Committee Plan.

**V.     Governing Law.**

108.    Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules) or unless otherwise specifically stated, the laws of the State of New York, without giving effect to the principles of conflict of laws, shall govern the rights, obligations, construction, and implementation of the Committee Plan, any agreements, documents, instruments, or contracts executed or entered into in connection with the Committee Plan (except as otherwise set forth in those agreements, in which case the governing law of such agreement shall control), and corporate governance matters; provided, however, that corporate governance matters relating to Debtors or Reorganized Debtors, as applicable, not incorporated in New York shall be governed by the laws of the state of incorporation of the applicable Debtor or Reorganized Debtor, as applicable.

**W.     Effectiveness of All Actions.**

109.    Except as set forth in the Committee Plan, all actions authorized to be taken pursuant to the Committee Plan shall be effective on, prior to, or after the Effective Date pursuant to the Confirmation Order, without further application to, or order of the Bankruptcy Court, or further action by the respective officers, directors, members, or stockholders of Reorganized Debtors or the other Reorganized Debtors and with the effect that such actions had been taken by unanimous action of such officers, directors, members, or stockholders.

### X. Approval of Consents and Authorization to Take Acts Necessary to Implement the Committee Plan.

110.     Pursuant to section 1142(b) of the Bankruptcy Code, section 303 of the Delaware General Corporation Law and any comparable provision of the business corporation laws of any other state, each of the Debtors and the Reorganized Debtors hereby is authorized and empowered to take such actions and to perform such acts as may be necessary, desirable or appropriate to comply with or implement the Committee Plan, the Plan Supplement, the Amended and Restated Certificate of Incorporation and Amended and Restated Bylaws of the Reorganized Company, the Backstop Agreement, the New Employment Agreements, the Rights Offering Documents any other Plan documents, including the election or appointment, as the case may be, of directors and officers of the Reorganized Company as contemplated in the Committee Plan, and all documents, instruments, securities and agreements related thereto and all annexes, exhibits, and schedules appended thereto, and the obligations thereunder shall constitute legal, valid, binding and authorized obligations of each of the respective parties thereto, enforceable in accordance with their terms without the need for any stockholder or board of directors' approval.  Each of the Debtors and the Reorganized Debtors hereby is authorized and empowered to take such actions, to perform all acts, to make, execute, and deliver all instruments and documents, and to pay all fees and expenses as set forth in the documents relating to the Committee Plan and including without limitation, the Committee Plan, the Plan Supplement, the Amended and Restated Certificate of Incorporation and Amended and Restated Bylaws of the Reorganized Company, the Backstop Agreement, the New Employment Agreements, the Rights Offering Documents any other Plan documents, and that may be required or necessary for its performance thereunder without the need for any stockholder or board of directors' approval.  On the Effective Date, the appropriate officers of the Reorganized Company

and members of the Board of Directors of the Reorganized Company are authorized and empowered to issue, execute, and deliver the agreements, documents, securities, and instruments contemplated by the Committee Plan in the name of and on behalf of the Reorganized Debtors. Subject to the terms of this Confirmation Order, each of the Debtors, the Reorganized Debtors, and the officers and directors thereof are authorized to take any such actions without further corporate action or action of the directors or stockholders of the Debtors or the Reorganized Debtors. On the Effective Date, or as soon thereafter as is practicable, the Reorganized Debtors shall file their amended certificates of incorporation with the Secretary of State of the state in which each such entity is (or will be) organized, in accordance with the applicable general business law of each such jurisdiction.

111. This Confirmation Order shall constitute all approvals and consents required, if any, by the laws, rules, and regulations of all states and any other governmental authority with respect to the implementation or consummation of the Committee Plan and any documents, instruments, or agreements, and any amendments or modifications thereto, and any other acts and transactions referred to in or contemplated by the Committee Plan, the Plan Supplement, the Disclosure Statement, and any documents, instruments, securities, or agreements, and any amendments or modifications thereto.

Y. **Modifications or Amendments.**

112. Except as otherwise specifically provided in the Committee Plan, and subject to the Backstop Agreement conditions to the Effective Date, the Committee with consent of the Debtors reserve the right to modify the Committee Plan and seek Confirmation consistent with the Bankruptcy Code. Subject to certain restrictions and requirements set forth in section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019 and those restrictions on modifications

set forth in the Committee Plan, the Committee expressly reserves its right to revoke or withdraw or to alter, amend or modify materially the Committee Plan with respect to any Debtor, one or more times, after Confirmation, and, to the extent necessary, may initiate proceedings in the Bankruptcy Court to so alter, amend or modify the Committee Plan, or remedy any defect or omission, or reconcile any inconsistencies in the Committee Plan, the Disclosure Statement or the Confirmation Order, in such matters as may be necessary to carry out the purposes and intent of the Committee Plan. Any such modification or supplement shall be considered a modification of the Committee Plan and shall be made in accordance with Article IX.B of the Committee Plan. Entry of the Confirmation Order means that all modifications or amendments to the Committee Plan since the solicitation thereof are approved pursuant to section 1127 of the Bankruptcy Code and do not require additional disclosure or resolicitation under Bankruptcy Rule 3019.

**Z.** **Ownership and Control.**

113.     The Consummation of the Committee Plan shall not constitute a change of ownership or change in control, as such terms are used in any statute, regulation, contract, or agreement, including, but not limited to, any credit agreement, indenture or other evidence of indebtedness, employment, severance, or termination, or insurance agreements, in effect on the Effective Date and to which either of the Debtors is a party or under any applicable law of any applicable governmental unit, other than a change of control for purposes of section 382 of the U.S. Internal Revenue Code of 1986, as amended, on the Effective Date.

**AA.**     **Effect of Conflict Between Committee Plan and Confirmation Order.**

114.    If there is any direct conflict between the terms of the Committee Plan or the Plan Supplement and the terms of the Confirmation Order, the terms of the Confirmation Order shall control.

**BB.**     **Payment of Statutory Fees.**

115.    All fees payable pursuant to section 1930(a) of the Judicial Code, as determined by the Court at a hearing pursuant to section 1128 of the Bankruptcy Code, shall be paid for each quarter (including any fraction thereof) until the Chapter 11 Cases are converted, dismissed or closed, whichever occurs first.

**CC.**     **Injunctions and Automatic Stay.**

116.    Unless otherwise provided in the Committee Plan or herein, all injunctions or stays in effect in the Chapter 11 Cases pursuant to section 105, 362, or 525 of the Bankruptcy Code or otherwise, or any order of the Court, and extant on the date of this Confirmation Order (excluding any injunctions or stays contained in the Committee Plan or this Confirmation Order) shall remain in full force and effect until the Effective Date. All injunctions or stays contained in the Committee Plan or herein shall remain in full force and effect in accordance with their terms. This Confirmation Order will permanently enjoin the commencement or prosecution by any Person, whether directly, derivatively or otherwise, of any Claims, Interests, Causes of Action, obligations, suits, judgments, damages, demands, debts, rights, or liabilities released pursuant to the Committee Plan.

**DD.**     **Nonseverability of Committee Plan Provisions upon Confirmation.**

117.    Each term and provision of the Committee Plan, and the transactions related thereto as it heretofore may have been altered or interpreted by the Bankruptcy Court is:

(1) valid and enforceable pursuant to its terms; (2) integral to the Committee Plan and the transactions related thereto and may not be deleted or modified without the consent of the Committee and the Debtors; and (3) nonseverable and mutually dependent. It is further acknowledged that the Backstop Parties and participants in the Rights Offering, among others, will be advancing substantial sums to the Reorganized Company or taking other action contemplated by the Committee Plan in reliance upon each term and condition of the Committee Plan and this Order, including the reinstatement of the claims arising under the Credit Agreement, which monies or other action will enable the Reorganized Company to make the distributions and other payments contemplated by the Committee Plan and to reorganize as contemplated by the Committee Plan.

**EE.** **Waiver or Estoppel.**

118.    Each Holder of a Claim or an Interest shall be deemed to have waived any right to assert any argument, including the right to argue that its Claim or Interest should be Allowed in a certain amount, in a certain priority, secured or not subordinated by virtue of an agreement made with the Debtors or their counsel, or any other Entity, if such agreement was not disclosed in the Committee Plan, the Disclosure Statement, or papers Filed with the Bankruptcy Court prior to the Confirmation Date.

**FF.** **Authorization to Consummate.**

119.    The Debtors are authorized to consummate the Committee Plan at any time after the entry of the Confirmation Order subject to satisfaction or waiver (by the required parties) of the conditions precedent to Consummation set forth in Article XI.B of the Committee Plan.

### GG. Compliance with Other Laws.

120. No provision in the Committee Plan or this Order relieves the Reorganized Debtors from their obligations to comply with the Communications Act of 1934, as amended, and the rules, regulations and orders promulgated thereunder by the Federal Communications Commission (the "FCC"). No transfer of control to the Reorganized Debtors of any federal license or authorization issued by the FCC shall take place prior to the issuance of FCC regulatory approval for such transfer of control pursuant to applicable FCC regulations. The FCC's rights and powers to take any action pursuant to its regulatory authority over the transfer of control to the Reorganized Debtors, including, but not limited to, imposing any regulatory conditions on such transfer, are fully preserved, and nothing herein shall proscribe or constrain the FCC's exercise of such power or authority to the extent provided by law.

### HH. Waiver of Stay of Confirmation Order

121. The 14 day stay period set forth in Rule 3020(e) of the Federal Rules of Bankruptcy Procedure is hereby waived.

### II. Effect of Non-Occurrence of Conditions to the Effective Date.

122. Each of the conditions to the Effective Date must be satisfied or duly waived, and the Effective Date must occur within 180 days after Confirmation, or by such later date established by Bankruptcy Court order. If the Effective Date has not occurred within 180 days of Confirmation, then upon motion by a party-in-interest made before the Effective Date and a hearing, the Confirmation Order may be vacated by the Bankruptcy Court; provided, however, that notwithstanding the Filing of such motion to vacate, the Confirmation Order may not be vacated if the Effective Date occurs before the Bankruptcy Court enters an order granting such motion. If the Confirmation Order is vacated, then except as provided in any order of the

Bankruptcy Court vacating the Confirmation Order, the Committee Plan will be null and void in all respects, including the discharge of Claims and termination of Interests pursuant to the Committee Plan and section 1141 of the Bankruptcy Code and the assumptions, assignments or rejections of Executory Contracts, and nothing contained in the Committee Plan or Disclosure Statement shall:  (1) constitute a waiver or release of any Claims, Interests or Causes of Action; (2) prejudice in any manner the rights of any Debtor or any other Entity; or (3) constitute an admission, acknowledgment, offer or undertaking of any sort by such Debtor or any other Entity.

IT IS SO ORDERED.

Dated: New York, New York
        February [  ], 2010

_____
Honorable Arthur J. Gonzalez
United States Bankruptcy Judge